IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____

MARIUSZ G. JARZYNA,                :    CIVIL ACTION
                                   :    NO. 10-4191
          Plaintiff,               :
                                   :
      v.                           :
                                   :
HOME PROPERTIES, L.P,              :
et al.,                            :
                                   :
          Defendants.              :


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                          FEBRUARY 4, 2011


I.    **INTRODUCTION**

          Mariusz G. Jarzyna ("Plaintiff") has brought a five

count complaint against Home Properties, L.P. ("L.P.") and Fair

Collections and Outsourcing, Inc. ("FCO") (collectively,

"Defendants").  Count I of Plaintiff's complaint is asserted

against FCO only and alleges violations of the Fair Credit

Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA").  Counts II thru

V are against both FCO and L.P.  Count II alleges a violation of

the Federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692

et seq. ("FDCPA").  Count III alleges a violation of

Pennsylvania's Fair Credit Extension Uniformity Act, 73 Pa. Cons.

Stat. Ann. § 2270 et seq. ("FCEU").  Count IV alleges a violation

of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 Pa. Cons. Stat. Ann. § 201-1 et seq. ("UTPCPL"). Count V alleges a violation of 18 Pa. Cons. Stat. Ann. § 7311.

## II. BACKGROUND[1]

Plaintiff brings this action against Defendants L.P and FCO on behalf of himself and others similarly situated. Defendant L.P is owned by Home Properties, Inc. Home Properties, Inc. conducts its business in Pennsylvania through L.P. Defendant L.P. is the management entity appointed by Home Properties, Inc. to manage and administer the Glen Brook Apartments in Glendon, PA ("Glen Brook"). Defendant FCO is a national debt collection company and consumer reporting agency ("CRA"). (Amended Compl. ¶ 5-18.)

Plaintiff alleges that he resided at Glen Brook pursuant to a lease agreement with L.P. Plaintiff was subjected to L.P.'s and FCO's tenant screening process. At the end of the lease's stated tenancy, Plaintiff retained possession of the apartment and converted his lease to a month-to-month lease. On September 1, 2009, Plaintiff gave the required one month's notice stating that he planned to vacate on October 1, 2009. Defendant

_____

[1]    The Court accepts, as true, all well pleaded allegations in the complaint and views them in the light most favorable to plaintiff.

L.P. worked with Plaintiff and tried to make him a deal on another apartment, but this deal fell through. When this deal fell through, Plaintiff again put in his notice.

On October 23, 2009, after giving his second notice, Plaintiff received a late notice under his door with a balance due of $1,300. (Id. at Exh. D.) On October 31, 2009, Plaintiff tendered the apartment back. On November 1, 2009, Plaintiff checked his online balance with Glen Brook and learned that his balance increased to $2,200. Additionally, Defendant L.P. failed to send Plaintiff an accounting of his $500.00 security deposit within the statutorily prescribed 30-day period. As a result of this delay, Plaintiff alleges that L.P. waived any right to claim and/or collect this money under the lease agreement. (Id. at ¶ 47-56.)

On June 21, 2010, L.P. contacted Plaintiff via FCO. Plaintiff received a collection letter from FCO for alleged non-payment of a "past due account" in the amount of $1,897.92. (Id. at Exh. E.) On July 17, 2010, Plaintiff timely sent a letter to FCO disputing the debt and asking for verification. (Id. at Exh. F.) Despite Plaintiff's letter, Defendant FCO continued its collection actions. On July 23, 2010, FCO furnished Plaintiff with an invoice from Glen Brook as purported verification. (Id. at Exh. G.) Then, on July 28, 2010, FCO called Plaintiff's cell phone in an effort to collect the debt and also contacted his

relatives seeking information as to Plaintiff's location. (<u>Id.</u> at ¶ 57-61.)

Plaintiff alleges that FCO creates and furnishes information for its clients (i.e., property managers such as L.P.), and it does this as an active contributor and member of the National Multifamily Housing Council ("NMHC") and in accordance with NMHC's promulgation of Multifamily Information and Transactions Standards ("MITS"). A MITS Standard is a set of definitions and rules to facilitate the automatic transfer of data between different types of software packages that are used regularly by owners and managers of multifamily real estate projects. (<u>Id.</u> at ¶ 14.)

Plaintiff states that pursuant to MITS, L.P. and FCO utilize standard, automated platforms to perform resident screening and collection activities. When a tenant comes to L.P. or any other FCO client seeking to rent an apartment, the tenant fills out an "application" which is then entered into the property managers' (i.e., L.P.'s) system and software. This information is then transmitted pursuant to a common MITS Standard to FCO. FCO's computer systems then trace personal identifiers against data compiled by other MITS participants in combination with data obtained from other CRAs such as Equifax, Experian, and TransUnion. The end result of FCO's efforts is what FCO and the industry have labeled a "Credit Report."

By regularly compiling and selling such "Credit Reports" for a fee or through dues or other cooperative basis, FCO operates as a CRA.  (<u>Id.</u> at ¶ 20-29.)  The FCRA regulates the collection, maintenance, and disclosure of consumer report information by CRAs.  Despite the fact that Defendant FCO assembles and compiles consumer information in the form of its Credit Report for distribution and sale to apartment complex owners and managers and other business entities on a regular basis nationwide, FCO does not provide to consumers disclosure of all of the information in FCO's files that pertain to those consumers.  Nor does FCO disclose to consumers the notice of their rights under the FCRA.  (<u>Id.</u> at ¶ 32.)

In sum, Plaintiff alleges that he is a "consumer," that FCO and L.P. are "debt collectors," and that each was attempting to collect a "debt" under the FDCPA.  Moreover, Plaintiff alleges that FCO is both a "furnisher" and a "credit reporting agency" under the FCRA.  Based on these classifications, Plaintiff argues that both Defendants violated federal and state law.

## III. DISCUSSION

Both Defendants have filed motions to dismiss based on Rule 12(b)(6) of the Federal Rules of Civil Procedure.  The Court will first address Defendant FCO's motion and then it will discuss L.P.'s motion.

A.    <u>Legal Standard for Motion to Dismiss</u>

In considering a motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), the court must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party."  <u>DeBenedictis v. Merrill Lynch & Co., Inc.</u>, 492 F.3d 209, 215 (3d Cir. 2007) (internal citations omitted).  In order to withstand a motion to dismiss, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level."  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 & n.3 (2007).  This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  <u>Id.</u> at 555 (internal citation omitted).  Although a plaintiff is entitled to all reasonable inferences from the facts alleged, a plaintiff's legal conclusions are not entitled to deference and the court is "not bound to accept as true a legal conclusion couched as a factual allegation."  <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986) (cited with approval in <u>Twombly</u>, 550 U.S. at 555).

The pleadings must contain sufficient factual allegations so as to state a facially plausible claim for relief.  <u>See, e.g.</u>, <u>Gelman v. State Farm Mut. Auto. Ins. Co.</u>, 583 F.3d

187, 190 (3d Cir. 2009).  A claim possesses such plausibility

"'when the plaintiff pleads factual content that allows the court

to draw the reasonable inference that the defendant is liable for

the misconduct alleged.'"  Id. (quoting Ashcroft v. Iqbal, ---

U.S. ----, 129 S.Ct. 1937, 1949 (2009)).  In deciding a Rule

12(b)(6) motion, the court is to limit its inquiry to the facts

alleged in the complaint and its attachments, matters of public

record, as well as undisputedly authentic documents if the

complainant's claims are based upon these documents.  See Jordan

v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d

Cir. 1994); Pension Benefit Guar. Corp. v. White Consol. Indus.,

Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).


    B.   FCO's Motion to Dimiss[2]

         With this standard of review in mind, the Court turns

to consider the merits of Defendant FCO's motion to dismiss.


         1.   Count I - Violations of the FCRA

         Count I of Plaintiff's complaint alleges violations of

the FCRA.  In particular, Plaintiff claims that Defendant FCO

violated the FCRA by negligently, willfully, and/or recklessly

engaging in certain conduct (i.e., utilizing credit reports for

purposes other than those contemplated under the FCRA).  FCO

---

         [2]    Defendant FCO's motion to file a reply brief (doc. no.
38.) will be denied as moot.

argues that an examination of each of the claims demonstrates that Plaintiff has failed to allege that FCO, an alleged CRA, engaged in any conduct that was directed at Plaintiff.  Further, FCO argues that Plaintiff did not make any request or demand on FCO that would require a response thus triggering the requirements of the FCRA.

Plaintiff has alleged facts that, if true, would establish that FCO is a CRA subject to various provisions in the FCRA.  For example, in Plaintiff's complaint, Plaintiff points out that FCO refers to one of the products it regularly prepares and sells as a "Credit Report."  (Amended Compl. ¶ 1.)  Moreover, in Plaintiff's response to Defendant FCO's motion to dismiss, Plaintiff cites language on FCO's website explicitly describing FCO as "an approved credit reporting agency."  (Doc. no. 36 at 31.)  Based on Plaintiff's allegations and for purposes of adjudicating this motion to dismiss, the Court finds that FCO is a CRA.[3]

As a CRA, FCO is subject to the disclosure, investigation, reinvestigation, and dispute resolution requirements of the FCRA.  Plaintiff has alleged facts that, if true, establish that FCO has not abided by the requirements set forth in the FCRA.  In paragraphs 30-34 of Plaintiff's amended

---

[3]     Of course, if further discovery reveals that FCO is not a CRA then the obligations set forth in the FCRA will not apply to FCO.

complaint, Plaintiff specifically alleges that FCO does not
disclose to consumers all the information in FCO's files that
pertain to those consumers nor does it even disclose to those
consumers that it is operating and functioning as a CRA.
Additionally, when a consumer disputes the completeness or
accuracy of any information contained in a credit report, the CRA
must conduct a reasonable reinvestigation.  Cushman v. Trans
Union Corp., 115 F.3d 220, 223-24 (3d Cir. 1997).  The FCRA
requires the CRA to do more than verify a debt with the original
source.  Dixon-Rollins v. Experian Info. Solutions, Inc., et al.,
No. 09-0646, 2010 WL 3749454, at *3-5 (E.D. Pa. Sept. 23, 2010).
Here, Plaintiff and other consumers could not possibly know of
the existence of inaccurate information because FCO, the CRA, did
not disclose the information to the consumer as required by the
FCRA.

    Based on the foregoing, Defendant FCO's motion to
dismiss Count I will be denied.


        2.  Count II - Violations of the FDCPA

    Section 15 U.S.C. § 1692g affirmatively requires a debt
collector to promptly send certain written information to the
consumer and to refrain from collection efforts on a debt which
has been disputed by a consumer.  Defendant argues that it
adequately complied with the notification requirements of § 1692g

by sending a letter to Plaintiff, dated June 21, 2010. (Amended Compl. at Exh. E.)  Additionally, Defendant alleges that it adequately complied with the verification of disputed debts requirement by sending a letter, dated July 23, 2010.  (Id. at Exh. G.)  Plaintiff, however, argues that neither of these letters were sufficient to satisfy the requirements of § 1692g.[4]

As to the, June 21, 2010, letter notifying Plaintiff of a debt, Plaintiff has alleged facts that, if true, would entitle Plaintiff to relief.  The Third Circuit has stated that "in order to comply with the requirements of section 1692g, more is required than the mere inclusion of the statutory debt validation notice in the debt collection letter-the required notice must also be conveyed effectively to the debtor."  Wilson v. Quadramed Corp., 225 F.3d 350, 354 (3d Cir. 2000).  Moreover, the Wilson Court stated that the notice "is to be interpreted from the perspective of the 'least sophisticated debtor.'"  Id. (internal marks omitted).  Whether the letter meets the "least sophisticated debtor" standard is a question of law.  See id. at 353 n.2.

In Wilson, the collection letter was deemed sufficient. In that case, the letter had three paragraphs, all three paragraphs were printed in the same font, size, and color, and

---

[4]     During oral argument, Plaintiff referred to the existence of other letters sent to Plaintiff from FCO prior to the June 21, 2010 letter.  Those letters are not part of the complaint; therefore, they will not be considered by the Court.

above the body of the letter was the statement: "THIS IS AN
ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED
FOR THAT PURPOSE." Id. at 352.  The Wilson Court agreed with the
district court that the letter did not violate the requirements
of § 1692g.  The district court had based its holding on the fact
that, as to the substance of the letter, it "does not make an
explicit demand for payment, but states that the defendant shall
offer the plaintiff an opportunity to make payment." Id.
(internal marks omitted).  "Moreover, the court specifically
found that the letter [did] not request payment within a time
period shorter than the statutory thirty-day period." Id.

        In the case at bar, the letter provided by FCO to
Plaintiff differs from that in Wilson.  For example, in bold,
centered text are the words "**Payment demand - $1,897.92.**"
Additionally, in a bold highlighted text box are the words "Pay
in full online anytime."  The Court finds that, upon receipt of
the letter, the least sophisticated debtor would not know he or
she had a right to dispute the debt and was not required to pay
it in full as soon as possible.

        In the letter provided to Plaintiff there is no
prominent mention of the fact that Plaintiff had a statutory
right to dispute the demand within thirty days.  Rather, in text
much smaller than the demand, at the bottom of the page, is
information regarding Plaintiff's rights in relation to dispute

of the debt.  Although this information is present, it is overshadowed by the bold text demanding payment and requesting payment in full at anytime.

Moreover, the fact that the letter states, at the top, in a bold text box, "pay in full online anytime" suggests conduct inconsistent with the debtor's thirty-day verification rights. Previously, the Third Circuit held that a notification was improper although it included the statutory right to dispute the debt within thirty days because the statutory right information was overshadowed by a term stating that the payment was due within ten days.  Compare Graziano v. Harrison, 950 F.2d 107, 111 (3d Cir. 1991) ("[T]he notice must not be overshadowed or contradicted by accompanying messages from the debt collector."), with Vasquez v. Gertler & Gertler, Ltd., 987 F. Supp. 652 (N.D. Ill. 1997) (stating letter valid because no emphasis was placed on any particular statement and letter only requested Plaintiff contact debtor), Terran v. Kaplan, 109 F.3d 1428 (9th Cir. 1997) (stating that letter valid because it began with verification notice on the front of the letter).  Based on the aforementioned, Plaintiff has stated a claim upon which relief could be granted.

Moreover, Defendant FCO argues that it did not violate Plaintiff's rights by continuing to investigate after Plaintiff disputed the debt because it verified the debt.  Defendant FCO claims it provided verification by simply copying the same bill

or invoice sent in the June 21, 2010 letter.  Plaintiff has adequately pleaded that Defendant violated this requirement of the FDCPA.  The verification must "include[] at least a colorable claim of entitlement to the debt . . . ."  See Casterline v. Credit Protective Services of I.C. Systems, Inc., 1991 U.S. Dist. LEXIS 21728, at *5-6 (D.N.J. June 26, 1991).  Simply copying the invoice used in the dunning letter is insufficient.

Based on the foregoing, Defendant's motion to dismiss Count II will be denied.

### 3.    Count III - Violations of the FCEU

The FCEU prohibits unfair or deceptive acts or practices with regard to the collection of debts.  73 Pa. Cons. Stat. Ann. § 2270.2.  Violation of the FDCPA is a per se violation of the FCEU.  § 2270.4(a).  Defendant argues that Plaintiff's FDCPA claim fails; therefore, this derivative action fails.  However, the Court did not grant Defendant's motion to dismiss Plaintiff's FDCPA claim pleaded in Count II; consequently, a claim pursuant to the FCEU is permissible.

Based on the foregoing, Defendant's motion to dismiss Count III will be denied.

### 4.    Count IV - Violations of the UTPCPL

Title 73, section 201-9.2 of the Pennsylvania statutes

permits a "person who purchases or leases goods or services primarily for personal, family or household purposes" to bring a private cause of action under the UTPCPL provided the consumer suffered an "ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by [the UTPCPL]."  See Commonwealth v. Monumental Props., Inc., 329 A.2d 812, 817 (Pa. 1974) (stating the UTPCPL "is to be construed liberally to effect its object of preventing unfair or deceptive practices"); Brunwasser v. Trans World Airlines, Inc., 541 F. Supp. 1338, 1346-47 (W.D. Pa. 1982) (holding that the term "ascertainable loss" must be liberally construed and that "the ascertainable loss requirement of this act is designed merely to insure that individuals bringing suit have in fact been damaged by a deceptive trade practice").

Defendant argues that although Plaintiff alleged that he leased "goods or services" (i.e., an apartment) for primarily personal, family, or household purposes, Plaintiff has failed to assert that he sustained any ascertainable loss of money or property as a result of Defendant's alleged unlawful conduct. Plaintiff, however, has stated facts that, if true, establish he has sustained an "ascertainable loss."  Plaintiff has alleged that his security deposit was unlawfully withheld. (Amended Compl. ¶ 56.)  Additionally, Plaintiff alleges that he was forced

to retain counsel to resist FCO's collection efforts and in his prayer for relief requests all reasonable attorneys' fees.

Based on the foregoing, Defendant's motion to dismiss Count IV will be denied.

### 5. Count V - Violations of 18 Pa. Cons. Stat. Ann. § 7311

Defendant states that Count V should be dismissed because a violation of "this statute does not create an implied civil remedy for a person claiming to be injured as a result of an alleged unlawful collation practice." (Doc. no. 33 at 19.) FCO's argument is that this section does not provide a private remedy or right of action and, as a criminal statute, can only be enforced through criminal prosecution.

While there is a dearth of case law as to whether § 7311 provides an implied cause of action, Defendant FCO and Plaintiff provide two cases that suggest contradictory conclusions. Defendant points to a court of common pleas case from 1974 which held that given the plain language of the statute and the lack of legislative guidance, no implied civil remedy should be permitted. Benjamin v. Global Collection Agency, No. 2814 of 1973, 1974 WL 15915 (Pa. Com. Pl. August 21, 1974). The Benjamin Court stated that "if legislation was intended to create a remedy in addition to the penalty therein stated it simply

could have and would have been drafted accordingly." Id.  On the
other hand, Plaintiff cites a more recent case from the
commonwealth court which is not directly on point but appears to
imply that a civil action may be permissible under the statute.
Nolan v. Dep't of Public Welfare, 673 A.2d 414 (Pa. Commw. Ct.
1996) (reaching the merits of the case as opposed to dismissing
the case solely on the basis that § 7311 is a criminal statute).

        Given the lack of case law, the Court is required to
predict how the Pennsylvania Supreme Court would rule on this
issue.  When determining whether a statute implicitly creates a
private remedy, the Pennsylvania Supreme Court is guided
by a three-prong analysis enunciated in Cort v. Ash, 422 U.S. 66
(1975).  See Estate of Witthoeft v. Kiskaddon, 733 A.2d 623, 626
(Pa. 1999) (stating Cort decision offers a beneficial framework
within which to analyze whether the statute at issue implicitly
creates a private right of action).  The three factors under the
Cort decision are:

> First, is the plaintiff 'one of the class for whose
> especial benefit the statute was enacted,'-that is,
> does the statute create a . . . right in favor of the
> plaintiff?  Second, is there any indication of
> legislative intent, explicit or implicit, either to
> create such a remedy or to deny one?  Third, is it
> consistent with the underlying purposes of the
> legislative scheme to imply such a remedy for the
> plaintiff?

Id. (quoting Cort, 422 U.S. at 78).

Plaintiff merely offers a bald assertion that § 7311 provides a civil remedy.  Plaintiff fails to point to any authority to support this proposition.  Moreover, Plaintiff has failed to address any of the <u>Cort</u> factors.  In the absence of any explanation of the policy behind the statute and whether the Pennsylvania legislature intended to provide a private cause of action, the Court will not presume that the Pennsylvania Supreme Court would find that § 7311 implies a civil remedy.

Based on the foregoing, Defendant FCO's motion to dismiss Count V will be granted.


C.   <u>L.P.'s Motion to Dismiss</u>[5]

   1.   <u>Count II - Violations of the FDCPA</u>

The crux of Defendant L.P.'s argument is that it is not subject to the FDCPA because it is not a debt collector subject to the FDCPA based on the corporate affiliation exemption in § 1692a(6)(B).  That section states the following:

The term "debt collector" means any person who uses any

---

[5]   In Defendant L.P.'s briefing, L.P. argues that the FCRA claim stated in Count I should be dismissed as to L.P. Defendant's motion is denied because Plaintiff did not plead a cause of action as to L.P. for a violation of Count I.  In Plaintiff's briefing, Plaintiff states "[s]ince Plaintiff does not allege or assert any claims against Home under the FCRA, that statute cannot possibly preempt valid claims brought under a completely separate and distinct state statute."  (Doc. no. 41 at 27.)

instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts. For the purpose of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests.  The term does not include- -

(B) any person while acting as a debt collector for another person, both of whom are related by common ownership or affiliated by corporate control, if the person acting as a debt collector does so only for persons to whom it is so related or affiliated and if the principal business of such person is not the collection of debts.

15 U.S.C. § 1692a(6)(B).

In Plaintiff's complaint, Plaintiff alleges that L.P. is an "operating partnership" owned by Home Properties, Inc. Moreover, Plaintiff specifically alleges that L.P. is the entity through which Home Properties, Inc. conducts and manages its business in Pennsylvania. (Amended Compl. ¶ 8-9.) Additionally, the lease agreement provided as an exhibit identifies L.P. as the manager. (Id. at Exh. A.) As such, Plaintiff is asserting that L.P. was attempting to collect debts for its owner and corporate affiliate, Home Properties, Inc. Based on the foregoing, Defendant L.P., acting as a debt collector, squarely falls into the corporate affiliate exemption.

However, Plaintiff argues that L.P. is subject to certain language in § 1962a(6) which places an exempt creditor back into § 1962a(6)'s ambit. A creditor is subject to the FDCPA when the "creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts . . . ." § 1962a(6). Plaintiff's argument, however, is misplaced because the language Plaintiff points to relates to creditors and, as discussed above, L.P. alleges and has pointed to facts indicating that it acted as a debt collector for its corporate affiliate. Moreover, Plaintiff classifies L.P. as a debt collector in its complaint. (Id. at ¶ 8.) Consequently, Defendant L.P., which rightfully claims the corporate affiliate

exemption, cannot be brought back into the ambit of § 1962a(6)
based on language relating to creditors.

Further evidence that the corporate affiliate exemption
applies to L.P. and that L.P. is a debt collector subject to the
corporate affiliate exemption is found in the demand letter sent
to Plaintiff from FCO where Home Properties, Inc. is listed as
the creditor.

Because Plaintiff has not pleaded facts indicating that
the corporate affiliate exemption does not apply to Defendant
L.P, Defendant L.P.'s motion to dismiss Count II will be
granted.[6]

### 2.   Count III - Violations of the FCEU

The FCEU applies to both debt collectors and
creditors.  See 73 Pa. Stat. Ann. § 2270.4.  As to debt
collectors, a violation of the FDCPA establishes a violation of
the FCEU.  Id.  As to creditors, a creditor is deemed liable if
it engages in various conduct set forth in § 2270.4(b).  These

---

[6]     As discussed in section III. A. of this memorandum, the
Court must accept, as true, all allegations in the complaint and
view them in the light most favorable to the non-moving party.
Based on this standard, the Court finds that L.P. is a debt
collector and Home Properties, Inc. is a creditor.  It may be,
however, that on a fuller record L.P. may be found to be a
creditor.  This issue will be more fully developed at the class
certification or motion for summary judgment stage.

prohibited activities mirror those activities proscribed by the FDCPA.

Consequently, liability under the FCEU does not turn on whether Defendant L.P. is defined as a creditor or debt collector. Here, Plaintiff has alleged facts that, if true, establish L.P. engaged in activities that violate the FCEU. For example, Plaintiff claims that he received three different notices from L.P. each alleging that Plaintiff owed a different balance. (Amended Compl. ¶ 52-57.) Additionally, Plaintiff alleges that he was not sent his deposit nor sent a written accounting of the deposit within the statutorily prescribed 30-day period. Viewing these facts in the light most favorable to Plaintiff, Plaintiff has adequately alleged that Defendant engaged in deceptive debt collection practices.

Based on the foregoing, Defendant L.P.'s motion to dismiss Count III will be denied.

3.    <u>Count IV - Violations of the UTPCPL</u>

Defendant L.P. argues that Plaintiff has not adequately stated a cause of action under the UTPCPL. However, § 2270.5(a) of the FCEU states "[i]f a debt collector or creditor engages in an unfair or deceptive debt collection act or practice under this act, it shall constitute a violation of the act of December 17, 1968 (P.L. 1224, No. 387), known as the Unfair Trade Practices

and Consumer Protection Law."  Given that the Court did not

dismiss Plaintiff's claim under the FCEU, Plaintiff has pled

facts that, if true, give rise to a violation of the UTPCPL.

Furthermore, Defendant argues that Plaintiff has not suffered an

ascertainable loss as required by the UTPCPL.  Plaintiff,

however, specifically alleges that Defendant unlawfully withheld

Plaintiff's security deposit, which is clearly an "ascertainable

loss" under the UTPCPL.

Based on the aforementioned, Defendant's motion to

dismiss Count IV will be denied.

4.    Count V - Violations of 18 Pa. Cons. Stat. Ann.
      § 7311

Defendant L.P.'s motion to dismiss Count V will be

granted for the same reasons as stated in section III. B. 5.

5.    Defendant L.P.'s Request for Misjoinder

Defendant L.P. requests that the Court permit

misjoinder.  Defendant argues that Plaintiff's claims against

Defendant FCO and L.P. do not overlap.  The Federal Rules of

Civil Procedure provide:

Persons . . . may be joined in one action as defendants

if: (A) any right to relief is asserted against them

jointly, severally, or in the alternative with respect

to or arising out of the same transaction, occurrence,

> or series of transactions or occurrences; and (B) any
> question of law or fact common to all defendants will
> arise in the action.

Fed. R. Civ. P. 20.   Here, all of Plaintiffs' claims against both Defendants arise out of the same common nucleus of facts. In short, Plaintiff alleges that L.P. and FCO worked together to collect debts owed based on Plaintiff residing in one of L.P.'s apartments.

Consequently, misjoinder is inappropriate and Defendant's motion for misjoinder will be denied.


        6.    Defendant L.P.'s Request for Denial of
              Supplemental Jurisdiction

Defendant L.P.'s motion to deny supplemental jurisdiction will be denied.  Even though the Court dismissed the one federal claim brought against Defendant L.P., the pendency of federal claims against co-defendant FCO permits jurisdiction. The United States Code provides that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367.  Given that the Court has

retained jurisdiction over all federal claims against FCO, the Court has jurisdiction over the case.  Additionally, as stated in the discussion of misjoinder, all claims arise out of the same common nucleus of facts.  Consequently, the exercise of supplemental jurisdiction is appropriate.

Based on the foregoing, Defendant's motion to deny supplemental jurisdiction will be denied.

    D.   <u>FCO's Motion to Stay Discovery (Doc. no. 44)</u>

Defendant FCO has filed a motion to stay discovery pending decisions on the motions to dismiss.  This motion will be denied as moot.

## IV.  CONCLUSION

For the reasons noted above, Defendant FCO's motion to dismiss will be granted as to Count V and denied as to all other Counts.  Defendant L.P.'s motion to dismiss will be granted as to Counts II and V and denied as to Counts I, III, and IV.  An appropriate Order will follow.