IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MARIUSZ G. JARZYNA,                :    CIVIL ACTION
                                   :    No. 10-4191
        Plaintiff,                 :
                                   :
    v.                             :
                                   :
HOME PROPERTIES, L.P. et al.,      :
                                   :
        Defendants.                :


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                          July 17, 2015

**Table of Contents**

I.    BACKGROUND.............................................. 4
II.   PROCEDURAL HISTORY...................................... 10
III.  STANDARD OF REVIEW..................................... 12
IV.   DISCUSSION............................................. 14
      A.   COUNT I: FDCPA.................................... 14
           1.   Claims Against Defendant Home................ 14
           2.   Claims Against Defendant FCO................. 18
                a.   § 1692g(a): FCO's dunning letters
                     do not adequately provide the required
                     information.............................. 19
                     i.   The AV2 and HD1AC letters........... 21
                     ii.  The HD1A letter..................... 23
                b.   § 1692g(b): FCO failed to verify the
                     debt and improperly continued its
                     collection attempts...................... 36
                c.   §§ 1692e(11) and 1692d(6): FCO failed
                     to self-identify as a debt collector
                     over the telephone....................... 42
                d.   §§ 1692f(1), 1692e(2), and 1692e(10):
                     FCO attempted to collect a debt that
                     Plaintiff did not owe.................... 47

B.    COUNT II: FCEUA...................................... 53

    1.    Claims Against Defendant Home.................. 54

        a.    No notice fee provision in the lease agreement................................ 55

        b.    Home sends accounting letters to prior addresses................................ 59

        c.    Home continually changed the amount due... 61

        d.    Plaintiff's alleged debt to Home is bogus and illegal........................ 62

    2.    Claims Against Defendant FCO.................. 66

C.    COUNT III: UTPCPL................................... 66

    1.    Claims Against Defendant Home.................. 67

    2.    Claims Against Defendant FCO.................. 69

D.    COUNT IV: Landlord and Tenant Act.................. 70

    1.    Home Improperly Withheld the Security Deposit....................................... 71

    2.    Home Did Not Send a Timely Accounting......... 72

E.    COUNT V: Civil Conspiracy........................... 74

F.    Defendant Home's Counterclaim...................... 77

G.    Defendant Home's Request for Sanctions............. 78

V.    CONCLUSION............................................. 79

VI.    APPENDIX A: Sample Form AV2 Letters from Defendant FCO........................................... 84

VII.  APPENDIX B: Sample Form HD1AC Letters from Defendant FCO........................................... 88

       This case, despite the relative simplicity of its claims, has proceeded along an unusually circuitous and contentious path: through fifteen months of discovery battles under the supervision of a Special Master, several iterations of the Complaint, and protracted but unsuccessful settlement negotiations. Now the parties have all filed dispositive motions and the Court, briefs in hand (totaling 320 pages at last

count), is ready to bring the matter one step closer to a final disposition.

Plaintiff Mariusz Jarzyna ("Plaintiff") brings this action on behalf of himself and others similarly situated against Defendant Home Properties L.P. ("Home") and Defendant Fair Collections and Outsourcing, Inc. ("FCO"), alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq., Pennsylvania's Fair Credit Extension Uniformity Act ("FCEUA"), 73 P.S. § 2270.1 et seq., Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201-1 et seq., and Pennsylvania's Landlord and Tenant Act, 68 P.S. § 250.101. Plaintiff also brings a claim of civil conspiracy under Pennsylvania common law. Each party has moved for summary judgment. For the reasons that follow, the Court will grant these motions in part and deny them in part.

I.    **BACKGROUND**[1]

In January 2008, Plaintiff entered into a residential lease agreement with Defendant Home, which operates and manages the Glen Brook Apartments in Glenolden, Pennsylvania ("Glen Brook"). Home's Br. Ex. E, Pl. Dep. 11:22-12:22, Mar. 18, 2011 [hereinafter Pl. Dep.]; id. at 1.[2] The lease term lasted from January 2008 to January 2009, and Plaintiff resided at Glen Brook during that time. Pl. Dep. 12:18-19. Pursuant to the

_____

[1]    Each party has included within its motion a separate statement of the facts which are largely disputed by the opposing parties. However, by comparing the parties' statements of facts and objections thereto, the Court has been able to identify an underlying series of events related to Plaintiff's claims. The Court will note where the parties disagree. In deciding the motions, the Court reviews the evidence in the light most favorable to--and makes all reasonable inferences in favor of--the respective nonmoving party.

[2]    For ease of reference, the Court uses "Pl.'s Mot." for Plaintiff's Motion for Summary Judgment (ECF No. 225), "Pl.'s Br." for Plaintiff's Memorandum of Law in Support of His Motion for Summary Judgment (ECF No. 225-2), "Home's Resp." for Defendant Home's Response in Opposition to Plaintiff's Motion for Summary Judgment (ECF No. 237), "Home's Br." for Defendant Home's Memorandum of Law in Support of Its Motion for Summary Judgment (ECF No. 234-17), "Pl.'s Resp. to Home" for Plaintiff's Memorandum of Law in Opposition to Defendant Home's Motion for Summary Judgment (ECF No. 236-1), "Pl.'s Suppl." for Plaintiff's Supplement in Opposition to Defendant Home's Motion for Summary Judgment (ECF No. 246), "Home's Suppl. Resp." for Defendant Home's Response to Plaintiff's Supplement (ECF No. 250), "Home's Countercl." for Defendant Home's Counterclaim (ECF No. 231), "FCO's Br." for Defendant FCO's Brief in Opposition to Plaintiff's Motion for Summary Judgment and in Support of FCO's Cross-Motion for Summary Judgment (ECF No. 233-1), and "Pl.'s Resp. to FCO" for Plaintiff's Memorandum of Law in Opposition to Defendant FCO's Cross-Motion for Summary Judgment (ECF No. 235-1).

agreement, Plaintiff paid a $500.00 security deposit, which Home placed into an escrow account. Id. at 22:7-15.

On November 17, 2008, in anticipation of the end of his lease, Plaintiff entered into a new lease agreement with Home, Home's Br. Ex. D, at 2, with a term lasting from January 12, 2009, to August 11, 2009, id.; Pl. Dep. 13:2-7. The $500.00 security deposit from the first lease carried over to the second lease. Pl. Dep. 22:10-15; Home's Br. Ex. D, at 2, 5. The second lease agreement contained the following provisions:

> [A.]2.   Return of Security Deposit. Your security deposit will be returned to you after your Lease has ended and if you have met the following conditions:
>
>> a.   You have vacated your Apartment;
>> b.   You have paid the rent and other charges due under the Lease;
>> c.   You have given us proper notice of your leaving;
>> d.   You have removed your personal property and have left the Apartment in good and clean order, except for ordinary wear and tear.
>
> If we retain some or all of your security deposit, we will notify you at the forwarding address you provide of the reasons we withheld part or all of your security deposit. We will send you notice and/or return your security deposit within the time set forth in the State Law Provisions attached to this Lease.
>
> . . . .
>
> [B.1.]   Late Fees.
> If you fail to pay the rent in full before the end of the 5th day of the month, you will immediately pay us, as additional rent, a late fee of 10% of the monthly rent. If you still fail to pay the rent in full before the end of the 15th day of the month, you will pay us, as additional rent, an additional late fee of 5% of

the monthly rent for a total late fee of 15% of the
monthly rent.

. . . .

[C.]3.    Notice to Vacate at End of Lease Term.
You must give us at least sixty (60) days written
notice of your intention to vacate the Apartment at
the end of the term. If you fail to give this notice,
you will be held liable for rent for the period for
which you failed to give us notice. Please note that
you are not permitted based on this section to give us
notice that you will leave prior to the end date of
this Lease (on page 2).

. . . .

5.        Failure to Vacate at End of Lease Term.
In the event you do not vacate the Apartment at the
end of the term, we may use legal process to remove
you. Or, if we accept rent for the period after the
end of the Lease Term, then you shall be deemed a
holdover Resident and your tenancy shall be month-to-
month, with monthly rent at the current market rate
for a month-to-month lease. We will provide you with
at least 60 days notice of that rate. Either you or we
can terminate the month-to-month lease as of the last
day of any calendar month by giving one calendar
month's written notice to the other party.

Home's Br. Ex. D, at 3-8.

On August 11, 2009, Plaintiff did not vacate his
apartment, and his lease converted to a month-to-month tenancy.
Pl. Dep. 23:10-14; Home's Br. 5. On September 1, 2009, Plaintiff
gave Home the required one month's notice, stating that he
planned to vacate on October 1, 2009. Pl. Dep. 72:12-20; Home's
Br. 7. The next day, Home offered Plaintiff a deal if he would
consider renting another apartment at Glen Brook. Pl. Dep. 77:7-
78:5. In pursuing this opportunity, Plaintiff rescinded his

September 1, 2009, notice of termination and Home removed him from the "move-out list." Id. at 78:8-9; see also Home's Br. Ex. J. Although Plaintiff and an intended roommate attempted to find a new apartment--with the roommate going so far as to sign a new lease--their efforts ultimately fell through. Pl. Dep. 78:8-79:2, 88:19-90:20; Pl.'s Resp. to Home 7. Therefore, on October 7, 2009, Plaintiff signed a third lease in order to secure his current apartment from December 12, 2009, to December 11, 2010. Home's Br. Ex. H, at 1-2.[3]

On October 23, 2009, Plaintiff received a late notice under his door with a balance due of $1,415.30.[4] Third Am. Class Action Compl. ("TAC") Ex. 8, ECF No. 205-1; Pl. Dep. 85:1-12. Plaintiff disputed this charge, and Home allegedly could not immediately explain it--although the onsite leasing office promised to "send it up to corporate." Pl. Dep. 86:12-15. After this, Plaintiff resolved to end his tenancy at Glen Brook and consulted with his brother and attorney, Konrad Jarzyna, in

---

[3]     Home states that the October 7, 2009, lease related to the different apartment Plaintiff attempted to lease with a roommate. Home's Br. 7. However, Home appears to be mistaken on this point, since both Plaintiff's deposition testimony and the October 7, 2009, lease clearly indicate that Plaintiff signed a third lease for his current apartment. See Pl. Dep. 89:21-23 ("After [the roommate] terminated that lease, I mean I signed a third lease for Apartment M, just so I would have a place to live."); see also Home's Br. Ex. H, at 1-2.

[4]     This amount was apparently later reduced to $1,300.40. TAC Ex. 8.

order to do so. Id. at 86:15-22. On October 28, 2009, Konrad
Jarzyna sent Home a letter informing it that Plaintiff would be
vacating on October 31, 2009, and declaring the October 7, 2009,
lease agreement to be "null and void." TAC Ex. 7; Home's Br. 8.
On October 31, 2009, Plaintiff vacated the apartment, having
given Home two days' notice. Pl. Dep. 72:23-73:8, 97:20-98:1.

On November 1, 2009, Plaintiff accessed his online
balance with Home and learned that it had increased to $2,200.
Pl.'s Resp. to Home 8 n.39; Home's Br. 10. Based on a Statement
of Deposit prepared by Home on November 16, 2009--by which date
the balance had increased to $2,397.92[5]--the amount included a
thirty-day notice fee of $888.00, a rental charge of $379.20 as
of September 30, 2009, a rental charge of $888.00 as of October
31, 2009, and miscellaneous other fees. Pl.'s Resp. to Home Ex.
1. The statement also indicated that Home had applied
Plaintiff's $500.00 security deposit to the amount due, which
reduced the total due to $1,897.92. Id. After moving out of Glen
Brook, Plaintiff had no contact with anyone at Home regarding
his balance due. Pl. Dep. 92:16-94:2; Home's Br. 10.

In February 2010, Home retained Defendant FCO--a
national debt collection company that regularly contracts with
Home--to pursue recovery of Plaintiff's alleged debt. TAC ¶ 54;

---

[5]     Plaintiff claims he did not receive this statement
until a later date. Pl.'s Resp. to Home 8 n.39; Pl. Dep. 94:13-
95:18.

Home's Br. 11; FCO's Br. 22. Home and FCO's relationship at that time was governed by a Collection Services Agreement ("CSA"), dated April 28, 2008. Home's Br. Ex. K. As part of its collection effort, FCO made several attempts to contact Plaintiff. For example, FCO sent Plaintiff its AV2 dunning letter on March 3, 2010; its HD1A dunning letter on March 22, 2010, and May 21, 2010; its HD1AC dunning letter on April 9, 2010; and its AV1 dunning letter on May 21, 2010. FCO's Br. 22-23; Pl.'s Mot. 2-4. However, FCO mailed these letters either to Plaintiff's old Glen Brook address or to Plaintiff's parents' address in Reading, Pennsylvania, and Plaintiff never received them. FCO's Br. 22-23.[6]

On June 21, 2010, FCO mailed a dunning letter which Plaintiff did receive, and which the parties have produced. See TAC Ex. 11; see also Pl. Dep. 30:16-31:11; First Am. Compl. ¶ 57, ECF No. 21. The June 21, 2010, letter demanded payment of a "past due account" in the amount of $1,897.92. TAC Ex. 11. On

_____

[6]     Plaintiff appears to suggest that he received these letters but that he "cannot locate [them] in his files, nor can FCO." Pl.'s Mot. 2 n.2, 4 n.10. However, the First Amended Complaint stated that, after vacating his apartment, the next time he was contacted regarding his alleged debt was on June 21, 2010, via a letter from FCO. First Am. Compl. ¶ 57, ECF No. 21. Plaintiff corroborated this in his deposition testimony. See Pl. Dep. 30:16-31:11 ("Q. Other than [the June 21, 2010, letter], did you receive any other letters from [FCO]? A. Not that I remember, no."). For purposes of summary judgment, the Court will consider the June 21, 2010, letter as the first one FCO sent that actually reached Plaintiff.

July 17, 2010, Plaintiff sent a letter to FCO disputing the debt
and requesting verification. Id. Ex. 12; FCO's Br. 21. FCO
responded by furnishing Plaintiff with the Statement of Deposit
mentioned above. TAC Ex. 13; FCO's Br. 21. Plaintiff alleges
that FCO also called him and his family members numerous times
throughout the spring and summer of 2010, despite having
received notice that Plaintiff was represented by his brother as
counsel. TAC ¶¶ 64-65.

Plaintiff brings the following six claims: FDCPA
violations, against Home and FCO (Count I); FCEUA violations,
against Home and FCO (Count II); UTPCPL violations, against Home
and FCO (Count III); Landlord and Tenant Act violations, against
Home only (Count IV); civil conspiracy, against Home and FCO
(Count V); and unjust enrichment, against Home and FCO (Count
VI).[7]

## II.  PROCEDURAL HISTORY

On August 18, 2010, Plaintiff filed his initial
Complaint. ECF No. 1. In light of myriad discovery disputes
among the parties, the Court on August 31, 2011, appointed
Stephanie Blair, Esquire, as Special Master in the case to
address all pretrial discovery matters. ECF No. 153. On November

---

[7]     As noted in the Procedural History section below, the
Court granted Defendants' motions to dismiss Count VI and it is
no longer part of this action.

21, 2012, Special Master Blair submitted her Final Report and Recommendation, ECF No. 190, which the Court adopted in full on April 4, 2013, over Plaintiff's objections, ECF No. 202.

On April 8, 2013, pursuant to the Court's Order, Plaintiff filed a Third Amended Class Action Complaint against Defendants. ECF No. 205. Defendants filed motions to dismiss for failure to state a claim as to Plaintiff's claim for unjust enrichment (Count VI of the Third Amended Class Action Complaint). ECF Nos. 207-208. Following a hearing, the Court granted these motions. ECF No. 220.

On December 19, 2013, Plaintiff filed a motion for class certification. ECF No. 222. The Court thereafter set deadlines for summary judgment motions and ordered that Defendants were to respond to Plaintiff's motion for class certification within twenty days of the disposition of all motions for summary judgment. ECF No. 227.

On December 30, 2013, Plaintiff filed a motion for summary judgment. ECF No. 225. On January 16, 2014, Defendant Home filed an Answer and Counterclaim against Plaintiff, seeking the balance of the alleged amount owed to Home by Plaintiff. ECF No. 231. On February 18, 2014, Home filed a motion for summary judgment, ECF No. 234, and Defendant FCO filed a cross-motion for summary judgment, ECF No. 233. All parties have filed their responses. On August 13, 2014, Plaintiff filed a supplemental

brief related to additional discovery material that Home had produced. ECF No. 246. Pursuant to the Court's order, Home filed a supplemental response on May 12, 2015. ECF No. 250.

On March 10, 2014, the Court issued an order staying all further proceedings in this case, pending the outcome of settlement negotiations by the parties before Magistrate Judge Rueter. ECF No. 239. The parties participated in settlement conferences on March 31, 2014, and August 11, 2014, to no avail. On February 12, 2015, the Clerk removed the case from suspense. The motions have been fully briefed and are now ripe for disposition.

## III. STANDARD OF REVIEW

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact." Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)). A fact is "material" if proof of its existence or nonexistence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could

return a verdict for the nonmoving party." <u>Anderson</u>, 477 U.S. at 248.

The Court will view the facts in the light most favorable to the nonmoving party. "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." <u>Pignataro v. Port Auth.</u>, 593 F.3d 265, 268 (3d Cir. 2010). While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the nonmoving party who must "set forth specific facts showing that there is a genuine issue for trial." <u>Anderson</u>, 477 U.S. at 250.

The guidelines governing summary judgment are identical when addressing cross-motions for summary judgment. See <u>Lawrence v. City of Philadelphia</u>, 527 F.3d 299, 310 (3d Cir. 2008). When confronted with cross-motions for summary judgment, "[t]he court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." <u>Schlegel v. Life Ins. Co. of N. Am.</u>, 269 F. Supp. 2d 612, 615 n.1 (E.D. Pa. 2003) (quoting 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2720 (1998)) (internal quotation marks omitted).

## IV.  DISCUSSION

### A.   COUNT I: FDCPA

Congress's purposes in enacting the FDCPA were "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). Plaintiffs claim that Defendants violated numerous provisions of the FDCPA, as discussed below.

### 1.   Claims Against Defendant Home

In his summary judgment brief, Plaintiff makes no mention of Defendant Home in connection with the FDCPA claim. However, the Third Amended Class Action Complaint alleges the following:

> 9. Defendant Home is a "creditor" with respect to the alleged debt at issue in this action and for others similarly situated as that term is defined by 15 U.S.C. § 1692a(6), and therefore also is a "debt collector" under the FDCPA with respect to those alleged debts because Home, "in the process of collecting [its] own debts, uses any name other than [its] own which would indicate that a third person is collection [sic] or attempting to collect such debts." 15 U.S.C. § 1692a(6).

> 10. Home regularly and routinely uses Defendant [FCO] to collect Home's debts using FCO's name, including the alleged debt at issue in this case as well as similar debts of other class members.

14

TAC ¶¶ 9-10 (first and second alterations in original). Thus, although Plaintiff does not allege that Home directly collected the debt, he nevertheless alleges that Home is subject to the FDCPA via the conduct of FCO, which did directly attempt to collect the debt.

"The FDCPA's provisions generally apply only to 'debt collectors.' Creditors--as opposed to 'debt collectors'-- generally are not subject to the FDCPA." Pollice v. Nat'l Tax Funding, L.P., 225 F.3d 379, 403 (3d Cir. 2000) (citation omitted). For the purposes of this action, the FDCPA defines a "debt collector" as

> any person . . . who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. . . . [T]he term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts.

15 U.S.C. § 1692a(6). "Creditor" is defined as "any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another." § 1692a(4).

In the portion of the Third Amended Class Action Complaint quoted above, Plaintiff appears to make two separate arguments. First, he asserts that Home is a debt collector by

nature of seeking to have its debts collected by FCO. But as
Judge Jones recently and convincingly articulated in a similar
case brought by Plaintiff's counsel here against Defendants Home
and FCO,

> [t]his assertion is erroneous, as Plaintiff conflates
> the meaning of creditor and debt collector under the
> FDCPA. The alleged debt was owed to Home . . . , and
> had been owed prior to the debt going into default;
> accordingly, Home . . . [was a] creditor[] for the
> purposes of the FDCPA. By attempting to collect [its]
> own debt, which Plaintiff acknowledges [it] did by
> retaining debt collector FCO, Home . . . do[es] not
> fall under the purview of the FDCPA and cannot be held
> liable for the claims as alleged.

Brignola v. Home Props., L.P., No. 10-3884, 2013 WL 1795336, at
*6 (E.D. Pa. Apr. 26, 2013) (Jones, J.).

Second, Plaintiff argues that Home, though a creditor,
fits within the § 1692a(6) exception for creditors who collect
their own debts using a name other than their own. In other
words, Home's attempt to collect its debt using FCO renders Home
itself a debt collector. The Brignola court addressed an
identical argument, finding that it

> distorts the FDCPA, which does not prohibit a creditor
> from indicating that a debt collector is attempting to
> collect a debt on behalf of the creditor. Rather, the
> FDCPA forbids a creditor from attempting to collect
> its own debt by falsely representing that the debt is
> being collected by another entity. Plaintiff does not
> claim that Home . . . attempted to collect [its] own
> debt after hiring FCO to collect . . . on [its]
> behalf, and any indication by Home . . . that FCO was
> collecting this debt does not transpose [it] into [a]
> debt collector[].

16

Id. The Court finds this reasoning to be persuasive. Home is a creditor under the FDCPA, not a debt collector, and thus is not subject to the provisions at issue in this case.[8]

Perhaps anticipating this result, Plaintiff also argues that Home is vicariously liable for FCO's alleged violations of the FDCPA. Pl.'s Resp. to Home 33. However, although the Third Circuit has held that "an entity which itself meets the definition of 'debt collector' may be held vicariously liable for unlawful collection activities carried out by another on its behalf," Pollice, 225 F.3d at 404, the Court has already found that Home is a creditor and not a debt collector. Plaintiff having offered no authorities to the contrary,[9] the

---

[8]      In the Court's previous ruling on Defendants' motions to dismiss, the Court considered Plaintiff's argument that Defendant Home is an "operating partnership" owned by another entity, Home Properties, Inc., and that Home therefore is a debt collector under the FDCPA's corporate affiliate exemption at § 1692a(6)(B). Jarzyna v. Home Props., L.P., 763 F. Supp. 2d 742, 751 (E.D. Pa. 2011) [hereinafter Jarzyna I]. However, Plaintiff now appears to have dropped this argument and the Court will not treat it further.

[9]      None of Plaintiff's cases is on point. See Pl.'s Resp. to Home 33 (citing F.T.C. v. Check Investors, Inc., 502 F.3d 159, 172 (3d Cir. 2007) (holding that when a debt collector purchases a debt from a creditor, the debt collector does not thereby become the "creditor" under the FDCPA); Fox v. Citicorp Credit Servs., Inc., 15 F.3d 1507, 1516 (9th Cir. 1994) (allowing vicarious liability under the FDCPA in an attorney-client context); Dahlhammer v. Citibank (S.D.) N.A., No. 05-1749, 2006 WL 3484352, at *7 (M.D. Pa. Nov. 30, 2006) (noting that vicarious liability exists between debt collectors); Flamm v. Sarner & Assocs., P.C., No. 02-4302, 2006 WL 43770, at *4 (E.D. Pa. Jan. 3, 2006) (Angell, Mag. J.) (same); Commonwealth

Court finds that Home cannot be held vicariously liable under the FDCPA for FCO's alleged conduct.

The facts are undisputed that Home transferred the alleged debt to FCO and FCO proceeded to collect on it. As a matter of law, this Court finds Home to be a creditor for which no vicarious liability under the FDCPA can attach based on the actions of FCO as debt collector. Therefore, related to Count I of the Third Amended Class Action Complaint, Plaintiff's motion for summary judgment will be denied as to Defendant Home, and Home's motion for summary judgment will be granted.

### 2.   Claims Against Defendant FCO

As presented in his motion for summary judgment, Plaintiff's FDCPA claims against Defendant FCO[10] may be grouped as follows: (1) FCO's standard dunning letters do not adequately provide the required information, in violation of 15 U.S.C. § 1692g(a); (2) FCO failed to verify the debt per Plaintiff's demand and improperly continued its attempts to collect on the debt, in violation of § 1692g(b); (3) FCO's employees did not identify themselves as working for a debt collector when they

---

ex rel. Preate v. Events Int'l, Inc., 585 A.2d 1146, 1147-48 (Pa. Commw. Ct. 1991) (considering claims under Pennsylvania law, not the FDCPA); and Fretts v. Pavetti, 422 A.2d 881, 883 (Pa. Super. Ct. 1979) (same)).

[10]    The parties do not dispute that FCO is a "debt collector" that is subject to the FDCPA.

made calls to Plaintiff, in violation of §§ 1692e(11) and
1692d(6); and (4) FCO illegally attempted to collect debt that
Plaintiff did not owe, in violation of §§ 1692f(1), 1692e(2),
and 1692e(10). The Court will evaluate each of these claims
below.

> a.   § 1692g(a): FCO's dunning letters do not
>      adequately provide the required information

Under the FDCPA, a debt collector must include the
following information in its initial communication to a debtor,
or in a communication to be sent within five days after the
initial communication:

(1)   the amount of the debt;

(2)   the name of the creditor to whom the debt is
      owed;

(3)   a statement that unless the consumer, within
      thirty days after receipt of the notice, disputes
      the validity of the debt, or any portion thereof,
      the debt will be assumed to be valid by the debt
      collector;

(4)   a statement that if the consumer notifies the
      debt collector in writing within the thirty-day
      period that the debt, or any portion thereof, is
      disputed, the debt collector will obtain
      verification of the debt or a copy of a judgment
      against the consumer and a copy of such
      verification or judgment will be mailed to the
      consumer by the debt collector; and

(5)   a statement that, upon the consumer's written
      request within the thirty-day period, the debt
      collector will provide the consumer with the name
      and address of the original creditor, if
      different from the current creditor.

19

15 U.S.C. § 1692g(a).

When a debt collector conveys this information, "more is required than the mere inclusion of the statutory debt validation notice in the debt collection letter--the required notice must also be conveyed effectively to the debtor." Wilson v. Quadramed Corp., 225 F.3d 350, 354 (3d Cir. 2000). In determining whether a particular validation notice meets the statutory requirements, it must "be interpreted from the perspective of the least sophisticated debtor." Graziano v. Harrison, 950 F.2d 107, 111 (3d Cir. 1991) (internal quotation marks omitted). This is a relatively low standard, as the Third Circuit has observed:

> The least sophisticated debtor standard requires more than "simply examining whether particular language would deceive or mislead a reasonable debtor" because a communication that would not deceive or mislead a reasonable debtor might still deceive or mislead the least sophisticated debtor. [Wilson], 225 F.3d at 354 (internal quotation marks and citation omitted). This lower standard comports with a basic purpose of the FDCPA: as previously stated, to protect "all consumers, the gullible as well as the shrewd," "the trusting as well as the suspicious," from abusive debt collection practices.

Brown v. Card Serv. Ctr., 464 F.3d 450, 454 (3d Cir. 2006). But the standard "does not go so far as to provide solace to the willfully blind or non-observant." Campuzano-Burgos v. Midland Credit Mgmt., Inc., 550 F.3d 294, 299 (3d Cir. 2008). Rather, it works to "prevent[] liability for bizarre or idiosyncratic

interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care." Brown, 464 F.3d at 454 (quoting Wilson, 225 F.3d at 354-55) (internal quotation marks omitted). Specific to a § 1692g claim, a statutorily compliant validation notice will "be in print sufficiently large to be read, and must be sufficiently prominent to be noticed. More importantly . . . , the notice must not be overshadowed or contradicted by accompanying messages from the debt collector." Graziano, 950 F.2d at 111. Finally, in this Circuit, "whether language in a collection letter contradicts or overshadows the validation notice is a question of law." Wilson, 225 F.3d at 353 n.2.

Here, Plaintiff references at least three of FCO's standard dunning letters--forms AV2, HD1A, and HD1AC--each of which is alleged either to have omitted the § 1692g validation notice or to have overshadowed such notice with other language. See Pl.'s Br. 20.

### i.   The AV2 and HD1AC letters

FCO concedes that its standard AV2 and HD1AC letters (attached as Appendices to this memorandum) do not contain the mandatory FDCPA disclosures, but notes that "these letters are designed as follow up correspondence that is sent after the

mailing of the initial letter that includes the § 1692g disclosures." FCO's Br. 29. The parties do not address whether FCO also sent an initial letter (which Plaintiff did not receive) that included the required disclosures. Assuming that, for purposes of the motions for summary judgment, the initial letter contained the required disclosures, it remains a question of fact as to whether the letter was ever sent or received.[11] Accordingly, there remains a genuine dispute of material fact as to whether FCO violated the FDCPA when it sent the AV2 and HD1AC letters. Plaintiff's motion for summary judgment on this claim will be denied, and FCO's cross-motion for summary judgment will be denied as well.[12]

---

[11]      Plaintiff attaches an exhibit that purports to show FCO's "collection file" related to Plaintiff's account. See Pl.'s Mot. Ex. 4. Although this document appears to note when FCO took certain actions on Plaintiff's account, the parties have not addressed this in detail and it remains unclear what each notation means. This document, therefore, does not on its own eliminate the genuine dispute of material fact regarding what letters FCO sent to Plaintiff.

[12]      FCO also argues that Plaintiff never received the AV2 and HD1AC letters, and therefore they could not have violated the FDCPA. FCO's Br. 29. Rather, FCO would limit Plaintiff's FDCPA claim to the first letter he actually received: the HD1A letter dated June 21, 2010. Id. at 30. However, the question of whether a defendant's mere sending of a letter will implicate FDCPA liability, or whether a plaintiff must receive the letter in order to pursue an FDCPA claim with respect to it, need not be addressed by the Court at this time, as the factual issues mentioned above preclude further consideration of FCO's argument.

ii.  The HD1A letter[13]

_____

[13]        Plaintiff argues that "[t]his Court is not writing on
a clean slate" with respect to the HD1A letter, since the Court
already denied FCO's motion to dismiss on the § 1692g claim.
Pl.'s Resp. to Home 48. In Plaintiff's estimation, FCO is
impermissibly attempting to relitigate this prior ruling, which
remains binding under the law of the case doctrine. See id. at
66-68.

     The Third Circuit has provided:

     The law of the case doctrine directs courts to refrain
     from re-deciding issues that were resolved earlier in
     the litigation. The doctrine applies as much to the
     decisions of a coordinate court in the same case as to
     a court's own decisions. . . .

     The law of the case doctrine does not limit a
     federal court's power; rather, it directs its exercise
     of discretion. . . . This Circuit has recognized
     several extraordinary circumstances that warrant a
     court's reconsideration of an issue decided earlier in
     the course of litigation. They include situations in
     which:  (1) new  evidence  is  available;  (2) a
     supervening new law has been announced;  or (3) the
     earlier decision was clearly erroneous and would
     create manifest injustice.

Pub. Interest Research Grp. of N.J., Inc. v. Magnesium Elektron,
Inc., 123 F.3d 111, 116-17 (3d Cir. 1997) (citations omitted)
(internal quotation marks omitted).

     In the case at bar, no new evidence has been provided
on the § 1692g claim; indeed, the Court denied the motion to
dismiss as a matter of law, based on its review of the very HD1A
collection letter that remains at issue here. See Jarzyna I, 763
F. Supp. 2d at 748-49. Likewise, in the time since the Court
ruled on the motion to dismiss, no supervening new law has been
announced, and no controlling court decision has come down.

     Nevertheless, the Court finds that certain other
factors render this an extraordinary circumstance that warrants
the Court's reconsideration of the issue. First, as FCO notes,
the Court mistakenly denied as moot its motion for leave to file
a reply brief, see Jarzyna I, 763 F. Supp. 2d at 747 n.2, which
was FCO's only opportunity to address whether the validation

Following is the HD1A letter, dated June 21, 2010, that Plaintiff received from FCO:

---

notice was overshadowed by other language, given that Plaintiff raised that argument for the first time in its response to the motion to dismiss. The section of FCO's summary judgment brief addressing this question is carefully reasoned and cogent, and deserves the Court's attention. Second, although no new, on-point authority requires this Court to reverse its earlier decision, a number of courts have continued to examine the question of overshadowing under § 1692g, and these decisions provide helpful guidance. Not least among these is Caprio v. Healthcare Revenue Recovery Group, LLC, 709 F.3d 142 (3d Cir. 2013), which analyzed the "please call" language debt collectors, and FCO here, include in collection letters. See id. at 150-54. Also highly relevant is Velazquez v. Fair Collections & Outsourcing, Inc., No. 12-4209, 2013 WL 4659564 (N.D. Ill. Aug. 30, 2013), in which the court considered the identical defendant and claim as here, and specifically disagreed with this Court's ruling in Jarzyna I. See id. at *4-5. Finally, the Court recognizes that a deeper look at the reasoning of relevant Third Circuit cases--particularly Wilson and Graziano--merits reconsideration of its previous ruling. For these reasons, the Court will proceed afresh with its analysis of the overshadowing question.


Fair Collections & Outsourcing

12304 Baltimore Ave, #E
Beltsville, MD 20705

Hours 8:00am - 6:00pm EST, Mon-Fri
Toll-Free Phone:(877) 324-7959
Fax: (240) 374-5651

June 21, 2010

Mariusz Jarzyna
148 Merion Ln
Reading PA 19607-3405

Pay in full online anytime at: WWW.PAYFCO.COM
Account Number: 3537707   PIN Number: 2495

| Account Number: 3537707 | Assigned Principal: | Payments To FCO: | Account Balance: |
|---|---|---|---|
| Creditor: GLEN BROOK 01542 | $1897.92 | $0.00 | $1897.92 |
| HOME PROPERTIES OF NEW YORK INC | | | |

## Payment demand – $1897.92

Dear Mariusz Jarzyna:

Our client is demanding full payment of your past due account. They have provided data or documentation to support this debt.

Our professional debt collectors are here to help you resolve this matter.

Contact Fair Collections & Outsourcing at (877) 324-7959
8:00AM – 6:30PM Eastern Monday-Friday.

Check by phone, Visa, and Master Card accepted.

This is an attempt to collect a debt by a debt collector. Any information obtained will be used for that purpose. Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice this office will provide you with the name and address of the original creditor, if different from the current creditor.

SEE REVERSE SIDE FOR IMPORTANT INFORMATION REGARDING STATE AND FEDERAL LAWS AND YOUR RIGHTS.

IMPORTANT INFORMATION

This is an attempt to collect a debt by a debt collector. Any information obtained will be used for that purpose.

You have a right to inspect your credit report. As required by law, you are hereby notified that a negative credit report reflecting on your credit report may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations. Nonprofit credit counseling services may be available in the area.

The collection agent assigned to your account may change from time to time. If you experience any difficulty finding the appropriate collection agent handling your account, contact the collection manager at 877-324-7959.

If this letter is from Fair Collections & Outsourcing of New England, Inc., the following disclosures also apply:

IDAHO: Managers can be reached at 877-324-7959, Mon.-Fri. 8am to 6:30pm, EST.

MAINE: Contact us at 877-324-7959; Hours of Operation are Mon.-Fri. 8am to 6:30pm, EST.

MASSACHUSETTS: Massachusetts Office: 84 State Street, Boston, MA 02109; Office Hours: Mon.-Fri. 8am to 6:30pm, EST. Send Payments to us at 12304 Baltimore Avenue, Suite E, Beltsville, MD 20705. Contact us at 877-324-7959.

> NOTICE OF IMPORTANT RIGHTS. YOU HAVE THE RIGHT TO MAKE A WRITTEN OR ORAL REQUEST THAT TELEPHONE CALLS REGARDING YOUR DEBT NOT BE MADE TO YOU AT YOUR PLACE OF EMPLOYMENT. ANY SUCH ORAL REQUEST WILL BE VALID FOR ONLY TEN DAYS UNLESS YOU PROVIDE WRITTEN CONFIRMATION OF THE REQUEST POSTMARKED OR DELIVERED WITHIN SEVEN DAYS OF SUCH REQUEST. YOU MAY TERMINATE THIS REQUEST BY WRITING TO THE DEBT COLLECTOR.

WISCONSIN: This collection agency is licensed by the Division of Banking, P.O. Box 7876, Madison, Wisconsin 53707.

If this letter is from Fair Collections & Outsourcing, Inc., the following disclosures also apply:

CALIFORNIA: The state Rosenthal Fair Debt Collection Practices Act and the federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 a.m. or after 9 p.m. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP or www.ftc.gov."

COLORADO: FOR INFORMATION ABOUT THE COLORADO FAIR DEBT COLLECTION PRACTICES ACT, SEE WWW.AGO.STATE.CO.US/CADC/CADCmain.cfm

TAC Ex. 11, HD1A Letter 1-2.

        Plaintiff complains that this letter is structured so that the payment demand overshadows the statutorily required validation notice, and thus the letter violates § 1692g. Specifically, Plaintiff takes issue with the following:

- "Payment demand - $1897.92" appears in bold text in a prominent, central position on the page;

- A boldly bordered box appears at the top right, inviting the recipient to "Pay in full online anytime" at the website listed;

- The first line of the letter's main text announces that FCO's client (i.e., Home) "is demanding full payment of your past due account";

- Farther down the page, an FCO telephone number is provided, as is a statement indicating that checks and credit cards are accepted;

- The validation notice itself is "[b]uried at the bottom of the letter, in patently non-descript font," and is followed by a boldly lettered and capitalized notice that the reverse side has "important information regarding state and federal laws and your rights"; and

- The reverse side does not contain adequate disclosures.

See Pl.'s Br. 25-27; TAC Ex. 11, HD1A letter 1-2.

        In Graziano, the Third Circuit's seminal case on the overshadowing of validation notices, a debt collector sent the plaintiff a collection notice that, on the first page, "threatened legal action within ten days unless the debt was resolved in that time"; at the bottom of the first page, noted, "See reverse side for information regarding your legal status!"; and, on the reverse side, printed the proper validation notice in a manner "sufficient to bring it to [the plaintiff's] attention." 950 F.2d at 109. The court found "a reasonable probability that the least sophisticated debtor, faced with a demand for payment within ten days and a threat of immediate legal action if payment is not made in that time, would be induced to overlook his statutory right to dispute the debt

27

within thirty days." Id. at 111. Because "[a] notice of rights, when presented in conjunction with such a contradictory demand, is not effectively communicated to the debtor," the court held that the other messages overshadowed the required notice, and the collection letter violated § 1692g. Id.

In Wilson, the Third Circuit reached the opposite conclusion. There, the collection letter at issue contained three paragraphs, each "printed in the same font, size and color type-face." 225 F.3d at 352. The first paragraph read: "Our client has placed your account with us for immediate collection. We shall afford you the opportunity to pay this bill immediately and avoid further action against you." Id. The second paragraph read: "To insure immediate credit to your account, make your check or money order payable to ERI. Be sure to include the top portion of this statement and place your account number on your remittance." Id. The third paragraph provided the validation notice. Noting that "the debt collection letter here presents a close question," id. at 353, the court nevertheless held that it "did not violate section 1692g of the Act for the reason that the first two paragraphs of the collection letter neither overshadow nor contradict the validation notice," id. at 356.[14]

_____

[14]       Congress amended § 1692g(b) several years after the Wilson decision, as follows: "Any collection activities and communication during the 30-day period [during which the consumer may dispute the alleged debt] may not overshadow or be

The court supported this conclusion by analyzing the three paragraphs in terms of form and substance[15]:

> First of all, upon review of the physical characteristics and form of the letter, we have concluded that the first two paragraphs of the letter do not overshadow the validation notice. The validation notice was presented in the same font, size and color type-face as the first two paragraphs of the letter. Moreover, the required notice was set forth on the front page of the letter immediately following the two paragraphs that Wilson contends overshadow and contradict the validation notice. Accordingly, Wilson's overshadowing claim must fail.
>
> Second, an actual or apparent contradiction between the first two paragraphs and the third one containing the validation notice does not exist here. Unlike the collection letter in Graziano, which demanded payment within ten days and threatened immediate legal action if payment was not made in that time, Quadramed's letter makes no such demand or threat. Instead, Wilson is presented with two options: (1) an opportunity to pay the debt immediately and avoid further action, or (2) notify Quadramed within thirty days after receiving the collection letter that he disputes the validity of the debt. As written, the letter does not emphasize one option over the other, or suggest that Wilson forego the second option in favor of immediate payment. Thus, we find the least sophisticated debtor would not be induced to overlook his statutory right to dispute the debt within thirty days.

Id. (footnote omitted).

---

inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor." The Third Circuit has noted "that this amendment has generally been viewed as a codification of the 'overshadowed or contradicted' rule or gloss previously adopted by the courts themselves." Caprio, 709 F.3d at 148-49.

[15]     This dichotomy was remarked upon by the court in Caprio. See 709 F.3d at 150.

After closely examining the collection letter in the instant case, the Court finds that it falls much closer to Wilson's letter than to Graziano's. Looking at the letter's formal elements, although "Payment demand - $1897.92" is bolded and certainly draws the eye, the validation notice is clearly printed on the front of the form, in the middle of the page, and in a font that appears as big as, if not slightly bigger than, the text in the body of the letter. The direction to see the reverse side for important legal information is located below the validation notice and, although it is capitalized, it does not appear to be in appreciably larger font size than the notice. Thus, although the payment demand is highlighted to a greater extent than in Wilson (and is not incorporated into one of three similar paragraphs), the demand and the validation notice are clearly perceptible and in reasonable proximity on the front of the form. This retains the effect that the letter's recipient has a choice, as in Wilson, between paying the debt and disputing its validity.[16]

Moreover, neither the demand nor the letter's main text contains the kind of "screaming" headlines, blunt

---

[16]     The validation notice's placement--in particular, whether it appeared on the front or back of the letter--carried significant analytical weight in the Wilson court's decision. See Wilson, 225 F.3d at 357-59 (distinguishing cases in which courts found § 1692g violations, but in which the validation notices appeared on the backs of the collection letters).

imperatives, and copious use of capital letters and exclamation points used by letters other courts have found to be violative of § 1692g. See, e.g., Miller v. Payco-Gen. Am. Credits, Inc., 943 F.2d 482, 484 (4th Cir. 1991) ("The front of the . . . form demands 'IMMEDIATE FULL PAYMENT' and commands the consumer to 'PHONE US TODAY,' emphasized by the word 'NOW' emblazoned in white letters nearly two inches tall against a red background.").[17] For these reasons, the Court finds that the letter's form does not cause other messages to overshadow the validation notice.

Looking to the letter's substance, Plaintiff argues that the payment demand "insisted on immediate payment of the bogus debt and did not even afford the alleged debtor the 10 days in Graziano." Pl.'s Br. 28 n.34. Plaintiff also considers the letter's offer to "Pay in full online anytime" and its notice of acceptance of payment by check and credit card to constitute inappropriately "immediate and urgent" demands. Id. at 27. However, unlike in Graziano, nowhere does FCO's letter require action by a certain time. In fact, the payment demand

---

[17]    See also, e.g., Hishmeh v. Cabot Collection Sys., L.L.C., No. 13-4795, 2014 WL 460768, at *1 (E.D. Pa. Feb. 5, 2014) (evaluating a letter stating, among other things, "DO NOT IGNORE THIS NOTICE--CONTACT THIS OFFICE IMMEDIATELY!!"); Rabideau v. Mgmt. Adjustment Bureau, 805 F. Supp. 1086, 1089 (W.D.N.Y. 1992) (considering a letter stating, "THIS IS A DEMAND FOR PAYMENT IN FULL TODAY. TO AVOID FURTHER CONTACT, RETURN THE BOTTOM SECTION OF THIS NOTICE WITH YOUR FULL PAYMENT TODAY!").

does not use the word "immediately" at all, as the <u>Wilson</u> letter did. Any immediacy in the payment demand is perhaps implicit in its central location, bolded text, and larger size. However, these features also serve the purpose of alerting the recipient to the fact and amount of the debt.

The Court agrees with its counterpart in the Northern District of Illinois that, at most, "[FCO's] payment 'demand' and request for payment online 'anytime' is in the nature of puffing, which is rhetoric designed to create a mood rather than communicate information or misinformation, and does not, standing alone, run afoul of § 1692g(b)." <u>Velazquez v. Fair Collections & Outsourcing, Inc.</u>, No. 12-4209, 2013 WL 4659564, at *5 (N.D. Ill. Aug. 30, 2013).[18] But even assuming that the payment demand and similar terms communicated a sense of immediacy, this would not change the Court's analysis, as a collection letter's request "for [the debtor's] immediate attention . . . has never been found to violate section 1692g."

_____

[18]      The <u>Velazquez</u> court evaluated an FCO collection letter identical to the one here. 2013 WL 4659564, at *4. Plaintiff denies the utility of the <u>Velazquez</u> opinion, arguing that the Seventh Circuit uses an "unsophisticated consumer" standard which differs substantively from the Third Circuit's "least sophisticated debtor" standard. <u>See</u> Pl.'s Resp. to FCO 59-62. However, the <u>Velazquez</u> court eschewed such a notion, noting that "the Seventh Circuit did not intend to create a new substantive standard. Rather, 'the unsophisticated consumer standard is a distinction without much of a practical difference in application.'" 2013 WL 4659564, at *4 n.6 (quoting <u>Avila v. Rubin</u>, 84 F.3d 222, 227 (7th Cir. 1995)).

Vasquez v. Gertler & Gertler, Ltd., 987 F. Supp. 652, 657 (N.D. Ill. 1997) (cited favorably by Wilson, 225 F.3d at 360). For these reasons, the Court finds that the payment demand and similar terms here do not contradict the validation notice by demanding action sooner than the statutorily required thirty-day period. Instead, unlike the letter in Graziano but like that in Wilson, the letter here preserves the impression--discernable by even the least sophisticated debtor, who the Court must assume will read the entire letter with care, Wilson, 225 F.3d at 354-55--that it presents a choice between paying the debt and pursuing validation.

        The letter's other features do not change this result. First, Plaintiff surmises a "sinister" purpose in the letter's several mentions of FCO's telephone number, which is that it obscures the fact that, under § 1692g, a debtor must dispute the debt in writing in order to have it validated. See Pl.'s Br. 29-30. In Caprio v. Healthcare Revenue Recovery Group, LLC, the Third Circuit considered this question in the context of a collection letter that included the following notice: "If we can answer any questions, or if you feel you do not owe this amount, please call us toll free at 800-984-9115 or write us at the above address." 709 F.3d 142, 150 (3d Cir. 2013). The court found that this language overshadowed the validation notice because "this 'please call' language basically instructed [the]

debtor to call or write in order to dispute the debt itself"--an action insufficient to dispute the debt under § 1692g. See also, e.g., Hishmeh v. Cabot Collection Sys., L.L.C., No. 13-4795, 2014 WL 460768, at *1 (E.D. Pa. Feb. 5, 2014) (finding a collection letter violated § 1692g where it directed the debtor to "advise" or "contact" the debt collector in order to dispute the debt, but did not specifically instruct the debtor to do so in writing).

Here, by contrast, there is no indication in the collection letter that the debtor must call FCO in order to dispute the debt. After announcing the payment demand, the letter merely states, "Our professional debt collectors are here to help you resolve this matter," and follows this with the telephone number. TAC Ex. 11. Underneath the telephone number is the phrase "Check by phone, Visa, and Master Card accepted." Id. A space of several lines then separates this portion of the letter from the validation notice. The letter's reverse side reads, "The collection agent assigned to your account may change from time to time. If you experience any difficulty finding the appropriate collection agent handling your account, contact the collection manager at 877-324-7959." Id. This layout would not confuse the least sophisticated debtor because the telephone number is provided to the debtor as an alternative method by which he could pay off the debt, not as a method by which he

should dispute the debt. The telephone number therefore does not overshadow the validation notice.

Second, and finally, neither the notice to see the reverse side for important legal information nor the reverse side itself has any bearing on this analysis. Although Plaintiff is correct that the reverse side does not contain adequate § 1692g disclosures, see Pl.'s Resp. to FCO 55, this is irrelevant since such disclosures were adequately presented on the letter's face. Furthermore, the notice to see the reverse side, appearing below the validation notice and apparently referring to additional state and federal laws, does not overshadow or contradict the validation notice. The remaining disclosures on the reverse side relate to state law and are not applicable here.

For all of the above reasons, and considering the perspective of the least sophisticated debtor, the HD1A collection letter as a whole does not overshadow or contradict the validation notice under § 1692g. Plaintiff's motion for summary judgment on this claim will be denied and FCO's cross-motion for summary judgment will be granted.

     b.    <u>§ 1692g(b): FCO failed to verify the debt
and improperly continued its collection
attempts</u>[19]

Plaintiff claims that, upon sending a letter to FCO
disputing the alleged debt, FCO verified the debt by sending him
"just another copy of the same bill or invoice sent by Home to
FCO for collection in the first place." Pl.'s Br. 31. As noted
above, FCO sent Plaintiff the Statement of Deposit, listing the
individual charges that comprised the alleged debt. <u>See</u> TAC Ex.
13. This was insufficient, according to Plaintiff, because it
did not provide "some proof of the <u>grounds</u> or <u>basis</u> for the
alleged debt in addition to any itemization of the amounts
claimed." Pl.'s Br. 31. Instead, Plaintiff argues that FCO
should have at least sent the Resident Ledger Detail Report,
which "list[s] <u>all</u> financial transactions for each tenant." <u>Id.</u>

---

[19]     In <u>Jarzyna I</u>, the Court denied FCO's motion to
dismiss, holding that FCO failed to properly verify Plaintiff's
debt. 763 F. Supp. 2d at 749. Nevertheless, the Court will
reconsider its previous ruling, which now appears to have been
based on an error regarding the record evidence. For further
discussion on the law of the case doctrine, see <u>supra</u> note 13.

     Specifically, when the Court considered the motion to
dismiss, it believed that FCO "provided verification [for
Plaintiff's debt] by simply copying the same bill or invoice
sent in the June 21, 2010, letter." <u>Jarzyna I</u>, 763 F. Supp. 2d
at 749. The Court held that "[s]imply copying the invoice used
in the dunning letter is insufficient." <u>Id.</u> On closer look,
however, Plaintiff has never shown that a bill or invoice
accompanied the HD1A letter dated June 21, 2010. Per Plaintiff's
submissions, the HD1A letter was sent without any attachments.
<u>See</u> TAC Ex. 11. The Court's error justifies another look at this
issue. <u>See</u> <u>Pub. Interest Research Grp.</u>, 123 F.3d at 116-17.

at 32-33. In addition, Plaintiff believes FCO should have
attempted "to verify the validity of the debt for
plaintiff . . . by . . . inquiring of Home whether the debt was
invalid and uncollectible under state landlord-tenant law." Id.
at 33. By continuing to pursue the debt after improperly
verifying it, Plaintiff contends that FCO violated § 1692g(b).

Section 1692g(b) provides, in relevant part:

> If the consumer notifies the debt collector in writing
> within the thirty-day period described in subsection
> (a) of this section that the debt, or any portion
> thereof, is disputed, or that the consumer requests
> the name and address of the original creditor, the
> debt collector shall cease collection of the debt, or
> any disputed portion thereof, until the debt collector
> obtains verification of the debt or a copy of a
> judgment, or the name and address of the original
> creditor, and a copy of such verification or judgment,
> or name and address of the original creditor, is
> mailed to the consumer by the debt collector.

15 U.S.C. § 1692g(b). Aside from its opinion in Graziano, the
Third Circuit has not had occasion to articulate definitively
what "verification" might entail. See Sasscer v. Donnelly, No.
10-464, 2011 WL 1522320, at *4 (M.D. Pa. Apr. 20, 2011) (noting
Graziano to be "the one reported Third Circuit case that
addresses the adequacy of the verification supplied by a debt
collector"). In Graziano, the defendant debt collector verified
the alleged debt by furnishing "a bill and computer printout for
[the] debt." 950 F.2d at 109. The Court affirmed the district
court's conclusion that these materials were sufficient: "The

computer printouts provided to Graziano were sufficient to inform him of the amounts of his debts, the services provided, and the dates on which the debts were incurred." <u>Id.</u> at 113.[20]

Here, FCO's provision of the Statement of Deposit was sufficient verification of the alleged debt. The collection letter that Plaintiff received included only the amount of the payment demand. The Statement of Deposit itemized the charges that made up the total payment demand. This document sufficiently informed Plaintiff of the amount of the debt, the "services provided" (here, charges included), and the dates to which these charges related. <u>See id.</u> Although Plaintiff complains in retrospect that FCO should have sent the Resident Ledger Detail Report as well, as the Court suggests in the discussion of Plaintiff's FCEUA claims below, the Statement of Deposit is consistent with the Resident Ledger Detail Report. The fact that this latter document provides a full history of Plaintiff's transactions does not change the Court's conclusion that the Statement of Deposit--which fully supports the amount of alleged debt--is sufficient verification.

---

[20]     Plaintiff points to the district court opinion in <u>Graziano</u> in an attempt to distinguish it on the facts from the instant case. <u>See</u> Pl.'s Br. 32. However, the Third Circuit in that case provided clear criteria for evaluating a verification's sufficiency, which the Court need not look beyond.

Moreover, Plaintiff's suggestion that FCO was required to verify the alleged debt with Home is ill-founded. In support of this argument, Plaintiff relies on Casterline v. Credit Protective Services of I.C. Systems, Inc., No. 89-3951, 1991 U.S. Dist. LEXIS 21728 (D.N.J. June 26, 1991). In that case, the plaintiff complained that the defendant debt collector failed to properly verify a late fee for a videotape that had not been returned. Id. at *4. The court agreed, finding that the defendant should have provided plaintiff with an "agreement to pay a late fee for a non-returned videotape." Id. at *5. The court noted that "[w]ithout verification which includes at least a colorable claim of entitlement to the debt, the provisions of the FDCPA . . . are less effective." Id.

The problem with Plaintiff's narrow focus on Casterline's "colorable claim of entitlement" language is that it seems to impose a duty on debt collectors over and above that imposed by Graziano. Plaintiff misinterprets § 1692g(b) to require the debt collector to perform its own verification against the creditor's files. However, while courts interpreting this section have required that a debt collector do more than "merely repeat its assertion that a debt is due," Norton v. Wilshire Credit Corp., No. 95-3223, 1997 U.S. Dist. LEXIS 23360, at *22 (D.N.J. July 14, 1997), they have not read into it an affirmative obligation on the debt collector's part to

39

investigate the debt's validity. See, e.g., Chaudhry v. Gallerizzo, 174 F.3d 394, 406 (4th Cir. 1999) (agreeing with the district court that debt collectors need "not . . . vouch for the validity of the underlying debt" (internal quotation marks omitted)).

The debt collector is not charged with auditing the creditor's records or opining on the debt's validity. In other words, the debt collector is not the judge of the merits of the creditor's claim against the debtor. Rather, the debt collector must merely forward supporting information along to the debtor, so that the debtor can better understand the alleged debt's origin and perhaps dispute it further, if warranted.[21] At most, the statutory language would have the debt collector "obtain[] verification" from the creditor. See § 1692g(b). But even under such a standard, FCO here reasonably complied with the statute. FCO forwarded Plaintiff a more detailed statement explaining the charges underlying the alleged payment demand. It had no reason to believe that more was needed.[22]

---

[21]     See also Chaudhry, 174 F.3d at 406 ("Consistent with the legislative history, verification is only intended to 'eliminate the . . . problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid.'" (quoting S. Rep. No. 95-382, at 4 (1977)).

[22]     Contrary to Plaintiff's worries, the Court's ruling does not engraft a "specificity requirement" onto Congress's debt verification scheme. See Pl.'s Resp. to FCO 66. At the same time, it is not unreasonable to require a debtor to indicate

In sum, the Third Circuit has only held that verification entails informing the debtor of the amount of the debt, the services provided, and the dates on which the debts were incurred. See Graziano, 950 F.2d at 113. FCO's provision of the Statement of Deposit fulfilled these criteria and to the extent that Casterline requires more than Graziano, the Court does not follow it. Plaintiff complains that FCO sent him "just another copy of the same bill or invoice sent by Home to FCO for collection in the first place," Pl.'s Br. 31, but this is exactly what FCO was supposed to do. Accordingly, the Court finds that FCO did not violate § 1692g(b) by continuing to collect on the debt after providing verification, and Plaintiff's claim under this section fails. Plaintiff's motion for summary judgment on this claim will be denied and FCO's cross-motion for summary judgment will be granted.

---

which portions of the debt he disputes. Plaintiff here summarily disputed the debt, see TAC Ex. 12 ("I would like to dispute the validity of this debt and request a copy of a judgment or verification be mailed to me at the above stated address."). In response, FCO provided a listing of the underlying charges. Had Plaintiff responded that he objected to the thirty-day notice fee specifically, it perhaps would have behooved FCO to provide additional documents supporting that specific charge. However, that is not the case here. The Court finds FCO's verification adequate under the circumstances.

c.   <u>§§ 1692e(11) and 1692d(6): FCO failed to
self-identify as a debt collector over the
telephone</u>

Plaintiff asserts that FCO violated sections 1692e(11)

and 1692d(6) when its employees left voice messages on his cell

phone but did not disclose that the caller was seeking to

collect a debt. Pl.'s Br. 33.

Section 1692e(11) provides that the following violates

the FDCPA:

> The failure to disclose in the initial written
> communication with the consumer and, in addition, if
> the initial communication with the consumer is oral,
> in that initial oral communication, that the debt
> collector is attempting to collect a debt and that any
> information obtained will be used for that purpose,
> and the failure to disclose in subsequent
> communications that the communication is from a debt
> collector, except that this paragraph shall not apply
> to a formal pleading made in connection with a legal
> action.

Section 1692d(6) prohibits, "[e]xcept as provided in section

1692b of this title, the placement of telephone calls without

meaningful disclosure of the caller's identity." Section 1692b

prevents debt collectors from disclosing to third parties the

nature of the communication or that the debtor owes any debt.[23]

---

[23]   In a recent case dealing with this provision, the
Third Circuit held that the debt collector carries the burden of
proof in "alleg[ing] that it made a contact that falls within
the exception for acquisition of location information."
<u>Evankavitch v. Green Tree Servicing, LLC</u>, No. 14-1114, 2015 WL
4174441, at *2 (3d Cir. July 13, 2105). However, as Plaintiff
has not argued that FCO violated § 1692b, <u>Evankavitch</u> is not
relevant here.

Finally, § 1692a(2) defines "communication" as "the conveying of information regarding a debt directly or indirectly to any person through any medium."

Here, the parties do not dispute that FCO made several telephone calls to Plaintiff's cell phone and left corresponding voice messages. Indeed, FCO's president, Michael Sobota, submitted an affidavit which provides details on at least eleven voice messages that FCO left on Plaintiff's cell phone[24] from March 16, 2010, to July 2, 2010, including transcripts of the messages themselves. See Pl.'s Mot. Ex. 25, Sobota Affidavit Ex. 1, at 1-3, Apr. 7, 2011 [hereinafter Sobota Aff. I]. In none of these messages does the FCO caller identify the nature of the call, with the exception of the first message on March 16, in which the caller says he is from "FCO" but does not further explain what that means. See id. Likewise, the parties do not dispute that the first--and seemingly only--time Plaintiff actually accessed a voice message from FCO was on July 28, although the contents of that message are not in the record. See Pl. Dep. 45:6-46:7; Sobota Aff. I Ex. 1, at 1-3; FCO's Br. 37.

Neither do the parties dispute that the voice messages were communications that in theory violated § 1692e(11) by

---

[24]     Plaintiff provided his cell phone number during his deposition, see Pl. Dep. 45:12-15, and this number corresponds to the one at which FCO left the eleven messages, see Pl.'s Mot. Ex. 25, Sobota Affidavit Ex. 1, at 1-3.

failing to include the required disclosures or violated § 1692d(6) by failing to meaningfully disclose the caller's identity. See, e.g., Everage v. Nat'l Recovery Agency, No. 14-2463, 2015 WL 1071757, at *4 (E.D. Pa. Mar. 11, 2015) (noting that "meaningful disclosure" "has been held to require the debt collector 'to disclose the caller's name, the debt collection company's name, and the nature of the debt collector's business'" (quoting Gryzbowski v. I.C. Sys., Inc., 691 F. Supp. 2d 618, 625 (M.D. Pa. 2010))); see also, e.g., Inman v. NCO Fin. Sys., Inc., No. 08-5866, 2009 WL 3415281, at *3-4 (E.D. Pa. Oct. 21, 2009) (holding that voice messages requesting a return call but not identifying the caller or the purpose of the call are "communications" under the FDCPA); Foti v. NCO Fin. Sys., Inc., 424 F. Supp. 2d 643, 657 (S.D.N.Y. 2006) (holding similarly and noting that "the FDCPA should be interpreted to cover communications that convey, directly or indirectly, any information relating to a debt, and not just when the debt collector discloses specific information about the particular debt being collected").

On this claim, then, the parties' only dispute is a legal one: whether a voice message that a debtor never listens to can still violate the FDCPA. No direct authority considering this question appears to exist. However, the FDCPA is a remedial, strict liability statute that is focused on the

44

conduct of the debt collector rather than the injuries sustained by the debtor. See Allen ex rel. Martin v. LaSalle Bank, N.A., 629 F.3d 364, 368 & n.7 (3d Cir. 2011). Therefore, when a debt collector places a phone call and leaves a message that does not include the required disclosures, the debt collector has "communicated" with the debtor and thus the violation of the FDCPA is complete.

The cases that FCO cites to the contrary are distinguishable: (1) a debt collector placed a telephone call to debtor but hung up without leaving a message, see Zortman v. J.C. Christensen & Assocs., Inc., 870 F. Supp. 2d 694, 705-08 (D. Minn. May 2, 2012) (granting debt collector's motion for summary judgment); Wilfong v. Persolve, LLC, No. 10-3083, 2011 WL 2678925, at *4 (D. Or. June 2, 2011) (same); and (2) a debt collector placed several unanswered calls to a wrong number, see Worsham v. Account Receivables Mgmt., No. 10-3051, 2011 WL 5873107, at *3-4 (D. Md. Nov. 22, 2011) (holding that unanswered calls are not "communications" under the FDCPA and granting debt collector's motion for summary judgment), aff'd, 497 F. App'x 274 (4th Cir. 2012).[25] In each of these cases, the plaintiffs had

---

[25]     FCO also relies on a case in which a debtor never received a debt collector's correspondence that was sent to the debtor's home, where the home did not have a mailbox, see Seaworth v. Messerli, Nos. 09-3437, 09-3438, 09-3440, 09-3441, 2010 WL 3613821, at *5 (D. Minn. Sept. 7, 2010) (dismissing

no access to the attempted communications and could thus never have had anything "conveyed" to them, as required by the FDCPA's definition of "communication." See § 1692a(2).

Here, by contrast, messages were left on Plaintiff's cell phone, which he could have accessed at any time. It is clear that, by leaving a message on Plaintiff's voicemail, FCO "conveyed information" indirectly to Plaintiff and thus implicated FDCPA liability.[26]

For these reasons, the Court finds that FCO violated sections 1692e(11) and 1692d(6) when its employees left voice messages on Plaintiff's cell phone but did not properly identify who was calling. On this claim, Plaintiff's motion for summary judgment will be granted and FCO's cross-motion for summary judgment will be denied.

---

FDCPA claim). This case is distinguishable for the same reasons as FCO's other cases are.

[26]      The Court also notes that no authority appears to exist on this exact question because it is highly unlikely for a plaintiff to receive, but not listen to, any voice messages left on his cell phone from a debt collector. Plaintiff appears to have purposefully neglected these messages. See Pl. Dep. 46:1-4 ("Q. Is [July 28, 2010,] the first time you received a call from FCO? A. It's the first time I looked at the voice mail from an 800 number.").

       d.    <u>§§ 1692f(1), 1692e(2), and 1692e(10): FCO
           attempted to collect a debt that Plaintiff
           did not owe</u>

      In his motion for summary judgment, Plaintiff claims
that FCO "attempt[ed] to collect monies neither lawfully owed
nor collectable." Pl.'s Br. 34. Although he does not further
elaborate the claim, his response to FCO's cross-motion for
summary judgment suggests that the claim is based on FCO's
attempt to collect the thirty-day notice fee that Defendant Home
assessed.[27]

      Section 1692f(1) of the FDCPA prohibits "[t]he
collection of any amount (including any interest, fee, charge,
or expense incidental to the principal obligation) unless such
amount is expressly authorized by the agreement creating the
debt or permitted by law." In the discussion below covering
Plaintiff's FCEUA claims, the Court finds that Defendant Home
assessed a thirty-day notice fee which was not supported by
Plaintiff's lease agreement. FCO's attempt to collect on this
fee, which accounted for $888.00 of the $1,897.92 total, <u>see</u> TAC
Ex. 13, was neither "expressly authorized by the agreement

_____

[27]      Although his argument is not entirely clear, Plaintiff
also suggests that FCO improperly attempted to collect or retain
his security deposit in contravention of Pennsylvania's Landlord
and Tenant Act. <u>See</u> Pl.'s Resp. to FCO 76. However, as discussed
below, Plaintiff's Landlord and Tenant Act claim fails; it
therefore cannot serve as the basis for liability under
§ 1692f(1).

creating the debt" nor permitted by any state law to which the parties cite, appears to have violated § 1692f(1).[28]

In response, FCO puts forward the bona fide error defense, which has been codified by the FDCPA:

> A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid such error.

15 U.S.C. § 1692k(c). The Third Circuit has held that, in order to avail itself of the bona fide error defense, a debt collector must establish: "(1) the alleged violation was unintentional, (2) the alleged violation resulted from a bona fide error, and (3) the bona fide error occurred despite procedures designed to avoid such errors." Beck v. Maximus, Inc., 457 F.3d 291, 297-98 (3d Cir. 2006).

The particular error here--attempting to collect an amount that is not supported by Plaintiff's lease agreement--may be characterized as a mistake of law, and contract law in particular. The Supreme Court has ruled that the bona fide error defense "does not apply to a violation of the FDCPA resulting from a debt collector's incorrect interpretation of the

_____

[28]     Plaintiff also references two other FDCPA provisions, which the Court considers along with the § 1692f(1) claim: § 1692e(2), prohibiting "[t]he false representation of . . . the character, amount, or legal status of any debt"; and § 1692e(10), prohibiting "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt."

requirements of that statute." Jerman v. Carlisle, McNellie,
Rini, Kramer & Ulrich LPA, 559 U.S. 573, 604-05 (2010) (emphasis
added). However, the Supreme Court did not reach the question of
whether mistakes of state or contract law are similarly outside
the scope of the bona fide error defense. Id. at 580 n.4. The
Court sees no reason why such mistakes should not be covered by
the defense. See Jenkins v. Heintz, 124 F.3d 824, 833 (7th Cir.
1997) (finding that the bona fide error defense covers the
mistaken collection of legally invalid debts because to find
otherwise would "limit a debt collector to only collecting
legally valid claims," thereby causing the bona fide error
defense to "be read out of the statute with respect to the
violations of 15 U.S.C. §§ 1692e and 1692f").

     With respect to the elements of the bona fide error
defense, the Court's analysis can begin and end with the third
element: that FCO maintained procedures designed to avoid the
particular error here. FCO has failed to establish by a
preponderance of the evidence that such procedures were in
place. See § 1692k(c). FCO claims that it "reasonably relied on
Home's data" upon referral of Plaintiff's debt, FCO's Br. 41,
and that it "maint[ained] . . . procedures reasonably adapted to
avoid errors," id. at 42-43. Upon further investigation, these
"procedures" are based on two summary statements: (1) having
handled Home's account since FCO's inception, FCO has found

Home's records to be reliable; and (2) FCO requires a Statement
of Deposit for each debtor-tenant and will only conduct a deeper
investigation if the tenant specifically disputes a charge. Id.
at 23 (citing id. Ex. 2, Sobota Affidavit ¶¶ 6-10, Feb. 13, 2014
[hereinafter Sobota Aff. II]). While the FDCPA does not require
debt collectors to perform an independent investigation of the
debts referred to them, see, e.g., Jenkins, 124 F.3d at 833-34,
it does require debt collectors to implement procedures that
reasonably avoid errors, see § 1692k(c). Neither of the
procedures FCO offers is designed to avoid the specific error in
this case. In fact, FCO has not offered any evidence of a
tangible company policy or practice that would even minimally
ensure that the debts it receives are traceable to debtors'
agreements. See, e.g., Walter v. Palisades Collection, LLC, No.
06-378, 2011 WL 1666869, at *7 (E.D. Pa. May 2, 2011) (Robreno,
J.) (rejecting a bona fide error defense where "[i]t was . . .
not typical procedure for [the debt collector] to have th[e]
information" necessary to prevent the error).

Moreover, in each of the cases FCO cites in support of
its position, the debt collector had offered evidence of
procedures much more robust than those FCO offers here.[29] On the

---

[29]     See Wilhelm v. Credico, Inc., 519 F.3d 416, 420-21
(8th Cir. 2008) (finding procedures sufficient where debt
collector's employees received specific instructions on how to
segregate principal and interest to avoid the error of charging

evidence here, no reasonable jury could find that FCO is entitled to the bona fide error defense. Accordingly, on this claim, Plaintiff's motion for summary judgment will be granted and FCO's cross-motion for summary judgment will be denied.[30]

---

interest on past-due interest); Jenkins, 124 F.3d at 834 (holding similarly where debt collector provided evidence of "an in-house fair debt compliance manual," "training seminars for firm employees," and "an eight-step, highly detailed pre-litigation review process to ensure accuracy and to review the work of firm employees to avoid violating the Act"); Smith v. Transworld Sys., Inc., 953 F.2d 1025, 1032 (6th Cir. 1992) (holding similarly where debt collector's referral form, which was completed and signed by the creditor, included "specific instructions to claim only amounts legally due and owing" (internal quotation marks omitted)); Sayyed v. Wolpoff & Abramson, LLP, 733 F. Supp. 2d 635, 647 (D. Md. 2010) (holding similarly where debt collector offered its procedures in detail, and stated that its attorneys regularly review the Maryland Rules of Procedure and verify every summary judgment motion by oath).

[30]     Plaintiff brings two other FDCPA claims, although he does not argue these in his motion for summary judgment. The Court treats them briefly here. First, Plaintiff asserts that FCO continued to contact him after it learned that he was represented by an attorney (his brother), in violation of § 1692c(a)(2), which prohibits further communications with consumers once "the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can ascertain, such attorney's name and address." It is undisputed that Plaintiff never directly informed FCO that he was represented by his brother, as it is that no information FCO received stated as much. See Pl.'s Resp. to FCO 79-81. Plaintiff instead argues that Home was aware that his brother represented him, and that, had FCO properly researched the account, it would have known as well. Id. However, § 1692c(a)(2) is that rare provision of the FDCPA that does not impose strict liability but rather requires knowledge. The Court will not enforce a lower state of mind by holding that FCO should have followed up with Home to determine whether Plaintiff was represented by counsel.

. . . .

In sum, on Count I of the Third Amended Class Action Complaint, and as to Defendant FCO, Plaintiff's motion for summary judgment will be denied and FCO's cross-motion for summary judgment will be denied with respect to the claim that FCO's AV2 and HD1AC letters lacked the required notice, in violation of 15 U.S.C. § 1692g(a).

Plaintiff's motion for summary judgment will be granted and FCO's cross-motion for summary judgment will be denied with respect to the following claims: (1) failing to identify as a debt collector when leaving voice messages on Plaintiff's cell phone, in violation of §§ 1692e(11) and 1692d(6); and (2) attempting to collect a debt that Plaintiff

---

Second, Plaintiff asserts a violation of § 1692c(b), which prohibits debt collectors from communicating with third parties in connection with the collection of the debt except as necessary to obtain location information. See also § 1692b. FCO argues that Plaintiff has offered no evidence and made no argument that FCO's calls to his family members violated the FDCPA. FCO's Br. 45-46. Plaintiff apparently concedes this, as he does not reply. As such, the Third Circuit's recent case dealing with the burden of proof when alleging § 1692b's location-information exception is not applicable here. Evankavitch v. Green Tree Servicing, LLC, No. 14-1114, 2015 WL 4174441, at *10 (3d Cir. July 13, 2105) (placing the burden of proof on the debt collector).

On each of the above claims, the Court will grant FCO's cross-motion for summary judgment and deny Plaintiff's motion for summary judgment.

did not owe, in violation of §§ 1692f(1), 1692e(2), and 1692e(10).

Plaintiff's motion for summary judgment will be denied and FCO's cross-motion for summary judgment will be granted with respect to the following claims: (1) lacking the required notice on the HD1A letter, in violation of § 1692g(a); (2) failing to properly verify the disputed debt, in violation of § 1692g(b); and (3) all other claims Plaintiff may have under the FDCPA.

Therefore, the only remaining claim against FCO under Count I is the following: the AV2 and HD1AC letters lacked the required notice, in violation of § 1692g(a).

B.   COUNT II: FCEUA

The FCEUA prohibits, among other things, "unfair or deceptive acts or practices with regard to the collection of debts," 73 P.S. § 2270.2, and applies to both debt collectors and creditors, see § 2270.4.[31] A debt collector's violation of the FDCPA is a per se violation of the FCEUA. See § 2270.4(a). A

---

[31]   For the purposes of this action, the FCEUA's definitions of "debt collector" and "creditor" are not substantively different from the FDCPA's. For example, the FCEUA defines "debt collector" as "[a] person not a creditor conducting business within this Commonwealth, acting on behalf of a creditor, engaging or aiding directly or indirectly in collecting a debt owed or alleged to be owed a creditor or assignee of a creditor." § 2270.3. A "creditor" is "[a] person, including agents, servants or employees conducting business under the name of a creditor and within this Commonwealth, to whom a debt is owed or alleged to be owed." Id.

creditor may only be liable under the FCEUA if it engages in various activities that generally mirror those proscribed by the FDCPA. See § 2270.4(b).

### 1.  Claims Against Defendant Home

The Court has already held above that Defendant Home is not a "debt collector" under the FDCPA and cannot be liable as such. For this reason, Home cannot be per se liable under the FCEUA. However, Plaintiff also alleged that Home's "conduct . . . constitutes separate and independent substantive violations of the FCEUA." TAC ¶ 93. The Court therefore must consider whether Home's actions as a creditor implicate the FCEUA.

Plaintiff does not specify which of Home's alleged actions violated the FCEUA, but assumes that his presentation of the allegations establishes Home's FCEUA liability. See, e.g., Pl.'s Resp. to Home 35 (noting that "plaintiff Jarzyna is entitled to summary judgment on his claims . . . directly against Home under the FCEUA"). Separately, Plaintiff indicates that "Home is also independently liable, at a minimum, under section (b)(5)(ii) . . . and also under section (b)(6)(i)" of the FCEUA. Pl.'s Suppl. 9. The sections Plaintiff refers to provide for the following:

> (5) A creditor may not use any false, deceptive or misleading representation or means in connection with

the collection of any debt. Without limiting the
general application of the foregoing, the following
conduct is a violation of this paragraph:

. . . .

    (ii) The false representation of the character,
    amount or legal status of any debt.

. . . .

(6) A creditor may not use unfair or unconscionable
means to collect or attempt to collect any debt.
Without limiting the general application of the
foregoing, the following conduct is a violation of
this paragraph:

    (i) The collection of any amount, including any
    interest, fee, charge or expense incidental to
    the principal obligation, unless such amount is
    expressly authorized by the agreement creating
    the debt or permitted by law.

73 P.S. § 2270.4(b). Upon review of Plaintiff's briefing, the

Court finds only four allegations as to Home that implicate

concerns of "any false, deceptive or misleading representation"

or "unfair or unconscionable means," and which therefore may

plausibly implicate the FCEUA. The Court considers each in turn.

           a.   No notice fee provision in the lease
                agreement

        Plaintiff claims the lease agreement made no mention

of a fee for failing to give proper notice. See Pl.'s Resp. to

Home 23 ("Home's standard form lease does not mention a word

about any 'notice' fee or any penalty at all . . . ."). This is

incorrect. The second lease agreement that Plaintiff signed on

55

November 17, 2008, has a "Notice to Vacate at End of Lease Term" section that reads, in relevant part: "You must give us at least sixty (60) days written notice of your intention to vacate the Apartment at the end of the term. If you fail to give this notice, you will be held liable for rent for the period for which you failed to give us notice." Home's Br. Ex. D, at 7.[32] The lease agreement therefore clearly sets out a sixty-day notice fee, equivalent to one month's rent, for a tenant's failure to provide timely notice that he will be vacating at the end of his agreed-upon lease term.

Here, the situation is slightly different, in that Plaintiff was a holdover tenant at the time Home assessed the notice fee. In a section entitled "Failure to Vacate at End of Lease Term," Plaintiff's November 17, 2008, lease agreement reads: "[I]f we accept rent for the period after the end of the Lease Term, then you shall be deemed a holdover Resident and your tenancy shall be month-to-month . . . . Either you or we can terminate the month-to-month lease as of the last day of any calendar month by giving one calendar month's written notice to

---

[32]      Plaintiff's third lease agreement, signed on October 7, 2009, contains identical language. See Home's Br. Ex. H, at 7.

the other party." Id. at 8.[33] This language does not explicitly

assign a thirty-day notice fee for failure to give timely notice

that the tenant will be ending his month-to-month tenancy. The

question is therefore whether Home's assessment of such a

thirty-day notice fee is based upon a proper interpretation of

the lease's language.

Under Pennsylvania law,[34] "[t]he task of interpreting

[a] contract is generally performed by a court rather than by a

jury." Gene & Harvey Builders, Inc. v. Pa. Mfrs.' Ass'n Ins.

Co., 517 A.2d 910, 913 (Pa. 1986). The Third Circuit has

summarized Pennsylvania law on contract[35] interpretation:

> Pennsylvania contract law begins with the "firmly
> settled" point that "the intent of the parties to a
> written contract is contained in the writing itself."
> Krizovensky v. Krizovensky, 425 Pa. Super. 204, 624
> A.2d 638, 642 (1993) (citing Steuart v. McChesney, 498
> Pa. 45, 444 A.2d 659 (1982)). "'Where the intention of
> the parties is clear, there is no need to resort to
> extrinsic aids or evidence,'" instead, the meaning of

---

[33]    Plaintiff's third lease agreement, signed on October
7, 2009, contains identical language. See Home's Br. Ex. D, at
7.

[34]    As Home notes, "[t]here is no dispute Pennsylvania
statutory or common law governs the state law claims by Mr.
Jarzyna against Home and by Home against Mr. Jarzyna." Home's
Br. 14. In addition, the lease agreement itself notes that it
was formed under Pennsylvania law and refers to and includes
several Pennsylvania state law provisions. See id. Ex. H, at 1,
11. Accordingly, the Court will apply Pennsylvania law in
interpreting the lease agreement.

[35]    Under Pennsylvania law, "a lease is in the nature of a
contract and is to be controlled by principles of contract law."
Pugh v. Holmes, 405 A.2d 897, 903 (Pa. 1979).

a clear and unequivocal written contract "'must be determined by its contents alone.'" <u>Steuart</u>, 444 A.2d at 661 (quoting <u>East Crossroads Ctr., Inc. v. Mellon-Stuart Co.</u>, 416 Pa. 229, 205 A.2d 865, 866 (1965)). "[W]here language is clear and unambiguous, the focus of interpretation is upon the terms of the agreement as <u>manifestly expressed</u>, rather than as, perhaps, silently intended." <u>Id.</u> "Clear contractual terms that are capable of one reasonable interpretation must be given effect without reference to matters outside the contract." <u>Krizovensky</u>, 624 A.2d at 642.

<u>Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc.</u>, 247 F.3d 79, 92-93 (3d Cir. 2001). Finally, if a contract provision is found to be ambiguous, "doubtful language is construed most strongly against the drafter thereof." <u>Rusiski v. Pribonic</u>, 515 A.2d 507, 510 (Pa. 1986).

In the instant case, the section of the lease agreement entitled "Failure to Vacate at End of Lease Term" is the only section discussing what notice is required once the lease has been converted to a month-to-month tenancy. This section makes no mention of any fee or penalty for failure to provide the required one month's notice before vacating. Although Home may have intended to include a thirty-day notice fee associated with month-to-month tenancies--which seems likely, given that it included a sixty-day notice fee for tenants with contractual lease terms--it did not do so. The Court, reading no ambiguous terms in the lease agreement, must interpret the agreement "as <u>manifestly expressed</u>, rather than as, perhaps, silently intended." <u>Steuart</u>, 444 A.2d at 661.

Accordingly, the Court construes the lease agreement against the drafter, Home, as containing no thirty-day notice fee.[36] Home's assessment of such a fee for Plaintiff's failure to provide proper notice is not supported by the contract and therefore is a "collection of any amount, including any interest, fee, charge or expense incidental to the principal obligation," which is not "expressly authorized by the agreement creating the debt or permitted by law." 73 P.S. § 2270.4(b)(6)(i). As a matter of law, Plaintiff has shown that Home violated the FCEUA and Plaintiff is entitled to summary judgment on this particular claim.

b. <u>Home sends accounting letters to prior addresses</u>

Plaintiff complains of the following:

[A]n astounding eighty-percent (80%) of Home's "first-letter" accountings went, like plaintiffs [sic], to the tenant's prior address with Home. . . .

Home systematically and automatically sent untimely accountings to tenants at all of the apartment complexes that it owns and operates, deliberately sending those notices <u>to apartment addresses that those tenants had vacated weeks earlier</u>

---

[36]    Additionally, "[i]f the rights, duties and remedies of the lease are to be extended beyond the clear meaning of the lease, the burden is on the party so claiming to show that the parties intended such extension either by provisions of the contract or by implication." <u>Ross v. Gulf Oil Corp.</u>, 522 A.2d 97, 99 (Pa. Super. Ct. 1987). Home has not offered any evidence that the parties intended the thirty-day notice fee to be included in the lease agreement; it therefore has not satisfied its burden under <u>Ross</u>.

> when Home [had] current alternative mailing addresses
> and e-mail addresses for those tenants.

Pl.'s Br. 5-6 (footnotes omitted). Despite Plaintiff's strong language, he offers no evidence supporting his allegation that Home sent an accounting to his prior Glen Brook address. Instead, Plaintiff cites to a document Home filed in response to a request by the Special Master. However, contrary to Plaintiff's averment, the document merely states: "Home Properties L.P. has calculated 19.4% of the post-lease communications to former lease tenants did use other zip codes for mailings beyond the lease address zip code." Pl.'s Mot. Ex. 36, at 7. This statement makes no mention of "first-letter" accountings, nor does it confirm that accountings were sent to tenants' prior addresses, as there is quite a difference between a single address and a zip code. Such paltry evidence clearly fails to establish an FCEUA violation for this allegation, at least with respect to Plaintiff.[37]

---

[37] Relatedly, Plaintiff claims that Home failed to return his security deposit, along with a written accounting, within thirty days of termination of the lease (presumably, the month-to-month tenancy), as required by Pennsylvania law. See TAC ¶¶ 106-108. However, this allegation arises within Count IV of the Third Amended Class Action Complaint, and relates to Plaintiff's claim that Home breached Pennsylvania's Landlord and Tenant Act. The Court does not see how this alleged conduct either falsely represents a debt or collects an amount not agreed to by the parties. See 73 P.S. § 2270.4(b)(5)(ii), (6)(i). Accordingly, the Court will address this claim under the discussion of Count IV below.

c.   <u>Home continually changed the amount due</u>

Plaintiff alleges that, toward the end of his tenancy and after, he received multiple notices from Home with differing amounts due. <u>See</u> TAC ¶¶ 42, 47, 49; Pl.'s Br. 5 n.12. Specifically, he claims that (1) he received a bill for approximately $1,400 in October 2009; (2) later, he received an updated bill for $1,300.40; (3) per his account online, the amount due had risen to approximately $2,200 in November 2009; (4) shortly thereafter, he received an "Apartment Inspection Report" listing only $982.62; (5) a statement of deposit, which he never received, later listed the total amount due as $2,397.92; and (6) after applying his security deposit, the amount due was reduced to $1,897.92. <u>See</u> Pl.'s Mot. 5 n.12.

Although Plaintiff characterizes these differing amounts as part of a practice of deceptive debt collection by Home, these amounts are readily explained by the documents Plaintiff himself has submitted. For example, after receiving the notice that he owed approximately $1,400, Plaintiff disputed the charge; the reduced amount of $1,300.40 appears to be a result of Plaintiff's complaint to the leasing office. <u>See</u> Pl's Dep. 85:23-86:22. As discussed in more detail below, the increases to approximately $2,200 and $2,397.92 relate to charges incurred prior to Plaintiff's move-out, and are supported by the Resident Ledger Detail Report. <u>See</u> Pl.'s Suppl.

61

Ex. D. The only amount that cannot be explained is the $982.62 on the "Apartment Inspection Report." However, Plaintiff has not offered this report into evidence and, for this allegation, has not established that Home violated the FCEUA.

d.   <u>Plaintiff's alleged debt to Home is bogus
     and illegal</u>

Plaintiff alleges generally that Home attempted to collect--and forwarded to Defendant FCO in order to collect--a debt that is "bogus," Pl.'s Br. 6, and based on illegal fees, <u>id.</u> at 38. Plaintiff contends that he owed Home nothing when he vacated his Glen Brook apartment on October 31, 2009. Pl.'s Resp. to Home 20 & n.59. In support of this allegation, Plaintiff points to two documents, the Statement of Deposit and the Resident Ledger Detail Report ("the Ledger"). Notably, he does not dispute the payment information or method of calculation of these reports. Instead, he focuses his argument on the lack of contractual support for the fees and penalties therein. Plaintiff writes: "Tellingly, not a single one of the provisions Home points to in its standard form lease discloses any of the fees and penalties Plaintiff would not pay." Pl.'s Suppl. 8. The Court examines the Statement of Deposit and Ledger in turn.

The Statement of Deposit, prepared on November 16, 2009, and printed on December 1, 2009--although allegedly not

62

received by Plaintiff until some later date[38]--lists several outstanding charges totaling $2,397.92. Pl.'s Resp. to Home Ex. 1. After applying Plaintiff's security deposit, the amount due was reduced to $1,897.92. Id. Plaintiff does not dispute charges totaling $206.52, which relate to miscellaneous utility charges and fees. Aside from the thirty-day notice fee, covered above, he disputes a charge of $33.20 for "LF2 RM LATE FEE," a charge of $379.20 for "RNT AUTOCHRG @ 9/30/2009," and a charge of $888.00 for "RNT AUTOCHRG @ 10/31/2009."[39] Pl.'s Resp. to Home 25; see also id. Ex. 1.

With respect to the late fee, Plaintiff argues that it "was derived and assessed . . . against Plaintiff only because he refused to pay Home the undisclosed 30 day notice penalty[,] rent for November[,] the pro-rated unit-swap fee . . . [,] or their (ironically) 'final admin fee.'" Pl.'s Resp. to Home 25. However, a review of the Ledger, produced by Home during discovery, shows that this late fee was assessed, in accordance with the lease agreement's late fee provision, for Plaintiff's failure to pay timely rent in August, September, and October 2009. See Pl.'s Suppl. Ex. D.

---

[38]      See supra note 5.

[39]      He also mentions a charge of $3.00 for "BAF soda final admin fee." Pl.'s Resp. to Home 25; see also id. Ex. 1. However, as this appears to be a standard administrative fee for a negligible sum, and as Plaintiff does not appear to seriously dispute it, the Court will not consider it further.

With respect to the "9/30/2009" rental charge, Plaintiff argues that this improperly related to "the pro-rated unit-swap fee that was to be waived." Pl.'s Resp. to Home 25. Again, the Ledger indicates to the contrary that this $379.20 charge actually relates to the portion of unpaid rent from August and September 2009. See Pl.'s Suppl. Ex. D.

With respect to the "10/31/2009" rental charge, Plaintiff argues that this improperly related to "rent for November." Pl.'s Resp. to Home 25. The Ledger belies this assertion, showing that the $888.00 actually related to October 2009, which was Plaintiff's last month at Glen Brook. See Pl.'s Suppl. Ex. D.

In Plaintiff's supplemental brief, he again argues that his alleged debt to Home is based entirely on "illegal fees," although he makes a further contention that Home owes him approximately $1,700. Pl.'s Suppl. 6-8. Essentially, he argues that Home steadily and inexplicably increased his average monthly bill from July through November 2009. Id. at 6. However, a brief review of the Ledger reveals Plaintiff's error. The additional charges Plaintiff complains of comprise late fees legitimately assessed; a utility bill true-up which Plaintiff has acknowledged, Pl. Dep. 43:3-44:21; the increased rent associated with his month-to-month tenancy, which Plaintiff has also acknowledged, id. at 23:10-20; the thirty-day notice fee;

64

and rent for November which (Plaintiff fails to note) was subsequently credited back to his account. See Pl.'s Supp. Ex. D. In other words, aside from the thirty-day notice fee, Plaintiff's argument is completely unsupported by the record; he has not shown that Home has violated the FCEUA by generally attempting to collect a bogus or illegal debt.

.   .   .   .

In sum, the Court finds that Plaintiff is entitled to summary judgment on his FCEUA claim as it relates to the thirty-day notice fee only. On Plaintiff's other claims under the FCEUA, and taking the evidence in the light most favorable to Defendant Home as the nonmoving party, Plaintiff has not established that summary judgment is appropriate. Moreover, considering Home's motion for summary judgment on these claims, and taking the evidence in the light most favorable to Plaintiff as the nonmoving party, Plaintiff has not shown that a genuine dispute of material fact exists sufficient to survive summary judgment. Accordingly, on Count II of the Third Amended Class Action Complaint, Plaintiff's motion for summary judgment will be granted as to the thirty-day notice fee claim and denied as to all other claims. Likewise, Home's motion for summary judgment will be denied as to the thirty-day notice fee claim and granted as to all other claims.

   2.   Claims Against Defendant FCO

     As stated above, a debt collector's violation of the
FDCPA is a per se violation of the FCEUA. See 73 P.S.
§ 2270.4(a). Having previously granted summary judgment in favor
of two of Plaintiff's claims under the FDCPA, the Court will
follow this course for Plaintiff's claims under the FCEUA.[40]

     Accordingly, on Count II of the Third Amended Class
Action Complaint, Plaintiff's motion for summary judgment will
be granted and FCO's cross-motion for summary judgment will be
denied to the extent the Court granted summary judgment to
Plaintiff on his FDCPA claims. Plaintiff's motion for summary
judgment will be denied and FCO's cross-motion for summary
judgment will be denied to the extent the Court denied summary
judgment to both parties on Plaintiff's FDCPA claims.
Plaintiff's motion for summary judgment will be denied and FCO's
cross-motion for summary judgment will be granted on all other
claims.

   C.   COUNT III: UTPCPL

     Pennsylvania's UTPCPL provides that

     [a]ny person who purchases or leases goods or services
     primarily for personal, family or household purposes
     and thereby suffers any ascertainable loss of money or

---

[40]     To the extent FCO asserts the bona fide error defense
on any of Plaintiff's FCEUA claims, see FCO's Br. 47, the Court
notes that this defense failed with respect to Plaintiff's FDCPA
claims and FCO cannot avail itself of the defense here.

> property, real or personal, as a result of the use or
> employment by any person of a method, act or practice
> declared unlawful by section 3 of this act, may bring
> a private action to recover actual damages or one
> hundred dollars ($100), whichever is greater.

73 P.S. § 201-9.2. The act declares unlawful "[u]nfair methods

of competition and unfair or deceptive acts or practices in the

conduct of any trade or commerce," § 201-3, and sets out a

nonexhaustive listing of such prohibited conduct. See § 201-2.

### 1.   Claims Against Defendant Home

Plaintiff argues principally that Home's FCEUA

violations constitute per se violations of the UTPCPL. See TAC

¶ 98; Pl.'s Resp. to Home 36. As the FCEUA provides, "[i]f a

debt collector or creditor engages in an unfair or deceptive

debt collection act or practice under this act, it shall

constitute a violation of the act of December 17, 1968 (P.L.

1224, No. 387), known as the Unfair Trade Practices and Consumer

Protection Law." 73 P.S. § 2270.5(a). Accordingly, because the

Court found above that Home violated the FCEUA--albeit with

respect to the thirty-day notice fee claim only--it follows that

Home's conduct amounts to a per se violation of the UTPCPL as

well. Furthermore, Home suggests that Plaintiff suffered no loss

as a result of Home's actions, as the UTPCPL requires. Home's

Br. 26. However, as the Court pointed out previously, "Plaintiff

alleges that he was forced to retain counsel to resist FCO's

collection efforts and in his prayer for relief requests all reasonable attorneys' fees." Jarzyna v. Home Props., L.P., 763 F. Supp. 2d 742, 749 (E.D. Pa. 2011) [hereinafter Jarzyna I]. Likewise, Plaintiff retained counsel here to effectively dispute the improperly charged thirty-day notice fee. Plaintiff's UTPCPL claim as to this charge withstands thus summary judgment.

Although Plaintiff states that Home "also [is] liable for separate, independent substantive violations of the UTPCPL," he only generally alleges Home's "misrepresentation that Plaintiff owed the debt" and that Home "engaged in deceptive and/or fraudulent conduct that created likelihood [sic] of confusion or of misunderstanding prohibited by [the UTPCPL]." TAC ¶ 101. Upon review of Plaintiff's briefing, the Court notes that he alleges the same conduct for both his FCEUA and UTPCPL claims. See Pl.'s Br. 34-39; Pl.'s Resp. to Home 34-36. The Court therefore finds that--as with his FCEUA claims--not only has Plaintiff not established that summary judgment is appropriate on these UTPCPL claims, he has not shown that a genuine dispute of material fact exists sufficient to allow these claims to survive Home's motion for summary judgment.

In sum, on Count III of the Third Amended Class Action Complaint, Plaintiff's motion for summary judgment will be granted as to the thirty-day notice fee claim and denied as to all other claims. Likewise, Defendant Home's motion for summary

judgment will be denied as to the thirty-day notice fee claim and granted as to all other claims.

2.   Claims Against Defendant FCO

Similarly, because the Court found above that FCO violated the FCEUA (by way of certain FDCPA violations), it follows that FCO's conduct amounts to a per se violation of the UTPCPL as well. See 73 P.S. § 2270.5(a). FCO argues that Plaintiff suffered no "ascertainable loss of money or property" as a result of Home's actions, as the UTPCPL requires. FCO's Br. 48. However, as the Court pointed out previously, "Plaintiff alleges that he was forced to retain counsel to resist FCO's collection efforts and in his prayer for relief requests all reasonable attorneys' fees." Jarzyna I, 763 F. Supp. 2d at 749. Plaintiff's UTPCPL claim as to this charge thus withstands summary judgment.[41]

Accordingly, on Count III of the Third Amended Class Action Complaint, Plaintiff's motion for summary judgment will be granted and FCO's cross-motion for summary judgment will be denied to the extent the Court granted summary judgment to Plaintiff on his FDCPA claims. Plaintiff's motion for summary judgment is denied and FCO's cross-motion for summary judgment

---

[41]       It may very well turn out that Plaintiff has no ascertainable loss because he has not paid any attorneys' fees. However, the Court will make a determination as to damages at a later stage.

is denied to the extent the Court denied summary judgment to both parties on Plaintiff's FDCPA claims. Plaintiff's motion for summary judgment will be denied and FCO's cross-motion for summary judgment will be granted on all other claims.

   D.   COUNT IV: Landlord and Tenant Act

   Pennsylvania's Landlord and Tenant Act regulates landlords' holding of security deposits as follows: "No landlord may require a sum in excess of two months' rent to be deposited in escrow for the payment of damages to the leasehold premises and/or default in rent thereof during the first year of any lease." 68 P.S. § 250.511a(a). In addition,

> (a) Every landlord shall within thirty days of termination of a lease or upon surrender and acceptance of the leasehold premises, whichever first occurs, provide a tenant with a written list of any damages to the leasehold premises for which the landlord claims the tenant is liable. Delivery of the list shall be accompanied by payment of the difference between any sum deposited in escrow, including any unpaid interest thereon, for the payment of damages to the leasehold premises and the actual amount of damages to the leasehold premises caused by the tenant. Nothing in this section shall preclude the landlord from refusing to return the escrow fund, including any unpaid interest thereon, for nonpayment of rent or for the breach of any other condition in the lease by the tenant.

> (b) Any landlord who fails to provide a written list within thirty days as required in subsection (a), above, shall forfeit all rights to withhold any portion of sums held in escrow, including any unpaid interest thereon, or to bring suit against the tenant for damages to the leasehold premises.

. . . .

(e) Failure of the tenant to provide the landlord with his new address in writing upon termination of the lease or upon surrender and acceptance of the leasehold premises shall relieve the landlord from any liability under this section.

§ 250.512.

Plaintiff claims that Home violated the above-quoted provisions by (1) improperly withholding the security deposit, and (2) failing to mail Plaintiff an accounting of damages within thirty days after he left Glen Brook. See TAC ¶¶ 105-109. The Court considers each of these allegations below.

1.    Home Improperly Withheld the Security Deposit

Plaintiff asserts that "Home's '30 day notice fee' does not and cannot possibly be classified as 'rent' because it is a one-time penalty (and not a regular, periodic payment) that Home itself assesses and applies outside the provisions of the lease. Pl.'s Resp. to Home 23. In other words, he argues that his security deposit was improperly withheld to pay for the notice fee, whereas Pennsylvania law only permits landlords to apply security deposits to damages and rent defaults. See 68 P.S. § 250.511a(a) (noting security deposit may be used for "payment of damages to the leasehold premises and/or default in rent thereof"). Regardless of whether, in the abstract, Pennsylvania law allows landlords to apply security deposits to

notice fees,[42] Plaintiff's claim fails here. As the Court discussed above, Plaintiff's balance due included a rental charge related to October 2009 for $888.00. This amount more than offset the security deposit and Home was justified in withholding the deposit to partially cover for the missing rent.

### 2. Home Did Not Send a Timely Accounting

Plaintiff also alleges that Home failed to send an accounting of the security deposit within the required thirty days. Home responds that its failure to send the accounting did not violate the Landlord and Tenant Law "because [P]laintiff failed to meet the prerequisite of providing a forwarding address to Home pursuant to Subsection 512(e)." Home's Br. 34. Plaintiff rejoins by pointing to several instances where he had "provide[d] Home with a plethora of forwarding information." Pl.'s Resp. to Home 37. He cites to his provision of (1) his mother's and brother's addresses on the "Resident Consent for Release of Personal Property and Deposits/Refunds," attached to the November 11, 2008, lease agreement, see TAC Ex. 5, at 21; Pl. Dep. 27:10-28:16; (2) his cell phone number and email

---

[42]     The Court suspects that landlords are generally within their rights to do so, as a provision of § 250.512 holds that "[n]othing in this section shall preclude the landlord from refusing to return the escrow fund, including any unpaid interest thereon, for nonpayment of rent or for the breach of any other condition in the lease by the tenant." § 250.512(a) (emphasis added).

address on his September 1, 2009, notice letter, see TAC Ex. 6;
and (3) the address of his brother as counsel, listed on the
termination letter his brother sent Home on October 28, 2009,
see TAC Ex. 7.

However, none of this information is responsive to
§ 250.512(e), which plainly requires the tenant to provide a
forwarding address in writing at the time of the lease's
termination. In other words, in the absence of a written
communication from the tenant to the landlord advising the
landlord of tenant's forwarding information, Pennsylvania law
does not require the landlord to investigate or track down the
departing tenant's new address.[43] On the evidence presented here,
no reasonable jury could find that Plaintiff satisfied the
§ 250.512(e) requirement; Home was thus discharged from its duty
to send Plaintiff an accounting.

---

[43]       Moreover, Plaintiff testified during his deposition
that he did not provide Home with his forwarding address when he
vacated Glen Brook. See, e.g., Pl. Dep. 28:17-22 (Q. When you
moved from [Glen Brook], did you provide the office with a
forwarding address for you? A. No. When I moved out, there was
nobody in the office. After they got the letter of termination,
nobody else contacted me."); id. at 29:11-18 ("[Q.] Prior to the
time you moved out of [Glen Brook], did you provide the landlord
with a forwarding address? . . . A. Besides this document
[referring to his mother's and brother's addresses on the lease
agreement], no."). Plaintiff offers no authority in support of
his suggestions that his duty under § 250.512(e) was somehow
obviated by the fact that no one was in the leasing office at
the time of his departure, or that Home had a duty to track down
his forwarding address using the piecemeal information he had
provided previously.

For the above reasons, Plaintiff has not established
his Landlord and Tenant Law claim against Home. Therefore, on
Count IV of the Third Amended Class Action Complaint,
Plaintiff's motion for summary judgment will be denied and
Defendant Home's motion for summary judgment will be granted.

    E.   <u>COUNT V: Civil Conspiracy</u>

Under Pennsylvania law, "[t]he essential elements of a
claim for civil conspiracy are as follows: (1) a combination of
two or more persons acting with a common purpose to do an
unlawful act or to do a lawful act by unlawful means or for an
unlawful purpose, (2) an overt act done in pursuance of the
common purpose, and (3) actual legal damage." <u>Phillips v. Selig</u>,
959 A.2d 420, 437 (Pa. Super. Ct. 2008); <u>see also</u> <u>Thompson Coal
Co. v. Pike Coal Co.</u>, 412 A.2d 466, 472 (Pa. 1979). Furthermore,
"[p]roof of malice, i.e., an intent to injure, is essential in
proof of a conspiracy." <u>Id.</u>

Plaintiff's civil conspiracy claim--brought against
both Defendants--is based on the following allegations:
(1) "Home and FCO contracted for a series of illegal, self-
styled 'pre-collection' activities that involve the use of
illegal letters . . ."; (2) "Home and FCO jointly and
systematically, through common and uniform practice, pursue the
collection of debts that are forfeited, waived and uncollectable

74

under state statutory law and under Home's own standard form
Lease Agreement . . ."; and (3) "Home and FCO jointly and
systematically, through common and uniform practice, pursue the
collection of debts which include unlawful '30 day notice'
charges and other illegal fees . . . , which charges and fees
both Home and FCO know to be unlawful and, therefore,
uncollectable." TAC ¶¶ 115-117.

However, in support of these allegations, Plaintiff
offers little more than a restatement of the arguments he made
with respect to his other claims. Regarding the first
allegation, Plaintiff makes much of a "pre-collection"
arrangement between the Defendants wherein, for an initial
thirty-day period after the transfer of a debt, "FCO retains as
its compensation 15% of the amount recovered." Pl.'s Br. 43. But
aside from painting this arrangement as a "blitzkrieg" designed
to "exploit" debtors, Plaintiff does not explain why it is
illegal or even improper to incentivize the efficient collection
of past-due debts, and does not establish that this "pre-
collection" period involves procedures that flout any legal
requirement. See id.

Regarding the second and third allegations, Plaintiff
complains primarily of the notice fee, and points to Home's
"standard, uniform policies and procedures and, most especially,
automated processes and systems." Pl.'s Br. 40. Although, as

discussed above, Home's assessment of the thirty-day notice fee

was not supported by Plaintiff's lease agreement, the fact that

Home may have had an automated process to charge such fees does

not mean that Home was involved in a conspiracy with FCO.

Plaintiff alleges that "[Home] and FCO rigged the system so that

tenants would not receive lawful notice that their security

deposits had been wiped out and bogus charges applied." Id. But

Plaintiff does not offer any evidence that an agreement existed

between the two Defendants to illegally assess these charges or

that Defendants had any "intent to injure." Merely stating that

a conspiracy exists will not suffice.

        Finally, although Plaintiff holds out the Collection

Services Agreement as evidence of conspiratorial agreement,

nothing in the agreement displays an intent to conspire to

commit illegal acts. See Home's Br. Ex. K, Collection Services

Agreement. In fact, the CSA cuts against Plaintiff's position,

because it provides that "[FCO] agrees that its collection

activities shall meet the constraints of the Fair Debt

Collection Practices Act and other applicable federal, state and

local laws and statutes." Id. at 1. As the Brignola court noted

when rejecting the same claim, the CSA "clearly states that the

parties agree to act lawfully and use lawful means." 2013 WL 1795336, at *14.[44]

In sum, viewing the facts in the light most favorable to Plaintiff, and making all reasonable inferences in his favor, no reasonable jury could find for Plaintiff on his civil conspiracy claim. Therefore, on Count V of the Third Amended Class Action Complaint, Plaintiff's motion for summary judgment will be denied, Defendant Home's motion for summary judgment will be granted, and Defendant FCO's cross-motion for summary judgment will be granted.

F.    Defendant Home's Counterclaim

In Home's Answer to the Third Amended Class Action Complaint, it brings a Counterclaim, asserting one count of

---

[44]    Plaintiff's civil conspiracy claim fails for another reason as well. Under Pennsylvania law, the intracorporate conspiracy doctrine holds that, "[a] single entity cannot conspire with itself and, similarly, agents of a single entity cannot conspire among themselves." Rutherfoord v. Presbyterian-Univ. Hosp., 612 A.2d 500, 508 (Pa. Super. Ct. 1992). Under that doctrine, "an entity cannot conspire with one who acts as its agent." Gen. Refractories Co. v. Fireman's Fund Ins. Co., 337 F.3d 297, 313 (3d Cir. 2003). Here, as the CSA provides, FCO is the agent of Home. See Home's Br. Ex. K, at 1, and the two cannot be held liable under a theory of civil conspiracy. Plaintiff's cases to the contrary either involved parent-subsidiary liability under the Sherman Act, see, e.g., Siegel Transfer, Inc. v. Carrier Express, Inc., 54 F.3d 1125, 1131-33 (3d Cir. 1995), or were otherwise inapplicable, see Morelia Consultants, LLC v. RCMP Enters., LLC, No. 10-432, 2011 WL 4021070, at *11 (M.D. Pa. Sept. 9, 2011) (declining to apply the intracorporate conspiracy doctrine where the corporate veil had been pierced).

breach of the lease agreement. ECF No. 231. In essence, Home
seeks from Plaintiff the very $1,897.92 (albeit now bolstered
with attorneys' fees and costs) which Home had referred to FCO
and which forms the basis of this entire lawsuit. In its motion
for summary judgment, Home argues that Plaintiff "has not
contested the final balance demanded by Home or provided any
proof or substantiation [sic] the amount demanded by Home is
not, in fact, due to Home by [Plaintiff]." Home's Br. 16.
However, this overlooks that Plaintiff did contest the final
balance throughout his briefing, up to and including his
Supplemental Brief. Moreover, as the Court held above, the
thirty-day notice provision was not supported by the lease
agreement. Because the amount Plaintiff actually owes Home, if
any, is uncertain and Home has not shown the absence of a
genuine dispute of material fact on this question, the Court
denies Home's motion for summary judgment on the Counterclaim.

G.    Defendant Home's Request for Sanctions

Finally, Home requests that sanctions under 18 U.S.C.
§ 1927 be imposed upon Plaintiff's counsel for his "design[] to
multiply the proceedings, unreasonably and vexatiously, for what
appears to be the purpose of creating unnecessary cost[s] and
expenses for Home." Home's Br. 40. The Court declines to make a
determination on Home's request at this time, and will instead

deny the request without prejudice. Should Home wish to pursue sanctions at the conclusion of the proceedings, it may properly file a motion at that time.

**V.    CONCLUSION**

For the foregoing reasons, the Court grants in part and denies in part the parties' motions for summary judgment, as follows:

- COUNT I - FDCPA
    - As to Defendant Home, Plaintiff's motion for summary judgment is denied, and Home's motion for summary judgment is granted.

    - As to Defendant FCO, Plaintiff's motion for summary judgment is denied and FCO's cross-motion for summary judgment is denied with respect to the claim that FCO's AV2 and HD1AC letters lacked the required notice, in violation of 15 U.S.C. § 1692g(a).

    - As to Defendant FCO, Plaintiff's motion for summary judgment is granted and FCO's cross-motion for summary judgment is denied with respect to the following claims: (1) failing to identify as a debt collector when leaving voice messages on Plaintiff's cell phone, in violation of §§ 1692e(11) and 1692d(6); and (2) attempting to collect a debt that Plaintiff did

not owe, in violation of §§ 1692f(1), 1692e(2), and
1692e(10).

○ As to Defendant FCO, Plaintiff's motion for summary
judgment is denied and FCO's cross-motion for summary
judgment is granted with respect to the following
claims: (1) lacking the required notice on the HD1A
letter, in violation of § 1692g(a); (2) failing to
properly verify the disputed debt, in violation
§ 1692g(b); and (3) all other claims Plaintiff may
have under the FDCPA.

- COUNT II - FCEUA
  ○ As to Defendant Home, Plaintiff's motion for summary
  judgment is granted with respect to the thirty-day
  notice fee claim and denied as to all other claims.
  Defendant Home's motion for summary judgment is denied
  as to the thirty-day notice fee claim and granted as
  to all other claims.

  ○ As to Defendant FCO, Plaintiff's motion for summary
  judgment is granted and FCO's cross-motion for summary
  judgment is denied to the extent the Court granted
  summary judgment to Plaintiff on his FDCPA claims.
  Plaintiff's motion for summary judgment is denied and
  FCO's cross-motion for summary judgment is denied to

the extent the Court denied summary judgment to both parties on Plaintiff's FDCPA claims. Plaintiff's motion for summary judgment is denied and FCO's cross-motion for summary judgment is granted on all other claims.

- COUNT III - UTPCPL
  - As to Defendant Home, Plaintiff's motion for summary judgment is granted with respect to the thirty-day notice fee claim and denied as to all other claims. Defendant Home's motion for summary judgment is denied as to the thirty-day notice fee claim and granted as to all other claims.

  - As to Defendant FCO, Plaintiff's motion for summary judgment is granted and FCO's cross-motion for summary judgment is denied to the extent the Court granted summary judgment to Plaintiff on his FDCPA claims. Plaintiff's motion for summary judgment is denied and FCO's cross-motion for summary judgment is denied to the extent the Court denied summary judgment to both parties on Plaintiff's FDCPA claims. Plaintiff's motion for summary judgment is denied and FCO's cross-motion for summary judgment is granted on all other claims.

- <u>COUNT IV - Landlord and Tenant Act</u>
    - o  Plaintiff's motion for summary judgment is denied and Defendant Home's motion for summary judgment is granted.

- <u>COUNT V - Civil Conspiracy</u>
    - o  Plaintiff's motion for summary judgment is denied, Defendant Home's motion for summary judgment is granted, and Defendant FCO's cross-motion for summary judgment is granted.

In addition, Defendant Home's motion for summary judgment on its Counterclaim is denied and Home's motion for sanctions is denied without prejudice.

Therefore, the only remaining claims in this case are the following:

- Count I (FDCPA), against Defendant FCO: the AV2 and HD1AC letters lacked the required notice, in violation of 15 U.S.C. § 1692g(a);

- Count II (FCEUA), against Defendant FCO: the AV2 and HD1AC letters lacked the required notice, in violation of 15 U.S.C. § 1692g(a);

- Count III (UTPCPL), against Defendant FCO: the AV2 and HD1AC letters lacked the required notice, in violation of 15 U.S.C. § 1692g(a); and

- Defendant Home's Counterclaim.

    An appropriate order follows.

**VI.   APPENDIX A: Sample Form AV2 Letters from Defendant FCO**

Apartment 877
PO BOX 4115
CONCORD CA 94524

May 12, 2008

Address Service Requested

#BWNFTZF #FCO4968001208052#

AL GREEN
SUE RED
234 COLOR STREET
APT #234
ARIVACA AZ 85601

# Fair
## Collections & Outsourcing

12304 BALTIMORE AVE, #E
BELTSVILLE MD, 20705

HOURS 8AM - 7PM EASTERN MON - FRI

TOLL-FREE PHONE:      (877) 324-7959
FAX:                  (240) 374-5651

PAY ONLINE 24 HRS A DAY AT:
WWW.PAYFCO.COM

Account Number: 110
PIN Number: 4366

DEAR AL GREEN, SUE RED:

| ACCOUNT NUMBER | CREDITOR | AMOUNT DUE |
|---|---|---|
| 110 | PIRATE'S LANDING | $323.00 |
| 23498764 | CAPITAL HEIGHTS | |

WE ARE PROVIDING THIS SECOND NOTICE ANTICIPATING YOUR WILLINGNESS TO RESOLVE THIS ACCOUNT WHILE AT THIS STAGE OF THE COLLECTION PROCESS.

THIS IS A VERY FAVORABLE TIME TO CLEAR YOUR ACCOUNT. THE CREDIT BUREAU MAY BE NOTIFIED OF THIS DELINQUENCY IF YOU FAIL TO NEGOTIATE PAYMENT.

THIS ACCOUNT WILL BE ASSIGNED TO A PROFESSIONAL DEBT COLLECTOR ON 5-16-08.

......................................... Detach and Return with Payment .........................................

THIS IS AN ATTEMPT TO COLLECT A DEBT, BY A DEBT COLLECTOR; ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. SEE REVERSE SIDE FOR IMPORTANT INFORMATION REGARDING STATE AND FEDERAL LAWS AND YOUR RIGHTS

FAIR COLLECTIONS & OUTSOURCING
12304 BALTIMORE AVE, #E
BELTSVILLE MD, 20705



8

AL GREEN
234 COLOR STREET
APT #234
ARIVACA AZ 85601

AMOUNT ENCLOSED: $_____

ACCOUNT NAME:      AL GREEN
                   SUE RED
ACCOUNT NUMBER:    110
CREDITOR NAME:     PIRATE'S LANDING

FCOAV2-0512TB00012-JF8P-7 1/2

CRAL AND STATE DEBT COLLECTION LAWS AND THE FAIR CREDIT REPORTING ACT REQUIRE
THE FOLLOWING DISCLOSURES

**Required by Fair Debt Collection Practices Act:** This is an attempt to collect a debt by a debt collector. Any information obtained will be used for that purpose.

**Required by Fair Credit Reporting Act:** You have a right to inspect your credit report.

**All States:** As required by law, you are hereby notified that a negative credit report reflecting on your credit report may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations.

The collection agent assigned to your account may change from time to time. If you experience any difficulty finding the appropriate collection agent handling your account, contact the collection manager at 877-324-7959.

**MINNESOTA:** This collection agency is licensed by the Minnesota Department of Commerce.

**NEW YORK CITY:** Department of Consumer Affairs License Numbers 1208466 and 123495

**NORTH CAROLINA:** NORTH CAROLINA DEPARTMENT OF INSURANCE PERMIT #4495.

**TENNESSEE:** This collection agency is licensed by the Collection Service Board, State Department of Commerce and Insurance.



12304 Baltimore Ave, #E
Beltsville, MD 20705
Hours 8:00am - 6:00pm EST, Mon-Fri
Toll-Free Phone:(877) 324-7959
Fax: (240) 374-5651

May 26, 2010

LAURA B SCOTT
123 N 564 W
APT 567
OREM UT 34213

Pay in full online anytime at: WWW.PAYFCO.COM
Account Number: 865666      PIN Number: 1452

| Account Number: 865666<br>Creditor: LOCATION E | Assigned<br>Principal:<br>$1355.00 | Additional<br>Charges:<br>$65.00 | Payments<br>To FCO:<br>$0.00 | Account<br>Balance:<br>$1420.00 |
| --- | --- | --- | --- | --- |

Dear LAURA B SCOTT:

We are providing this second notice anticipating your willingness to resolve this account while at this stage of the collection process.

This is a very favorable time to clear your account. The three major credit bureaus may be notified of this delinquency if you fail to negotiate payment.

This account will be assigned to a professional debt collector on 06-05-10.

Check by phone, Visa, and Master Card accepted. Call (877) 324-7959.

Another responsible party on this account is Paul Scott.

**THIS IS AN ATTEMPT TO COLLECT A DEBT BY A DEBT COLLECTOR; ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. SEE REVERSE SIDE FOR IMPORTANT INFORMATION REGARDING STATE AND FEDERAL LAWS AND YOUR RIGHTS.**

*** Detach Lower Portion And Return With Payment ***       34-HWFCON10-AV2-1/06/10

TY17F96876

PO BOX 505
Linden MI 48451-0505
ADDRESS SERVICE REQUESTED

Amount Enclosed:      $_____
Account Name:         LAURA B SCOTT
Account Number:       865666
Creditor Name:        LOCATION E

For Collection Services call:
Toll-Free Phone: (877) 324-7959

0026020024020026145063121211-1A1--TY17F96876 34
AV2 - 34
LAURA B SCOTT
123 N 564 W
APT 567
OREM UT 34213

Fair Collections & Outsourcing
12304 Baltimore Ave, Suite E
Beltsville MD 20705-1314

IMPORTANT INFORMATION

This is an attempt to collect a debt by a debt collector. Any information obtained will be used for that purpose.

You have a right to inspect your credit report. As required by law, you are hereby notified that a negative credit report reflecting on your credit report may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations. Nonprofit credit counseling services may be available in the area.

The collection agent assigned to your account may change from time to time. If you experience any difficulty finding the appropriate collection agent handling your account, contact the collection manager at 877-324-7959.

If this letter is from Fair Collections & Outsourcing of New England, Inc., the following disclosures also apply:

IDAHO: Managers can be reached at 877-324-7959, Mon.-Fri. 8am to 6:30pm, EST.

MAINE: Contact us at 877-324-7959; Hours of Operation are Mon.-Fri. 8am to 6:30pm, EST.

MASSACHUSETTS: Massachusetts Office: 84 State Street, Boston, MA 02109; Office Hours: Mon.-Fri. 8am to 6:30pm, EST. Send Payments to us at 12304 Baltimore Avenue, Suite E, Beltsville, MD 20705. Contact us at 877-324-7959.

**NOTICE OF IMPORTANT RIGHTS. YOU HAVE THE RIGHT TO MAKE A WRITTEN OR ORAL REQUEST THAT TELEPHONE CALLS REGARDING YOUR DEBT NOT BE MADE TO YOU AT YOUR PLACE OF EMPLOYMENT. ANY SUCH ORAL REQUEST WILL BE VALID FOR ONLY TEN DAYS UNLESS YOU PROVIDE WRITTEN CONFIRMATION OF THE REQUEST POSTMARKED OR DELIVERED WITHIN SEVEN DAYS OF SUCH REQUEST. YOU MAY TERMINATE THIS REQUEST BY WRITING TO THE DEBT COLLECTOR.**

WISCONSIN: This collection agency is licensed by the Division of Banking, P.O. Box 7876, Madison, Wisconsin 53707.

If this letter is from Fair Collections & Outsourcing, Inc., the following disclosures also apply:

CALIFORNIA: The state Rosenthal Fair Debt Collection Practices Act and the federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 a.m. or after 9 p.m. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP or www.ftc.gov."

COLORADO: **FOR INFORMATION ABOUT THE COLORADO FAIR DEBT COLLECTION PRACTICES ACT, SEE WWW.AGO.STATE.CO.US/CADC/CADCmain.cfm.**

MINNESOTA: This collection agency is licensed by the Minnesota Department of Commerce.

NEW YORK CITY: New York Department of Consumer Affairs License Numbers 1208466, 1293258 and 1239495.  You may contact Bernard Mercy at 877-775-9364

NORTH CAROLINA: NORTH CAROLINA DEPARTMENT OF INSURANCE PERMIT #4108, #4495 and #10291.

TENNESSEE: This collection agency is licensed by the Collection Service Board, State Department of Commerce and Insurance.

Source: TAC Ex. 2.

**VII. APPENDIX B: Sample Form HD1AC Letters from Defendant FCO**

Department 677
PO BOX 4115
CONCORD CA  94524

|||||||||||||||||||||||||||||||||||||||||||||||||||||||||||||||||||||||||

May 12, 2008

Address Service Requested

#BWNFTZF #FCO4968003406056#

AL GREEN
SUE RED
234 COLOR STREET
APT #234
ARIVACA AZ  85601

## Fair Collections & Outsourcing

12304 BALTIMORE AVE, #E
BELTSVILLE, MD  20705

HOURS 8AM - 7PM EASTERN MON - FRI
TOLL-FREE PHONE:    (877) 324-7959
FAX:    (240) 374-5651

PAY ONLINE 24 HRS A DAY AT:
WWW.PAYFCO.COM

Account Number: 110
PIN Number: 4366

| ACCOUNT NUMBER | CREDITOR | AMOUNT DUE |
|---|---|---|
| 110<br>23498764 | PIRATE'S LANDING<br>CAPITAL HEIGHTS | $323.00 |

### PAYMENT DEMAND - $323.00

OUR CLIENT IS DEMANDING FULL PAYMENT OF YOUR PAST DUE ACCOUNT.

THIS IS YOUR OPPORTUNITY TO PAY THIS ACCOUNT IN FULL BEFORE IT IS REPORTED TO THE CREDIT BUREAU!

CONTACT FAIR COLLECTIONS & OUTSOURCING AT (877) 324-7959
8AM - 7PM EASTERN MONDAY-FRIDAY.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Detach and Return with Payment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

THIS IS AN ATTEMPT TO COLLECT A DEBT, BY A DEBT COLLECTOR; ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. SEE REVERSE SIDE FOR IMPORTANT INFORMATION REGARDING STATE AND FEDERAL LAWS AND YOUR RIGHTS

|||||||||||||||||||||||

FAIR COLLECTIONS & OUTSOURCING
12304 BALTIMORE AVE, #E
BELTSVILLE, MD  20705
|...|||....|...||||...||....||...||....||...|....|...|.|.|

**34**

AL GREEN
234 COLOR STREET
APT #234
ARIVACA AZ  85601
AMOUNT ENCLOSED:  $_____

ACCOUNT NAME:    AL GREEN
                 SUE RED
ACCOUNT NUMBER:  110
CREDITOR NAME:   PIRATE'S LANDING

FCOHD1AC-0512TB00026-JF8P-2 28

ꓩERAL AND STATE DEBT COLLECTION LAWS AND THE FAIR CREDIT REPORTING ACT REQUIRE
ꓩE FOLLOWING DISCLOSURES

**Required by Fair Debt Collection Practices Act:** This is an attempt to collect a debt by a debt collector. Any information obtained will be used for that purpose.

**Required by Fair Credit Reporting Act:** You have a right to inspect your credit report.

**All States:** As required by law, you are hereby notified that a negative credit report reflecting on your credit report may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations.

The collection agent assigned to your account may change from time to time. If you experience any difficulty finding the appropriate collection agent handling your account, contact the collection manager at 877-324-7959.

**MINNESOTA:** This collection agency is licensed by the Minnesota Department of Commerce.

**NEW YORK CITY:** Department of Consumer Affairs License Numbers 1208466 and 123495

**NORTH CAROLINA:** NORTH CAROLINA DEPARTMENT OF INSURANCE PERMIT #4495.

**TENNESSEE:** This collection agency is licensed by the Collection Service Board, State Department of Commerce and Insurance.



*Fair Collections & Outsourcing*

12304 Baltimore Ave, #E
Beltsville, MD 20705
Hours 8:00am - 6:00pm EST, Mon-Fri
Toll-Free Phone:(877) 324-7959
Fax: (240) 374-5651

May 26, 2010

LAURA B SCOTT
123 N 564 W
APT 567
OREM UT 34213

Pay in full online anytime at: WWW.PAYFCO.COM
Account Number:  865666    PIN Number: 1452

| Account Number: 865666<br>Creditor: LOCATION E | Assigned<br>Principal:<br>$1355.00 | Additional<br>Charges:<br>$65.00 | Payments<br>To FCO:<br>$0.00 | Account<br>Balance:<br>$1420.00 |
|---|---|---|---|---|

Dear LAURA B SCOTT:

This account has been reported or is scheduled to be reported to one or all of the following national credit reporting bureaus:  Equifax Credit Information Services, Trans-Union Credit Information Services or Experian within 90 days.

If you intend to resolve this matter, contact Fair Collections & Outsourcing or send full payment with the lower portion of this letter. Trade lines, once reported, are not deleted but updated once paid.

Contact Fair Collections & Outsourcing at (877) 324-7959
8:00AM – 6:30PM Eastern Monday-Friday.

Check by phone, Visa, and Master Card accepted.

Another responsible party on this account is Paul Scott.

**THIS IS AN ATTEMPT TO COLLECT A DEBT BY A DEBT COLLECTOR; ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. SEE REVERSE SIDE FOR IMPORTANT INFORMATION REGARDING STATE AND FEDERAL LAWS AND YOUR RIGHTS.**

*** Detach Lower Portion And Return With Payment ***        17-HWFCON10-HD1C-1/06/10

TY17F06769

PO BOX 505
Linden MI 48451-0505
ADDRESS SERVICE REQUESTED

| Amount Enclosed: | $_____ |
|---|---|
| Account Name: | LAURA B SCOTT |
| Account Number: | 865666 |
| Creditor Name: | LOCATION E |

For Collection Services call:
Toll-Free Phone: (877) 324-7959

0026020024000944489341213-1A1-TY17F06769 17

HD1C - 17
LAURA B SCOTT
123 N 564 W
APT 567
OREM UT 34213

Fair Collections & Outsourcing
12304 Baltimore Ave, Suite E
Beltsville MD 20705-1314

IMPORTANT INFORMATION

This is an attempt to collect a debt by a debt collector. Any information obtained will be used for that purpose.

You have a right to inspect your credit report.  As required by law, you are hereby notified that a negative credit report reflecting on your credit report may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations. Nonprofit credit counseling services may be available in the area.

The collection agent assigned to your account may change from time to time. If you experience any difficulty finding the appropriate collection agent handling your account, contact the collection manager at 877-324-7959.

If this letter is from Fair Collections & Outsourcing of New England, Inc., the following disclosures also apply:

IDAHO: Managers can be reached at 877-324-7959, Mon.-Fri. 8am to 6:30pm, EST.

MAINE: Contact us at 877-324-7959; Hours of Operation are Mon.-Fri. 8am to 6:30pm, EST.

MASSACHUSETTS: Massachusetts Office: 84 State Street, Boston, MA 02109; Office Hours: Mon.-Fri. 8am to 6:30pm, EST. Send Payments to us at 12304 Baltimore Avenue, Suite E, Beltsville, MD 20705. Contact us at 877-324-7959.

**NOTICE OF IMPORTANT RIGHTS. YOU HAVE THE RIGHT TO MAKE A WRITTEN OR ORAL REQUEST THAT TELEPHONE CALLS REGARDING YOUR DEBT NOT BE MADE TO YOU AT YOUR PLACE OF EMPLOYMENT. ANY SUCH ORAL REQUEST WILL BE VALID FOR ONLY TEN DAYS UNLESS YOU PROVIDE WRITTEN CONFIRMATION OF THE REQUEST POSTMARKED OR DELIVERED WITHIN SEVEN DAYS OF SUCH REQUEST. YOU MAY TERMINATE THIS REQUEST BY WRITING TO THE DEBT COLLECTOR.**

WISCONSIN: This collection agency is licensed by the Division of Banking, P.O. Box 7876, Madison, Wisconsin 53707.

If this letter is from Fair Collections & Outsourcing, Inc., the following disclosures also apply:

CALIFORNIA: The state Rosenthal Fair Debt Collection Practices Act and the federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 a.m. or after 9 p.m.  They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work.  For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt.  Collectors may contact another person to confirm your location or enforce judgment.  For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP or www.ftc.gov."

COLORADO: **FOR INFORMATION ABOUT THE COLORADO FAIR DEBT COLLECTION PRACTICES ACT, SEE WWW.AGO.STATE.CO.US/CADC/CADCmain.cfm.**

MINNESOTA: This collection agency is licensed by the Minnesota Department of Commerce.

NEW YORK CITY: New York Department of Consumer Affairs License Numbers 1208466, 1293258 and 1239495.  You may contact Bernard Mercy at 877-775-9364

NORTH CAROLINA: NORTH CAROLINA DEPARTMENT OF INSURANCE PERMIT #4108, #4495 and #10291.

TENNESSEE: This collection agency is licensed by the Collection Service Board, State Department of Commerce and Insurance.

Source: TAC Ex. 4.