IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MARIUSZ G. JARZYNA,                  :    CIVIL ACTION
                                     :    NO. 10-4191
          Plaintiff,                 :
                                     :
     v.                              :
                                     :
HOME PROPERTIES, L.P., et al.,       :
                                     :
          Defendants.                :


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                          August 18, 2016


        Before the Court are Defendant Fair Collections and
Outsourcing, Inc.'s Motion to Deposit Funds into Court and Enter
Judgment in Favor of Plaintiff (ECF No. 288) and Motion to
Strike Declaration of Francis J. Farina (ECF No. 293). For the
reasons that follow, the Court will deny the motion to deposit
funds and grant the motion to strike the declaration.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

        This case arises out of a landlord-tenant relationship
that deteriorated, causing the landlord, a residential
management company, to refer certain amounts purportedly owed to
it by its former tenant to a debt collection agency. The former
tenant, Plaintiff Mariusz Jarzyna ("Plaintiff"), brought this
action on behalf of himself and other similarly situated former

tenants against the residential management company, Home Properties, L.P. ("Home"), and the debt collection agency, Fair Collections and Outsourcing, Inc. ("FCO"), alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq., as well as certain other state consumer protection laws.

As the Court has observed in the past, "[t]his case, despite the relative simplicity of its claims, has proceeded along an usually circuitous and contentious path." Jarzyna v. Home Properties, L.P., 114 F. Supp. 3d 243, 248 (E.D. Pa. 2015). Now, six years after Plaintiff filed his initial Complaint, the Court has ruled on the parties' motions for summary judgment and subsequent motions for reconsideration.

The factual and procedural history has been set forth at length in other decisions issued in this case and need not be repeated here. See Jarzyna v. Home Properties, L.P., No. 10-4191, 2016 WL 2623688, at *1-7 (E.D. Pa. May 6, 2016) (describing recent procedural history); Jarzyna, 114 F. Supp. 3d at 248-52 (setting forth the factual background and earlier procedural history). Instead, the Court describes only the most recent procedural history below.

After the Court's decision on summary judgment and the motions for reconsideration, the only liability issues that remain for trial are Plaintiff's FDCPA claim that certain of

2

FCO's standard dunning letters lacked the requisite disclosures, in violation of 15 U.S.C. § 1692g(a), and Home's counterclaim for Plaintiff's alleged breach of the lease agreement. For the purposes of assessing damages, the only claims that have been decided in Plaintiff's favor are Plaintiff's FDCPA claims against FCO with respect to FCO's failure to identify as a debt collector when leaving voice messages on Plaintiff's cell phone, in violation of §§ 1692e(11) and 1692d(6), and FCO's attempts to collect a debt that Plaintiff did not owe, in violation of §§ 1692f(1), 1692e(2), and 1692e(10) (Count I).

The case has reached the class certification stage. Plaintiff filed a supplemental motion for class certification on April 22, 2016, ECF No. 287, which FCO has opposed, ECF No. 292. Plaintiff moves for certification of the following class:

> All persons residing in Pennsylvania, New York, New Jersey, Massachusetts, Maryland, Maine, Florida, Illinois and Washington, D.C.[,] who, during the period January 1, 2008 through the date of the filing of Plaintiff's Third Amended Class Action Complaint on April 8, 2013 (Doc. No. 205) (the "Class Period"):

> a) have been identified and/or readily identifiable by Home Properties, L.P. ("Home") to have been assessed Thirty Day Notice Fees by Home – and with the balance placed with FCO for collection, in violation of 15 U.S.C. §§ 1692f(1), 1692e(2), and 1692e(10); and

> b) who have been subject of FCO's standard, common, and uniform policy not to identify themselves as a debt collector when leaving messages on cellular/personal phones in

> violation of 15 U.S.C. §§ 1692e(11) and
> 1692d(6).

Pl.'s Mot. Class Cert. at 1-2, ECF No. 287. Plaintiff explains that this class definition was shaped upon the Court's grant of partial summary judgment in favor of Plaintiff against Defendant FCO for violations of the FDCPA on two claims.

The Court scheduled a hearing on Plaintiff's class certification motion for October 17, 2016. ECF No. 296 ¶ 4.

In connection with the class certification proceedings, FCO filed two motions.

First, FCO filed a Motion to Deposit Funds into Court and Enter Judgment in Favor of Plaintiff, ECF No. 288, which Plaintiff opposed, ECF No. 290. Upon the Court's invitation, both Plaintiff and FCO submitted supplemental letter-briefs regarding the applicability of the Third Circuit's recent decision in Richardson v. Bledsoe, No. 15-2876, 2016 WL 3854216 (3d Cir. July 15, 2016), which addresses the "picking off" exception to the mootness of a prospective class representative's claims. See ECF Nos. 298, 299.

Second, FCO filed a Motion to Strike the Declaration of Frank Farina, Esquire. ECF No. 293. Mr. Farina is one of Plaintiff's attorneys and filed the declaration at issue in support of Plaintiff's motion for class certification. Plaintiff filed a brief in opposition to the motion to strike or, in the

alternative, a cross-motion to substitute the Special Master's
November 21, 2012, Final Report and Recommendation, ECF No. 190,
as adopted by the Court, ECF No. 202. ECF No. 295. Defendant
FCO, with the Court's leave, filed a response to Plaintiff's
cross-motion. ECF No. 297.

Because the arguments raised in these two motions will
affect the issues addressed during the class certification
hearing, the Court advised the parties that it would rule on
both motions in advance of the class certification hearing.
Accordingly, the Court will now address each motion in turn.

## II.   DEFENDANT FCO'S MOTION TO DEPOSIT FUNDS INTO COURT AND ENTER JUDGMENT IN FAVOR OF PLAINTIFF

FCO moves for the Court's leave to deposit $1,001.00,
plus the cost of $400.00 for filing fees, into the Court in an
account payable to Plaintiff Jarzyna, pursuant to Federal Rule
of Civil Procedure 67, upon entry of judgment in favor of
Plaintiff. Def.'s Mot. Deposit Funds 1, ECF No. 288. FCO
suggests that the Court should thereafter determine Plaintiff's
reasonable attorneys' fees and costs, which FCO agrees (and has
adequate insurance coverage) to pay. Id. FCO explains that the
FDCPA limits an individual plaintiff's recovery to $1,000 in
statutory damages and "the costs of the action, together with a
reasonable attorney's fee as determined by the court." Id.
(citing 15 U.S.C. § 1692k(a)(2)(A), (a)(3)). Although the FDCPA

5

also contemplates an award of actual damages, Plaintiff has not alleged actual damages here. Id. at 6. Thus, according to FCO, entry of judgment in favor of Plaintiff, combined with FCO's payment of the amounts outlined above, would provide Plaintiff with complete relief and his individual claim would be moot. Id. at 2-3.

FCO's motion is undoubtedly inspired by the question expressly left open by the Supreme Court's recent decision in Campbell-Ewald Co. v. Gomez, 136 S. Ct. 663 (2016). As FCO notes, Campbell-Ewald held only that an unaccepted Rule 68 offer of a judgment to a plaintiff who seeks to represent a class does not moot the case, even if the offer of judgment would afford the plaintiff complete relief on his individual claim. Id. at 672. Specifically, the Supreme Court held, based on basic contract law principles, that an unaccepted offer does not create any obligation to pay, so the plaintiff "gain[s] no entitlement to the relief that the defendant offered." Id. at 679. But the Court expressly did not "decide whether the result would be different if a defendant deposits the full amount of the plaintiff's individual claim in an account payable to the plaintiff, and the court enters judgment for the plaintiff in that amount." Id. at 672; see also id. at 685 (Alito, J., dissenting) ("I am heartened that the Court appears to endorse the proposition that a plaintiff's claim is moot once he has

6

'received full redress' from the defendant for the injuries he has asserted. Today's decision thus does not prevent a defendant who actually pays complete relief--either directly to the plaintiff or to a trusted intermediary--from seeking dismissal on mootness grounds." (internal citations omitted)). Thus, FCO argues that it should be permitted to bring the litigation of Plaintiff's individual claim to a close by the entry of judgment in his favor. Def.'s Mot. Deposit Funds 5.

Plaintiff calls Defendant FCO's motion "a blatant attempt to improperly short-circuit the class certification process." Pl.'s Opp'n 3, ECF No. 390. He does not, however, cite to any case law suggesting that this proposed course of action would be improper. Instead, Plaintiff attempts to revisit arguments that he has made multiple times now concerning the application of his security deposit to the notice fee, which contradicts the Court's previous holding that there is no dispute of material fact that Plaintiff's security deposit was applied toward back-due rent. Id. at 4 n.4.

Nonetheless, FCO's motion has at least three problems, any of which provides a basis for denying the motion.

First, FCO proposes an improper use of Rule 67. Rule 67 provides, in pertinent part, that

> [i]f any part of the relief sought is a money judgment or the disposition of a sum of money or some other deliverable thing, a party--on notice to every other

party and by leave of court--may deposit with the
court all or part of the money or thing, whether or
not that party claims any of it. The depositing party
must deliver to the clerk a copy of the order
permitting deposit.

Fed. R. Civ. P. 67(a). Rule 67 is a procedural device that "was
only intended to provide a place of safekeeping for disputed
funds pending resolution of a legal dispute" and, accordingly,
"may not be used to effect a legal transfer of property between
litigants." Prudential Ins. Co. of Am. v. BMC Indus., Inc., 630
F. Supp. 1298, 1300 (S.D.N.Y. 1986); see also Browning Ferris,
Inc. v. Montgomery Cty., No. 90-3258, 1990 WL 131937, at *2
(E.D. Pa. Sept. 4, 1990) (explaining that Rule 67's procedures
"cannot be used as a means of altering the contractual
relationships and legal duties of the parties"). "The purpose of
a deposit in court is to relieve the depositor of responsibility
for a fund in dispute, while the parties litigate their
difference with respect to the fund." Progressive Cas. Ins. Co.
v. Drive Trademark Holdings LP, 680 F. Supp. 2d 639, 641 (D.
Del. 2010) (quoting 13 James Wm. Moore et al., Moore's Federal
Practice § 67.02 (3d ed. 2009)). In accepting funds under Rule
67, the court "holds the deposit as trustee for the true owner
or owners until the Court determines how the funds should be
dispersed among the parties to the suit." Qwest Corp. v.
Koppendrayer, No. 03-2942, 2004 WL 2315697, at *1 (D. Minn. Oct.
12, 2004). The decision whether to allow a Rule 67 deposit is

within the court's discretion. <u>United States v. Lenox</u>, Nos. 88-9303, 89-4642, 1989 WL 143167, at *6 (E.D. Pa. Nov. 27, 1989).

Here, Defendant FCO does not allege that the funds it wishes to deposit with the Court are subject to competing claims, as required by Rule 67. Instead, Defendant's aim is to procure a settlement of Plaintiff's individual claims, despite Plaintiff's earlier rejection of at least one of Defendant's settlements offers.

In the wake of <u>Campbell-Ewald</u>, defendants before a number of other district courts have also sought to use Rule 67 deposits to compel findings of mootness. The majority of courts to confront Rule 67 motions under such circumstances have denied them. <u>See</u> <u>Radha Giesmann, MD, P.C. v. Am. Homepatient, Inc.</u>, No. 14-1538, 2016 WL 3407815, at *3 (E.D. Mo. June 16, 2016) (denying motion for Rule 67 deposit in advance of class certification proceedings); <u>Tegtmeier v. PJ Iowa, L.C.</u>, No. 15-110, 2016 WL 3265711, at *11 (S.D. Iowa May 18, 2016) (same); <u>Bais Yaakov of Spring Valley v. Graduation Source, LLC</u>, No. 14-3232, 2016 WL 872914, at *1 (S.D.N.Y. Mar. 7, 2016) (vacating prior order permitting the defendants to deposit payment with the court and finding that a live claim remained such that plaintiff must be accorded a fair opportunity to show that class certification was warranted); <u>Bais Yaakov of Spring Valley v. Varitronics, LLC</u>, No. 14-5008, 2016 WL 806703, at *1 (D. Minn.

9

Mar. 1, 2016) (denying the defendant's Rule 67 motion where "there is no purpose to the deposit defendant seeks to make other than to moot the case, and . . . Plaintiff has not yet had a fair opportunity to show that class certification is warranted"); Brady v. Basic Research, L.L.C., 312 F.R.D. 304, 306 (E.D.N.Y. 2016) (denying the defendant's Rule 67 motion because the deposit aimed to "moot this case [and] not to relieve [the defendants] of the burden of administering an asset" and because a prospective class representative with a live claim must be given a fair opportunity to show that class certification is warranted). But see S. Orange Chiropractic Ctr., LLC v. Cayan LLC, No. 15-13069, 2016 WL 1441791, at *5 (D. Mass. April 12, 2016) (concluding that an offer to deposit a check with the court to satisfy all of the plaintiff's individual claims moots the individual claims); Leyse v. Lifetime Entm't Servs., LLC, No. 13-5794, 2016 WL 1253607, at *2 (S.D.N.Y. Mar. 17, 2016) (relying on Second Circuit precedent allowing for the entry of judgment for the plaintiff over the plaintiff's objections to find that once the defendant has provided full relief, the plaintiff has no basis to object to entry of judgment in its favor).

        Because FCO has failed to provide any reason why its motion comports with the purpose of Rule 67--namely, that the funds it seeks to deposit are the basis of the dispute or it

seeks to relieve itself of the burden of administering an asset--the Court finds that the application of this procedural mechanism is inappropriate.

Second, even if it were appropriate under the Federal Rules of Civil Procedure, FCO's proposed deposit would not afford Plaintiff complete relief. Plaintiff's claims would not be moot, because, in addition to his individual claims, he has a personal stake in the class claims proposed in his Third Amended Complaint.

The Campbell-Ewald Court explained that "[w]hile a class lacks independent status until certified, a would-be class representative with a live claim of her own must be accorded a fair opportunity to show that certification is warranted." 136 S. Ct. at 672 (citation omitted). Relying on this language, the Ninth Circuit--faced with the question of whether to instruct the district court to order monetary and injunctive relief on a prospective class representative's individual claims, thereby mooting them, before that litigant had an opportunity to move for class certification--concluded that "when a defendant consents to judgment affording complete relief on a named plaintiff's individual claims before certification, but fails to offer complete relief on the plaintiff's class claims, a court should not enter judgment on the individual claims, over the plaintiff's objection, before the plaintiff has had a fair

opportunity to move for class certification." Chen v. Allstate
Ins. Co., 819 F.3d 1136, 1147 (9th Cir. 2016). The Ninth Circuit
also noted that even before Campbell-Ewald, the Supreme Court
recognized that a named plaintiff has a "'personal stake' in
obtaining class certification." Id. (quoting U.S. Parole Comm'n
v. Geraghty, 445 U.S. 388, 404 (1980)).

FCO asks that this entire litigation, including
Plaintiff's individual claims and the proposed class claims, be
terminated. It points to language from Justice Kagan's dissent
in Genesis Healthcare Corp. v. Symczyk, 133 S. Ct. 1523 (2013),
providing that "a court has discretion to halt a lawsuit by
entering judgment for the plaintiff when the defendant
unconditionally surrenders and only the plaintiff's obstinacy or
madness prevents her from accepting total victory." Id. at 1536
(Kagan, J., dissenting). FCO, however, cites this provision out
of context. In her dissent in Genesis Healthcare, Justice Kagan
goes on to suggest that a named plaintiff exhibits neither
obstinacy nor madness by declining a "supposed capitulation"
that "fails to give the plaintiff all the law authorizes and she
has sought," id., which in this case, includes the right to
pursue relief on behalf of members of a class.

The Supreme Court has recognized that the class action
device is often the only effective means of pursuing relief on
behalf of injured persons: "Where it is not economically

feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class action device." Deposit Guaranty Nat'l Bank, Jackson, Miss. v. Roper, 445 U.S. 326, 339 (1980). Thus, "a judgment satisfying an individual claim does not give a [named] plaintiff . . ., exercising her right to sue on behalf of other [individuals], 'all that [she] has . . . requested in the complaint (i.e., relief for the class).'" Genesis Healthcare, 133 S. Ct. at 1536 (Kagan, J., dissenting) (quoting Roper, 445 U.S. at 341 (Rehnquist, J., concurring)). Because Plaintiff pled class-wide allegations in his Third Amended Complaint and earlier versions of the complaint and he has not yet had a reasonable opportunity to show that class certification is warranted through a class certification hearing, satisfaction of his individual claims does not tender all of the relief he requests in his complaint.

Moreover, in this case, Plaintiff's personal stake in class certification does not merely rest upon some abstract "substantive" right to pursue class-wide relief. Under the FDCPA, Plaintiff's ability to represent a class carries with it the prospect of a greater financial recovery than he would otherwise obtain in an individual action. This is because the FDCPA allows a named plaintiff to recover actual damages, see 15

U.S.C. § 1692k(a)(1), statutory damages, see id.

§ 1692k(a)(2)(A), as well as a pro-rata share of the entire

recovery, see id. § 1692k(a)(2)(B).[1] Fry v. Hayt, Hayt & Landau,

198 F.R.D. 461, 472 (E.D. Pa. 2000). Thus, in addition to his

individual award under the FDCPA, Plaintiff stands to recover a

pro-rata share of the common fund that is generated for the

benefit of the class.

---

[1]     Section 1692k reads as follows:

(a)  Except as otherwise provided by this section, any
     debt collector who fails to comply with any
     provision of this subchapter with respect to any
     person is liable to such person in an amount
     equal to the sum of--

     (1)  any actual damage sustained by such a person
          as a result of such failure;

     (2)  (A)  in the case of any action by an
               individual, such additional damages as
               the court may allow, but not exceeding
               $1,000; or

          (B)  in the case of a class action, (i) such
               amount for each named plaintiff as
               could be recovered under subparagraph
               (A), and (ii) such amount as the court
               may allow for all other class members,
               without regard to a minimum individual
               recovery, not to exceed the lesser of
               $500,000 or 1 per centum of the net
               worth of the debt collector[.]

15 U.S.C. § 1692k(a).

Third, even if the Court was to grant FCO's deposit request and Plaintiff's claims were rendered moot, Plaintiff would still be permitted to seek class certification under the "relation back" doctrine. See Sosna v. Iowa, 419 U.S. 393, 402 n.11 (1975) ("[W]hether the [class] certification can be said to 'relate back' to the filing of the complaint may depend upon the circumstances of the particular case and especially the reality of the claim that otherwise the issue would evade review."). The relation back doctrine "permits courts to relate a would-be class representative's (now moot) claims for relief back in time to a point at which that plaintiff still had a personal stake in the outcome of the litigation," thus allowing him to "continue to represent, or seek to represent, a class of similarly situated persons despite no longer having a justiciable claim for individual relief." Richardson, 2016 WL 3854216, at *3 (citing Cty. of Riverside v. McLaughlin, 500 U.S. 44, 51 (1991)).

In its recent decision in Richardson v. Bledsoe, the Third Circuit reaffirmed the "picking off" exception to mootness, which it had first recognized in Weiss v. Regal Collections, 385 F.3d 337 (3d Cir. 2004), and which represents one such scenario in which courts have applied the relation back doctrine. The picking off exception to mootness bars defendants from dodging class suits by mooting the claims of named

plaintiffs before they have a fair opportunity to move for class certification. Richardson, 2016 WL 3854216, at *3. The Third Circuit concluded that the picking off exception survived Campbell-Ewald, even though the decision partially overruled Weiss. Specifically, the Third Circuit held that Campbell-Ewald overruled Weiss only with respect to the question of whether an unaccepted offer of judgment moots a plaintiff's claim and therefore did not address the picking off exception. Id. at *7.

Additionally, the Third Circuit concluded that Campbell-Ewald provides "support for the principles animating the [picking off] exception," because the Supreme Court noted therein that "a would-be class representative with a live claim of her own must be accorded a fair opportunity to show that certification is warranted." Id. at *8 (citing Campbell-Ewald, 136 S. Ct. at 672). The Third Circuit observed an increase in "placeholder" motions for class certification, which are obviously premature and lack a fully developed factual record but are filed by plaintiffs solely to prevent defendants from mooting the claims of would-be class representatives. Id. Moreover, the Third Circuit found that other circuits--namely, the Ninth, Tenth, and Eleventh--have extended the picking off exception to "situations in which a defendant could 'buy off' the small individual claims of the named plaintiffs" and "effectively ensure that claims that are too economically

16

insignificant to be brought on their own would never have their
day in court," thereby "broadly undermin[ing] the purpose of
Rule 23 and class action litigation." Id. at *9 (quoting Pitts
v. Terrible Herbst, Inc., 653 F.3d 1081, 1091 (9th Cir. 2011));
see also id. (discussing Stein v. Buccaneers Ltd. Partnership,
772 F.3d 698 (11th Cir. 2014), and Lucero v. Bureau of
Collection Recovery, Inc., 639 F.3d 1239 (10th Cir. 2011)).

FCO points out that application of the relation back
mechanism, as contemplated in Richardson, is discretionary. Def.
FCO's Letter Br. at 2, ECF No. 298 (citing Richardson, 2016 WL
3854216, at *10). Particularly, where the plaintiff has
"undu[ly] delay[ed]" seeking class certification, the court
should not apply the relation back doctrine. Id. (citing
Richardson, 2016 WL 3854216, at *11). FCO suggests that
Plaintiff engaged in undue delay, because "the Court has been
burdened by Plaintiff's multiple, serial filings," including
multiple amendments to his complaint and motions concerning
discovery disputes that Plaintiff could have avoided. Id. at 3.

While some of the delay in this case is attributable
to Plaintiff's conduct, a good portion of it is not. For
example, significant amounts of time passed while the Special
Master was considering numerous discovery disputes, while the
Court was deciding the parties' cross-motions for summary
judgment, and while the case was stayed pending the Supreme

17

Court's decision in <u>Campbell-Ewald</u>. Accordingly, the Court cannot conclude that Plaintiff unduly delayed presenting the issue of class certification to the Court.

In sum, FCO proposes an improper use of Rule 67; Plaintiff has a personal stake in the class claims pled in the Third Amended Complaint; and even if Plaintiff's claims were moot, he would be permitted to proceed to class certification under the relation back doctrine and picking off exception. Any one of these three reasons, standing alone, is a sufficient basis for denying FCO's motion to deposit funds and to enter judgment in favor of Plaintiff. Accordingly, the Court will deny the motion.

## III. DEFENDANT FCO'S MOTION TO STRIKE DECLARATION OF FRANK FARINA, ESQUIRE

Next, Defendant FCO moves to strike the declaration of Frank Farina, Esquire, ECF No. 287-16, which Mr. Farina offered in support of Plaintiff's motion for class certification. ECF No. 293. Mr. Farina is co-counsel for Plaintiff and the proposed class in this matter, having entered his appearance on August 5, 2015.[2] ECF No. 259. According to FCO, Mr. Farina's declaration purports to support Plaintiff's contention that Home "charged 3,274 tenants $6,203,437.56 in 'Notice Fees' with $4,141,717.07

---

[2]     Plaintiff and the proposed class are also represented by two other attorneys. Joseph A. O'Keefe, Esquire, is lead counsel for Plaintiff and the proposed class.

taken by Home directly from tenant security deposits and another $2,061,720.49 tasked to FCO for collection." FCO's Mem. Law. at 1, ECF No. 293-1 (quoting Pl.'s Mot. Class Cert. at 1, ECF No. 287).

FCO says that Mr. Farina's declaration contains two faults. First, the evidence that Mr. Farina supposedly reviewed does not support his representations in the declaration. Id. at 2. Second, and more importantly, because Mr. Farina's sworn statement is proffered to show facts needed to support class certification, Mr. Farina has injected himself as a fact witness in this case. Id. at 2. According to FCO, Mr. Farina "not only comments on discovery, but extrapolates from the discovery to reach conclusions (albeit erroneous ones) that form the foundation of Plaintiff's motion for class certification." Id. at 7. FCO says that Rule 3.7 of the Pennsylvania Rules of Professional Conduct prohibits an attorney from acting as a witness in a proceeding in which the attorney is acting as an advocate. Id. at 3. Accordingly, FCO asks the Court to strike Mr. Farina's declaration under its inherent authority "to enter orders protecting the integrity of its proceedings." Id. at 2 (quoting Republic of Philippines v. Westinghouse Elec. Corp., 43 F.3d 65, 73 n.9 (3d Cir. 1994)).

Rule 3.7 of the Pennsylvania Rules of Professional Conduct, which was adopted by the United States District Court

of the Eastern District of Pennsylvania pursuant to Local Rule

83.6 and is commonly known as the witness-advocate rule,

provides as follows:

> (a)   A lawyer shall not act as advocate at a trial in
> which the lawyer is likely to be a necessary
> witness unless:
>
>> (1)   the testimony relates to an uncontested
>> issue;
>>
>> (2)   the testimony relates to the nature and
>> value of legal services rendered in the
>> case; or
>>
>> (3)   disqualification of the lawyer would work
>> substantial hardship on the client.

Pa. R. Prof'l Conduct 3.7(a). Commentary to Rule 3.7 states that

"[t]he tribunal has proper objection when the trier of fact may

be confused or misled by a lawyer serving as both advocate and

witness." Id. cmt. 2.

The Third Circuit has criticized "the practice of an

attorney testifying as an expert witness for a client of his law

firm." Universal Athletic Sales Co. v. Am. Gym, Recreational &

Athletic Equip. Corp., 546 F.2d 530, 539 (3d Cir. 1976). In

Universal Athletic Sales, a case concerning the validity of a

United States patent, the district court judge accepted, and

gave controlling weight to, the testimony of the defendants'

principal expert witness, an associate in the law firm

representing two of the defendants, despite the plaintiff's

objection to such testimony based on "the conflict between [the

20

expert's] association with defense counsel and his role as an expert witness." <u>Id.</u> at 538. In reviewing the weight that the district court gave to the expert's testimony in ruling that the patent claims were invalid, the Third Circuit found that "the district court committed error in failing to discount the value of the testimony, given the interest in the litigation of the law firm with which [the expert witness] was associated." <u>Id.</u> at 537. Because there was little evidence that "the district judge, as the sole trier of fact, scrutinized the expert testimony of [the associate attorney] with the proper circumspection," the Third Circuit held that the district court should not have given the testimony controlling weight as to patent validity. <u>Id.</u> at 540.

In reaching this result, the Third Circuit considered, but did not find dispositive, an earlier version of Rule 3.7 of the Professional Rules of Professional Conduct.[3] Based on the ethical rules, the Third Circuit advised that "[an] attorney, or his firm, must decide whether to serve either as advocate or as witness in a particular case," because "the role of an advocate

---

[3]     The <u>Universal Athletic Sales</u> court relied on Rules DR 5-101 and 102 of Pennsylvania's then-current Code of Professional Responsibility, which provided that a lawyer should refuse employment or withdraw as counsel if the "lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client." 546 F.2d at 538.

and of a witness are inconsistent."[4] Id. at 538. Accordingly, because "the disciplinary rules logically apply to expert as well as lay witnesses, the law firm should have withdrawn once it decided that its associate would testify, or else the firm should have found another expert." Id.

Although the Third Circuit noted that it did "not approve of the practice of an attorney testifying as an expert witness for a client of his law firm," it did not require that the expert's testimony be stricken altogether. Id. at 539. This is because the Code of Professional Responsibility "does not delineate rules of evidence but only sets forth strictures on attorney conduct." Id. at 539; see also id. at 539 n.23 (noting that "[i]t would be appropriate to consider incorporating within the body of evidentiary rules the current disciplinary norm proscribing the testimony of a lawyer for his client").

Ultimately, the two questions before the Court are as follows: (1) is Mr. Farina seeking to testify as an expert witness, and if so, (2) what is the appropriate remedy for his conduct?

---

[4]     Under certain, limited circumstances, an attorney may submit a declaration concerning non-adjudicative facts in a case in which he is acting as an advocate. See, e.g., Pa. R. Prof'l Conduct 3.7 (suggesting that a lawyer may act as an advocate at a trial in which he is likely to be a necessary witness in limited circumstances, including when "the testimony relates to an uncontested issue").

Plaintiff claims that "Mr. Farina is not testifying to anything," but rather "is merely presenting FCO's discovery responses to the Court and then doing simple math," which he claims is permitted at this stage of class certification. Pl.'s Opp'n at 6, ECF No. 295. The Court disagrees.

First, Mr. Farina begins his declaration by pointing to other documents containing his "background, credentials, and qualifications" and incorporates that material into the declaration. Farina Decl. at ¶ 1, ECF No. 287-16.

Second, he states that he was given a specified task by Plaintiff's counsel: "I was asked by Plaintiff's counsel . . . to review and compare [certain documents] to quantify the percentage of Tenant Escrow Monies against which Home applied its self-styled 'Notice' fee(s)." Id. at ¶ 2.

Third, he states that he makes his declaration "with a reasonable degree of professional certainty." Id. at ¶ 3.

Fourth, he offers an opinion in the form of an "estimate." Id. at ¶¶ 9-11. Mr. Farina declares that "Home admits that, over 47.5 months beginning January 1, 2008 and through December 15, 2011, $6,203,037.65 in 'Notice' fees were assessed against its Pennsylvania tenants--with $4,141,717.07 of that amount admittedly having been taken from Pennsylvania tenants' escrow accounts and the remaining $2,061,720.49 'potentially' sent to FCO for collection. This translates to

23

approximately $4,200,000 when the remaining two weeks of 2011 are factored in." Id. at ¶ 11. He goes on to compare the percentage and amount of security deposits held by Home nationwide with the amount allegedly charged in notice fees, suggesting that the average notice fees were almost identical to the amount that Defendant Home claimed Plaintiff owed. Id. ¶¶ 13-17. This opinion appears to be offered in support of Plaintiff's contention that "Home's automated systems regularly and routinely charged Home's tenants a '30 day notice fee.'" Pl.'s Mot. Class Certification 5, ECF No. 287-1. Mr. Farina also opines as to Home's obligations "to account for, and return, the tenants' escrow under the uniform statutory law." Farina Decl. at ¶ 16. Accordingly, Mr. Farina's declaration comments on discovery and then goes even further to reach conclusions that provide critical support to certain Rule 23(a) and (b)(3) requirements that Plaintiff must meet in order for the court to certify the class, including the numerosity and commonality requirements.

And fifth, Mr. Farina signs his report as both an attorney ("Esq.") and a certified professional accountant ("C.P.A."), although it is unclear in which professional capacity he makes the declaration. Id. at 6.

Mr. Farina's own language in his declaration, especially when considered in toto, invokes the requirements for

24

testimony of an expert witness under Federal Rule of Evidence 702, which requires the expert to have scientific, technical, or other specialized knowledge that will serve helpful to the trier of fact; base his testimony on sufficient facts or data; develop his testimony using reliable principles and methods; and reliably apply those principles and methods to the facts of the case.[5] Fed. R. Evid. 702.

Having determined that Mr. Farina is attempting to take on the dual roles of expert witness and advocate, the Court must now determine the appropriate remedy.

The Court begins with the recognition of the "deep-seated belief that a district court must be permitted to protect the integrity of its fact-finding process." Republic of the Philippines, 43 F.3d at 67. This is because "[o]ur legal system will endure only so long as members of society continue to believe that our courts endeavor to provide untainted, unbiased forums in which justice may be found and done." Id. at 73. Accordingly, "district courts have broad authority to preserve and protect their essential functions." Id.

The presence of a lawyer for a party acting as an expert witness in a case would surely undermine the public's confidence in our legal system. While the Pennsylvania Rules of

---

[5]     Mr. Farina, however, has not been identified by Plaintiff as an expert witness in this case, as required by Federal Rule of Civil Procedure 26(b)(4).

Professional Conduct are not binding authority when it comes to federal evidence law, they inform the judgment of the Court as to the proper conduct of the lawyers that appear before it. At least one federal appellate court has found that a district court does not abuse its discretion by striking an affidavit based on the ethical rules' policy disfavoring attorney testimony. <u>Whitted v. Gen. Motors Corp.</u>, 58 F.3d 1200, 1204 (7th Cir. 1995) (affirming the district court's striking of counsel's pre-trial affidavit that commented on discovery and declared that the seat belt and owner's manual at issue in that products liability action lacked the appropriate warnings based on Rule 3.7 of Indiana's rules of Professional Conduct, which is identical to Pennsylvania's Rule 3.7). Because the Court must protect the integrity of the proceedings before it, <u>Republic of Philippines</u>, 43 F.3d 65 at 73 & n.9, Mr. Farina's declaration cannot stand. Accordingly, the Court will strike Mr. Farina's affidavit in this case.

## IV.  PLAINTIFF'S CROSS-MOTION TO SUBSTITUTE THE SPECIAL MASTER'S FINAL REPORT AND RECOMMENDATION

Together with his opposition to FCO's motion to strike, Plaintiff filed a cross-motion asking the Court to substitute the Special Master's Final Report and Recommendation "should the Court find Mr. Farina's Declaration 'out of bounds'

or somehow otherwise improper for certification purposes." ECF No. 295 at 8. Plaintiff's request will be denied.

Although styled as a "cross-motion," a reponsive brief is not the appropriate vehicle to submit additional evidence in support of a motion for class certification. In addition, it is unclear how the Special Master's Final Report and Recommendation, which addresses various discovery disputes, including Plaintiff's allegations of spoliation by Defendant Home and the parties' motions for sanctions--not the substance of the case--could provide factual support for certifying the proposed class. Accordingly, the Court will deny Plaintiff's cross-motion.

## V.   CONCLUSION

For the reasons discussed above, the Court will deny FCO's Motion to Deposit Funds into Court and Enter Judgment in Favor of Plaintiff, grant FCO's Motion to Strike the Declaration of Francis J. Farina, and deny Plaintiff's Cross-Motion to Substitute the Special Master's Final Report and Recommendation.

An appropriate order follows.

27