IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARIUSZ G. JARZYNA, | : | CIVIL ACTION |
| | : | NO. 10-4191 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| HOME PROPERTIES, L.P. et al., | : | |
| | : | |
| Defendants. | : | |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                              May 15, 2017


        This case arises out of a landlord-tenant relationship
that deteriorated more than seven years ago. The former tenant,
Plaintiff Mariusz Jarzyna ("Plaintiff"), brought this action on
behalf of himself and other similarly situated former tenants
against a residential management company, Defendant Home
Properties L.P. ("Home"), and a debt collection agency,
Defendant Fair Collections and Outsourcing, Inc. ("FCO"),
alleging violations of the Fair Debt Collection Practices Act
("FDCPA"), 15 U.S.C. § 1692, as well as certain other state
consumer protection laws. Before the Court now is Plaintiff's
motion to certify the class. For the reasons that follow, the
Court will deny this motion.

## I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

As the Court has stated in the past, "[t]his case, despite the relative simplicity of its claims, has proceeded along an unusually circuitous and contentious path." Jarzyna v. Home Props., L.P., 114 F. Supp. 3d 243, 248 (E.D. Pa. 2015). The factual and procedural history has been set forth at length in other decisions issued in this case and need not be repeated here. See Jarzyna v. Home Props., L.P., No. 10-4191, 2016 WL 2623688, at *1-7 (E.D. Pa. May 6, 2016) (describing recent procedural history); Jarzyna, 114 F. Supp. 3d at 248-52 (setting forth the factual background and earlier procedural history). The Court therefore describes only the most recent procedural history below.

In July 2015, the Court ruled on the parties' motions for summary judgment and subsequent motions for reconsideration. Accordingly, the only liability issues that now remain for trial are (1) Plaintiff's claim, under the FDCPA, that certain of FCO's standard dunning letters lacked the requisite disclosures, in violation of 15 U.S.C. § 1692g(a), and (2) a counterclaim for breach of the lease agreement brought by Home against Plaintiff.[1]

---

[1]     For purposes of assessing damages, the only claims that have been decided in Plaintiff's favor are Plaintiff's FDCPA claims against FCO with respect to FCO's failure to identify as a debt collector when leaving voice messages on

Now, nearly seven full years after Plaintiff filed his initial complaint, this case has reached the class certification stage. Plaintiff filed a supplemental motion for class certification on April 22, 2016, ECF No. 287, which FCO opposed on May 31, 2016, ECF No. 292. Plaintiff moves to certify the following class:

> All persons residing in Pennsylvania, New York, New Jersey, Massachusetts, Maryland, Maine, Florida, Illinois and Washington, D.C.[,] who, during the period January 1, 2008 through the date of the filing of Plaintiff's Third Amended Class Action Complaint on April 8, 2013 (Doc. No. 205) (the "Class Period"):
>
> a) have been identified and/or readily identifiable by Home Properties, L.P. ("Home") to have been assessed Thirty Day Notice Fees by Home – and with the balance placed with FCO for collection, in violation of 15 U.S.C. §§ 1692f(1), 1692e(2), and 1692e(10); and
>
> b) who have been subject of FCO's standard, common, and uniform policy not to identify themselves as a debt collector when leaving messages on cellular/personal phones in violation of 15 U.S.C. §§ 1692e(11) and 1692d(6).

Pl.'s Mot. Class Cert. at 1-2, ECF No. 287. Plaintiff explains that this class definition was shaped upon the Court's grant of partial summary judgment in favor of Plaintiff and against Defendant FCO for violations of the FDCPA on two claims: First,

---

Plaintiff's cell phone, in violation of §§ 1692e(11) and 1692d(6), and FCO's attempts to collect a debt that Plaintiff did not owe, in violation of §§ 1692f(1), 1692e(2), and 1692e(10).

Defendant FCO failed to disclose that its calls were from a debt collector, and its collectors failed to identify the name of the caller when he or she left voicemail messages for Plaintiff in violation of 15 U.S.C. §§ 1692e(11) and 1692d(6). See Pl.'s Mem. Law at 8, ECF No. 287-1. And, second, Defendant Home improperly charged Plaintiff an additional thirty days' rent despite the fact that he failed to give timely notice of his intent to vacate his rental apartment, for which this Court held Defendant FCO liable under 15 U.S.C. §§ 1692e(2) and (10) and 1692f(1) for attempting to collect an amount not authorized by the agreement creating the debt. See id. at 7.

The Court held a hearing on Plaintiff's class certification motion on October 17, 2016. ECF No. 395. Subsequently, the Court granted Plaintiff leave to take limited discovery by way of deposing four specific individuals. See ECF No. 335. The Court further ordered the parties to submit supplemental briefing regarding Plaintiff's motion for class certification. See id. The parties subsequently submitted this briefing, ECF Nos. 355, 364, and the motion for class certification is now ripe for disposition.

## II.  MOTION FOR CLASS CERTIFICATION

### A.  Legal Standard

A party seeking class certification must satisfy Rule 23(a) of the Federal Rules of Civil Procedure and the requirements of one of the subsections of Rule 23(b).  See Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 345-46 (2011); In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions, 148 F.3d 283, 309 (3d Cir. 1998).  Under Rule 23(a), Plaintiffs must demonstrate that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).

"Rule 23 does not set forth a mere pleading standard," but instead, "[a] party seeking class certification must affirmatively demonstrate [her] compliance with the Rule--that is, [she] must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc."  Dukes, 564 U.S. at 350.  The Supreme Court has repeatedly "recognized . . . that 'sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question,' and that certification is proper only

if 'the trial court is satisfied, after a rigorous analysis,

that the prerequisites of Rule 23(a) have been satisfied.'"[2]

Id. at 350-51 (quoting Gen. Tel. Co. of Sw. v. Falcon, 457 U.S.

147, 160-61 (1982)). Accordingly, "[f]actual determinations

necessary to make Rule 23 findings must be made by a

preponderance of the evidence." In re Hydrogen Peroxide

Antitrust Litig., 552 F.3d 305, 318 (3d Cir. 2008).

"[A]n essential prerequisite of a class action, at

least with respect to actions under Rule 23(b)(3), is that the

class must be currently and readily ascertainable based on

objective criteria." Marcus v. BMW of N. Am., LLC, 687 F.3d 583,

592-93 (3d Cir. 2012). The Third Circuit has explained that

"[t]he ascertainability requirement serves several important

objectives":

> First, it eliminates 'serious administrative
> burdens that are incongruous with the
> efficiencies expected in a class action' by
> insisting on the easy identification of
> class members. Second, it protects absent
> class members by facilitating the 'best
> notice practicable' under Rule 23(c)(2) in a
> Rule 23(b)(3) action.

---

[2]      The Supreme Court has also recognized that
"[f]requently[,] th[is] 'rigorous analysis' will entail some
overlap with the merits of the plaintiff's underlying claim.
That cannot be helped.'"  Dukes, 564 U.S. at 351 (quoting
Falcon, 457 U.S. at 160); see also id. ("[C]lass determination
generally involves considerations that are enmeshed in the
factual and legal issues comprising the plaintiff's cause of
action." (quoting Falcon, 457 U.S. at 160)).

Id. at 593 (citations omitted) (quoting Sanneman v. Chrysler Corp., 191 F.R.D. 441, 446 (E.D. Pa. Mar. 2, 2000); Fed. Judicial Ctr., Manual for Complex Litigation § 21.222 (4th ed. 2004)).

"The ascertainability inquiry is two-fold, requiring a plaintiff to show that: (1) the class is 'defined with reference to objective criteria'; and (2) there is 'a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition.'" Byrd v. Aaron's Inc., 784 F.3d 154, 163 (3d Cir. 2015) (quoting Carrera v. Bayer Corp., 727 F.3d 300, 355 (3d Cir. 2013)). "The ascertainability requirement consists of nothing more than these two inquiries. And it does not mean that a plaintiff must be able to identify all class members at class certification-- instead, a plaintiff need only show that 'class members can be identified.'" Id. (quoting Carrera, 727 F.3d at 308 n.2).

"If class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials,' then a class action is inappropriate." Marcus, 687 F.3d at 593. "This is distinct from the separate requirement under Rule 23(b)(3), that 'questions of law or fact common to class members [must] predominate over any questions affecting only individual members . . . ." Grandalski v. Quest Diagnostics Inc., 767 F.3d 175, 184 (3d Cir. 2014) (alterations in original); see also Hayes v. Wal-

Mart Stores, Inc., 725 F.3d 349, 359 (3d Cir. 2013) ("[T]he ascertainability requirement focuses on whether individuals fitting the class definition may be identified without resort to mini-trials, whereas the predominance requirement focuses on whether essential elements of the class's claims can be proven at trial with common, as opposed to individualized, evidence." (citations omitted)).

In Carrera, the Third Circuit rejected using either retailer records or class member affidavits to ascertain a class of consumers who had purchased a certain dietary supplement in Florida. See 727 F.3d at 308-09. Though the Third Circuit acknowledged that, "[d]epending on the facts of a case, retailer records may be a perfectly acceptable method of proving class membership," id. at 308, it rejected use of that method on the facts of that case because "there [wa]s no evidence that a single purchaser of [the dietary supplement] could be identified using records of customer membership cards or records of online sales," id. at 309.

By contrast, in Byrd, the Third Circuit reversed and remanded a district court's denial of a motion for class certification on the basis that the class was not ascertainable. 784 F.3d at 154. In that case, the plaintiffs proposed ascertaining the class by using retailer records that "reveal the computers [at issue], as well as the full identity of the

customer who leased or purchased each of those computers." Id.
at 169 (quoting Byrd v. Aaron's, Inc., No. 11-101E, 2014 WL
1316055, at *5 (W.D. Pa. Mar. 31, 2014)). The plaintiffs had
already identified 895 owners and lessees of the computers at
issue, and the Third Circuit reasoned that "ensur[ing] that
[each member of the class] is actually among the 895 customers
identified by the [plaintiffs] . . . does not require a 'mini-
trial,' nor does it amount to 'individualized fact-finding.'"
Id. at 170 (quoting Carrera, 727 F.3d at 307).

   B.   Analysis

      In his motion, Plaintiff relies heavily on the
assertion that Home "identified 3,274 tenants in Pennsylvania
alone who were charged the subject notice fees with a balance
tasked to FCO for collection." Pl.'s Mem. Law at 10.
Additionally, Plaintiff argues that "there are thousands more
located in New York, New Jersey, Massachusetts, Maryland, Maine,
Florida, Illinois or Washington, D.C." Id. at 11. According to
Plaintiff, the 3,274 tenants identified by Home during discovery
"were charged the same illegal fees as Plaintiff, with a near
identical balance (within dollars) being tasked to FCO who then
subjected each of them to the same uniform collection policies
applied as against Plaintiff," id. at 12, and "Defendants'
sophisticated systems can easily do the same identification and

quantification with mere keystrokes for New York, New Jersey, Massachusetts, Maryland, Maine, Florida, Illinois and Washington, D.C.," id.

FCO responds that Plaintiff's assertions are refuted by evidence that "[t]he MRI of Home Properties, L.P. or other property software systems do not readily enable them to determine the amount or number of tenants, as individual tenant accounts, that are exclusive 30 day lease breakage fee accounts," and that "although Plaintiff claims that FCO can determine what amount of fees it collected on behalf of Home, it does not follow that FCO would be able to determine what amounts were related to Home's charging of 30 day notice fees, where Home itself, in verified responses, explains that it cannot separate out 30 day fees from other lease breakage fees." Def.'s Resp. at 13-14, ECF No. 292 (citation omitted). FCO also points out that Plaintiff "does not address how he proposes to identify those persons who not only were charged a 30 day notice that was sent to FCO for collection, but also received telephone messages that violated the FDCPA, an additional requirement to be a member of the proposed class." Id. at 14.

FCO argues specifically that the 3,274 Pennsylvania tenants identified by Home during discovery do not necessarily fit Plaintiff's proposed class definition because the class

cannot be categorized by software in the way that Plaintiff

claims:

> Home's response to the Special Master makes clear that
> the 3,274 tenants included those charged <u>any</u> amount
> that was posted as an LBF (lease breakage fee) and
> that those fees include charges for "improper notice,
> early termination, and tenant least [sic] break non-
> payments." The response further explained that Home's
> software did "not readily enable them to determine the
> amount or number of tenants, as individual tenant
> accounts, that are exclusively a 30 day lease breakage
> fee accounts. [sic] Moreover, as to FCO, the response
> indicates that accounts "with LBF charges remaining
> are <u>potentially sent</u> to FCO for collection." This
> qualification defeats any plausible showing of
> numerosity since the fact that accounts may have been
> sent to FCO does not provide probative evidence of the
> number, is [sic] any, of accounts with 30 day notice
> fees were actually sent to FCO for collection.

<u>Id.</u> at 17 (second alteration in original) (citations omitted).

Plaintiff's and FCO's respective positions on each of

the Rule 23(a) factors are largely guided by this threshold

ascertainability question.[3] Plaintiff argues that (1) the

---

[3]     Before even reaching the ascertainability issue, FCO
argues that Plaintiff's motion should not be granted "because he
did not include the class definition set out in his motion for
certification in his Third Amended Complaint." Def.'s Resp. at
5. FCO quotes extensively from this complaint (the "TAC") to
support its argument that "the class claims relating to the '30
day notice fee' are made against Co-Defendant Home Properties,
Inc. <u>only</u> and not FCO." <u>Id.</u> at 7. FCO thus characterizes the
proposed class as an "impermissible expansion of the class
identified in the TAC" because it "includes, for the first time,
a putative class as to FCO regarding claims heretofore made only
on a[n] individual basis under 15 U.S.C. § 1692f(1), § 1692e(2)
and § 1692e(10)." <u>Id.</u> at 8. FCO does not, however, provide any
legal authority for the proposition that this purported
"expansion" is "impermissible"--and it is not clear that any
such authority exists. <u>Cf.</u> <u>In re Prudential Ins. Co. Am. Sales</u>

numerosity requirement is easily satisfied by the 3,274

Pennsylvania tenants identified by Home, Pl.'s Mem. Law at 10;

(2) commonality exists because each of these 3,274 tenants was

charged "the same illegal fees as Plaintiff, with a near

identical balance (within dollars) being tasked to FCO who then

subjected each of them to the same uniform collection policies

applied as against Plaintiff," id. at 12; (3) Plaintiff's claims

are typical of the class because each of the 3,274 identified

tenants "were charged the exact same subject notice fees with a

nearly dollar for dollar identical balance tasked to FCO for

collection," id. at 13; and (4) Plaintiff will fairly and

adequately represent the class because his interests "are

entirely consistent with and not antagonistic to those of the

Class, since he seeks to recover damages based upon the same

pattern of conduct--interests which all Class members share,"

id. at 15. FCO, for its part, argues "it is evident that the

3,274 tenants were (1) not all charged a 30 day notice fee; (2)

that Home has not (and cannot) readily identify who was charged

a 30 day[] notice fee; and (3) that there is no information at

all as to how many of these tenants' accounts were referred to

FCO for collection of a 30 day[] notice fee," Def.'s Resp. at

---

Practice Litig. Agent Actions, 148 F.3d 283, 325-26 (3d Cir.
1998) (directly addressing and rejecting, on factual grounds
only, argument that proposed class was improperly expanded to
"exceed[] the scope of the class complaint").

17, and thus Plaintiff's reliance on this assertion regarding

3,274 identified tenants does not satisfy the numerosity,

commonality, or typicality requirements of Rule 23(a).[4]

Accordingly, whether the Court should certify the

class hinges almost entirely on whether Home did, in fact,

identify 3,274 tenants in Pennsylvania who were charged a 30-day

notice fee that was sent to FCO for collection.[5] As evidence of

this critical fact, Plaintiff relies on Exhibits 31, 32, and 34

attached to his motion (ECF Nos. 287-14, 15, 16). None of these

documents, however, appears to identify the 3,274 tenants in the

manner Plaintiff suggests. Instead, the reference to 3,274

tenants appears in a document identified by FCO, which is Home's

---

[4]      FCO has also challenged the fairness and adequacy of
Plaintiff's counsel's representation of the class (i.e., the
fourth factor for consideration under Rule 23(a)) on the basis
that "Frank Farina, Esquire, Plaintiff's counsel, has . . .
acted as a critical witness to the class certification motion by
providing an affidavit that is principally relied upon by the
Plaintiff to support his claims of [numerosity], commonality,
and typicality." Def.'s Resp. at 21. Because this argument and
accompanying motion to strike have been handled separately, see
ECF Nos. 293, 295, 296, 297, and 300, the Court need not wade
back into these deep waters again now.

[5]      Defendant FCO additionally argues, as apparently
almost an afterthought, that Plaintiff's class definition is
overbroad as to the claims brought under the FDCPA because the
FDCPA's one-year statute of limitations should limit those
claims to the period beginning August 19, 2009, i.e., one year
prior to the date on which Plaintiff brought this lawsuit.
Def.'s Resp. at 11. Given the Court's "broad discretion to
control proceedings and frame issues for consideration under
Rule 23," Hydrogen Peroxide, 552 F.3d at 310, the Court need not
concern itself with this minor issue at this juncture.

verified response dated December 29, 2011, to the Special

Master's directive dated December 8, 2011:

> NUMBER OF TENANTS IN COMMONWEALTH OF PENNSYLVANIA
> CHARGED "30-DAY NOTICE" OR SIMILAR FEE
>
> 3,274 individual tenant accounts in the Commonwealth
> of Pennsylvania were charged a lease breakage fee from
> 1/1/08 through mid-December, 2011. The MRI of Home
> Properties, L.P. or other property software systems do
> not readily enable them to determine the amount or
> number of tenants, as individual tenant accounts, that
> are exclusively 30 day lease breakage fee accounts.
> This fee is not a systematic fee, neither automated
> [n]or automatically charged but a fee charge subject
> to the individual tenant lease breaking conduct and is
> charged within the discretion of the Property Manager
> in response to the tenant lease breakage conduct and
> circumstance.
>
> Total charges for improper notice, early termination,
> and tenant lease break non-payments, charges for 30
> day or 60 day late notice or non-payment of rent
> obligation identified as LBF (triggered by improper
> termination notice) for the aforesaid 3,274 individual
> accounts (5,360 discrete charges) is $6,203, 037.65 in
> the Commonwealth of Pennsylvania from 1/1/08 through
> mid-December, 2011. Adjustments, payments and other
> non-collection FCO credits to the said tenant accounts
> are applied first to the earliest charges of the
> account and for that period are in the total amount of
> $4,141,717.07, with an amount of $2,061,720.49
> remaining as outstanding, which account balance with
> LBF charges remaining are potentially sent to FCO for
> collection. Once sent to FCO, Home Properties, L.P. is
> unable to determine what money recovered, if any, when
> less than 100%, can be related to any of the aforesaid
> lease break charges/fees, which are charges for the
> tenants lease breaking conduct (30 day, in case of
> holder tenant, or 60 day, per lease).

Def.'s Resp. Ex. A, Def. Home's Verified Resp. to Discovery

Directives Set Forth in December 8, 2011 Interim Status Report

of Special Discovery Master Stephanie A. Blair at 4-5, ECF No.
292-1 (emphasis added).

As FCO points out, the above-quoted language
undermines the factual premise of Plaintiff's motion for class
certification, i.e., that "Home has identified 3,274 tenants in
Pennsylvania alone who were charged the subject notice fees with
a balance tasked to FCO for collection." Pl.'s Mem. Law at 10.
Instead, the document identifies 3,274 tenants who were subject
to some lease breakage fee--but not necessarily the 30-day
notice fee presently at issue in this litigation--and states
affirmatively that the computer system cannot distinguish
between tenants subject to various lease breakage fees.
Additionally, the qualifier "potentially" undermines Plaintiff's
reliance on the 3,274 tenants for numerosity purposes because
the fact that some of those 3,274 tenants' accounts may have
been sent to FCO for collection does not mean that they in fact
were sent to FCO for collection.

Even now, following the class certification hearing
held on October 17, 2016, and the submission of supplemental
papers from both parties attaching new depositions of four
individuals, Plaintiff has failed to identify any methodology
for ascertaining the proposed class. As in Carrera, "there is no
evidence that a single [member of the proposed class] could be
identified using records" of individual tenant accounts. See 727

15

F.3d at 309. In his papers, Plaintiff points only to Home's verified response identifying 3,274 tenants in Pennsylvania who paid lease breakage fees--but FCO denies that it is possible to determine exactly who or how many of these total 3,274 were charged the particular 30 day notice fee that is at issue in this litigation, let alone how many of those charged were sent to FCO for collection.

Furthermore, Plaintiff has failed entirely to propose a methodology for identifying those tenants "who have been subject of [sic] FCO's standard, common, and uniform policy not to identify themselves as a debt collector when leaving messages on cellular/personal phones in violation of 15 U.S.C. §§ 1692e(11) and 1692d(6)." Pl.'s Mot. Class Cert. at 1. Even assuming that there does exist some method by which Plaintiff could utilize computer software to identify which former tenants were charged the 30-day notice fee at issue in this litigation, Plaintiff still has not shown that he could ascertain which of those had their fees sent to FCO for collection, nor which received non-identifying messages from FCO regarding the collection of those fees. At no point has Plaintiff offered any evidence or testimony indicating that FCO maintained any records showing which fees it was calling any particular debtor to collect. To the contrary, Mr. Farnan testified as follows:

16

> Once Home Properties would have turned over any
> account to FCO for whatever reason, that balance was
> written off at Home Properties, and essentially the
> fee structure or payment sequence didn't matter at
> that point.
>
> We sent them, for example, $5,000 and said can you
> collect on this on our behalf, on Home Properties'
> behalf. They may be able to get 4,000 they may be able
> to get 1,000. It didn't matter to Home Properties the
> types of fees they went after. It would just matter
> what the collection was in total.

Robert Farnan Dep., Dec. 7, 2016, at 63:5-9. This limited

testimony seems to suggest, if anything, that ascertaining the

class of tenants who were contacted by FCO with non-identifying

messages would be difficult or impossible, given that FCO and

Home were both concerned only with the total bottom line.

FCO argues persuasively that determining whether any

particular tenant would fall within the class--even assuming

that tenant was charged with the 30-day notice fee--would

require "individual inquiry . . . as to whether the account was

referred to FCO and whether FCO's files show that messages were

left on the debtor's telephone." Def.'s Suppl. Mem. at 6, ECF

No. 364. Additionally, "further review would also have to be

made of any recordings of messages left in order to determine if

any consumer is a member of this class." Id. This type of

inquiry would be akin to the sort of "mini-trial" or

"individualized fact-finding" that the Third Circuit has

expressly prohibited in determining class ascertainability. <u>See</u>
<u>Marcus</u>, 687 F.3d at 593.

Given that Plaintiff cannot meet the threshold
requirement for class certification by showing that his proposed
class is ascertainable, <u>i.e.</u>, that "(1) the class is defined
with reference to objective criteria; and (2) there is a
reliable and administratively feasible mechanism for determining
whether putative class members fall within the class
definition," <u>Byrd</u>, 784 F.3d at 163, the Court need not proceed
to analyze other class certification requirements under Rule 23,
including numerosity, commonality, and typicality. <u>See</u> <u>Byrd</u>, 784
F.3d at 165 ("The ascertainability inquiry is narrow . . . and
is independent from the other requirements of Rule 23.").

**IV.  CONCLUSION**

For the foregoing reasons, the Court will deny
Plaintiff's motion to certify the class. An appropriate order
follows.