IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARIUSZ G. JARZYNA, | : | CIVIL ACTION |
| | : | NO. 10-4191 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| HOME PROPERTIES, L.P., et al., | : | |
| | : | |
| Defendants. | : | |

M E M O R A N D U M

EDUARDO C. ROBRENO, J. August 27, 2018

This case arises out of a landlord-tenant relationship. Plaintiff Mariusz Jarzyna ("Jarzyna") initially bought this case in 2010 as a putative class action against his former landlord, Defendant and Counterclaimant Home Properties L.P. ("Home"), and a debt collection agency, Defendant Fair Collections and Outsourcing, Inc. ("FCO"), alleging violations of debt collection and consumer protection laws. After years of contentious litigation, the only claim that remains in the case is a breach of contract counterclaim brought by Home against Jarzyna.

The essence of Home's counterclaim is that Jarzyna breached his residential lease agreement by failing to pay rent

and other charges to Home. Following a bench trial, and pursuant to Federal Rule of Civil Procedure 52(a), this memorandum constitutes the Court's findings of fact and conclusions of law. Ultimately, for the following reasons, the Court will enter judgment for Home.

## I. PROCEDURAL BACKGROUND

As the Court has stated in the past, "[t]his case, despite the relative simplicity of its claims, has proceeded along an unusually circuitous and contentious path." Jarzyna v. Home Props., L.P., 321 F.R.D. 237, 238 (E.D. Pa. 2017) (quoting Jarzyna v. Home Props., L.P., 114 F. Supp. 3d 243, 248 (E.D. Pa. 2015)). The factual and procedural history has been set forth at length in other decisions issued in this case. See Jarzyna v. Home Props., L.P., 185 F. Supp. 3d 612, 614–22 (E.D. Pa. May 6, 2016) (describing procedural history); Jarzyna, 114 F. Supp. 3d at 248–52 (setting forth the factual background and procedural history). Accordingly, the Court describes below only the procedural history that is relevant to the matters currently before the Court.

After the Court ruled on the parties' motions for summary judgment and subsequent motions for reconsideration, the only liability issues that remained for trial were a fair debt collection claim by Jarzyna against FCO, and a counterclaim for

breach of the lease agreement brought by Home against Jarzyna. Eventually, the parties stipulated to a bench trial on these claims, which the Court approved. ECF No. 399. Subsequently, but prior to trial, Jarzyna settled his claim against FCO, and thus the Court dismissed that claim. ECF No. 417. Accordingly, the only claim that remains in the case is Home's counterclaim against Jarzyna.

The Court held a one-day bench trial on August 3, 2018 on the counterclaim. At trial, Home elected to prove its case by introducing various statements from Jarzyna's deposition and prior filings in this litigation which, in Home's view, qualify as either judicial admissions or admissions by a party opponent. Trial Transcript 8/3/2018 (hereinafter, "Tr. Transcript") 4:6-25 to 5:1-4, 21:9-10. After counsel had concluded reading these statements into the record, including lengthy portions of Jarzyna's deposition transcript, the Court denied Home's request to call Jarzyna as a witness in its case-in-chief.[1] Id. at 54:1-12. However, the Court noted that it would later permit Home to cross-examine Jarzyna after his direct testimony, and, if

[1] Under Federal Rule of Evidence 611, the Court is directed to "exercise reasonable control over the mode and order of examining witnesses and presenting evidence." Fed. R. Evid. 611(a). The Court found that calling Jarzyna as a witness after extensive reading of his deposition testimony would be duplicative and an undue waste of time. See Tr. Transcript 54:6-14.

appropriate, it could further question him at that time. Id. at 54:12-14. Home called no other witnesses.

Home then moved for the admission of five exhibits into evidence: the lease agreement; three letters; and a statement of deposit that counsel for Home characterized as "the bill that Mr. Jarzyna receive[d] and acknowledges that he received from Home Properties." Id. at 58:11-13. The statement of deposit lists the amounts Home claims Jarzyna owed, but did not pay, under the lease. Id. at 54:23-25, 55:22-25 to 56, 62:19-23.

Although Home's first four exhibits were admitted without objection, Jarzyna did object to the admission of the statement of deposit. Id. at 55:22-25 to 56:1-2. After hearing from both counsel, the Court admitted the statement of deposit only for the limited purpose of showing notice. Id. at 55:20-25 to 62:22. Specifically, the Court admitted the statement of deposit to show that Home demanded the amounts therein and that Jarzyna received the demand. Id. at 62:19-25. The Court explained that the statement of deposit was hearsay, and not admissible for the truth of the matter, i.e. that Jarzyna actually owed the specific amounts listed therein.[2] Id. at 61:2-

[2] See Fed. R. Ev. 801, 802 (setting forth the rule against hearsay).

10.[3] Yet, when prompted by the Court, counsel for Home was unable identify a basis for admitting the statement of deposit for the truth of the matter. See id. at 57:8-25 to 60:2. Instead, Home rested its case. Id. at 62:24-25.

Once Home had rested its case, counsel for Jarzyna moved for judgment under Federal Rule of Civil Procedure 52(c), which the Court denied. Id. at 74:1-3, 77:21-22. Counsel for Jarzyna then rested without presenting any witnesses or evidence. Id. at 77:24-25. Home then requested leave to call Jarzyna as a witness on rebuttal. Id. at 78:2-6. The Court denied that request, explaining that, because Jarzyna had not put on a case, Home was not entitled to rebuttal. Id. at 78:7-10. However, the Court permitted Home to make a proffer of the testimony that it had expected to elicit from Jarzyna. Id. at 63:11-18. Counsel stated that she had intended to ask Jarzyna to "match up and confirm" the charges in the statement of deposit. Id. at 63:19-25. Counsel had also intended to ask Jarzyna about various late notices prepared by Home, particularly whether he had received them. Id. at 63:25 to 64:1-66. Finally, counsel had

[3] The Court explained that, because the statement of deposit is a document that was created by Home, Jarzyna has no personal knowledge about it how it was generated or maintained. Id. Thus, agreement by Jarzyna that he received it would not render it admissible for the truth of the matter. Rather, it would only be admissible to show the truth of the matter if Home could provide a proper evidentiary basis to do so. Id.

intended to ask whether Jarzyna had paid his rent and utilities on time, and whether he understood his obligations under the lease. Id.

Upon this record, the Court makes its findings of fact and conclusions of law.

## II. FINDINGS OF FACT

On November 17, 2008, Jarzyna entered into a residential lease agreement with Home, with a term lasting from January 12, 2009, to August 11, 2009.[4] Lease, First Am. Compl. ("FAC") Ex. A, ECF No. 19. Pursuant to the terms of the lease, Home agreed to rent an apartment located at 217 S. MacDade Boulevard, Apt. M in Glenolden, Pennsylvania to Jarzyna in exchange for monthly rent in the amount of $663.00. The lease also included, in relevant part, the following provisions:

> **Rent.**
> You agree to pay us rent in the amount set forth above . . . Rent must be paid in monthly installments on the first day of each month. Rent for any partial month will be prorated. Rent must be paid in full and no amount may be subtracted from it.
>
> . . .
>
> **Late Fees.**
> If you fail to pay the rent in full before the end of the 5th day of the month, you will immediately pay us, as additional rent, a late fee of 10% of the monthly rent. If you still fail to pay the rent in full before

[4] Jarzyna also signed prior and subsequent residential leases with Home, but neither is relevant to the matters currently before the Court.

> the end of the 15th day of the month, you will pay us, as additional rent, an additional late fee of 5% of the monthly rent for a total late fee of 15% of the monthly rent.
>
> . . .
>
> **Utilities.** You are responsible for paying all utilities . . . All utility charges charged by us or our agent are considered additional rent. . .
> You will pay all utility bills incurred during the term of the Lease by the stated due date, including any deposits, fees and increases as billed by the utility provider, (or by us or our agent in the case of utilities billed to you by us or our agent).
>
> . . .
>
> **Failure to Vacate at End of Lease Term.**
> In the event that you do not vacate the Apartment at the end of the term, we may use legal process to remove you. Or, if we accept rent for the period after the end of the Lease Term, then you shall be deemed a holdover Resident and your tenancy shall be month-to-month, with monthly rent at the current market rate for a month-to-month lease. We will provide you with at least 60 days['] notice of that rate. Either you or we can terminate the month-to-month lease as of the last day of any calendar month by giving one calendar month's written notice to the other party.
>
> . . .
>
> **Legal Expenses.** If permitted by law, you will reimburse us for all of our court costs and reasonable attorneys' fees we incur as a result of any legal action we bring against you for any reason (including an action for eviction or an action for your failure to comply with any of your obligations under this Lease). Such costs and fees will be additional rent.

Lease 4-8.(emphasis and variations in formatting in original).

Jarzyna did not vacate the apartment at the end of the lease term on August 11, 2009. Pl. Dep. 23:10-12. At that time, the rate for a month-to-month lease was $888.00. Id. at 23:10-20. Jarzyna received notice that his monthly rent had increased

to that rate, and he paid that amount in rent for September 2009. Id. at 23:21-23 to 24:1-20. On September 1, 2009, Jarzyna sent a letter to Home, stating that he intended to end his tenancy on October 1, 2009. However, Jarzyna did not vacate on that date, and continued to maintain possession of his apartment. On October 28, 2009, Jarzyna, through his lawyer, sent a letter to Home stating that he intended to end his tenancy on October 31, 2009. FAC Ex. C. Four days later, on November 1, 2009, Jarzyna finally vacated the apartment. Pl. Dep. 100:13-16.

While living at the apartment he rented from Home, Jarzyna sometimes failed to timely pay rent and utilities in full. Id. at 71:2-10. In particular, despite retaining possession of the apartment throughout October 2009, Jarzyna did not pay rent for that month. Id. at 23:10-20, 82:2-3, 83:3-8.

Home created a document, captioned as a statement of deposit, with a "prepared" date of November 16, 2009 and a "printed" date of December 1, 2009. See, e.g., id. at 58:11-13; see also Statement of Deposit, ECF No. 231-2 at 30. This document includes a list of charges that Home demanded Jarzyna pay after he vacated the apartment. See Tr. Transcript 58:11-13. These charges include, as relevant here, an $888.00 charge for October 2009 rent, several charges for utilities, and various administrative and late fees. See Statement of Deposit.

## III. CONCLUSIONS OF LAW AND DISCUSSION

A. Applicable law

As the Court has previously noted, there is no dispute that Pennsylvania law governs Home's counterclaim against Jarzyna for breach of the lease. Jarzyna, 114 F. Supp. 3d at 270 n.34. "In addition, the lease agreement itself notes that it was formed under Pennsylvania law and refers to and includes several Pennsylvania state law provisions." Id.

In Pennsylvania, lease agreements are governed by contract law and general contract law principles. E.g., Amoco Oil Co. v. Snyder, 478 A.2d 795, 798 (Pa. 1984); Pugh v. Holmes, 405 A.2d 897, 903 (Pa. 1979). As such, when the language of a lease is clear and unequivocal, its meaning will be determined by its contents alone in ascertaining the intent of the parties. Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc., 247 F.3d 79, 92 (3d Cir. 2001) (quoting Krizovensky v. Krizovensky, 624 A.2d 638, 642 (Pa. 1993); Seven Springs Farm v. Croker, 801 A.2d 1212, 1215 (Pa. 2002)).

To succeed on a claim for breach of the lease, Home must prove the "three elements [that] are necessary to plead a cause of action for breach of contract: (1) the existence of a contract, including its essential terms, (2) a breach of the contract; and, (3) resultant damages." Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.,

137 A.3d 1247, 1258 (Pa. 2016) (citing J.F. Walker Co., Inc. v. Excalibur Oil Grp., Inc., 792 A.2d 1269, 1272 (Pa. Super. 2002)).

B. Breach of a valid contract

Regarding the first element, the Court finds, and the parties have never disputed, that the lease is a valid contract, and that, under its terms, Jarzyna was obligated to pay rent and utilities during his tenancy.

As to the second element, because Jarzyna remained in continuous possession of his apartment from, as relevant here, January 12, 2009 to November 1, 2009, Jarzyna was obligated to timely pay rent and utilities for that period. Because, as Jarzyna agrees, he did not always pay these amounts, Home has established breach.

C. Damages

The Court next addresses the damages element. Importantly, damages for breach of contract, to be recoverable, must be shown with "reasonable certainty." Rothrauff v. Sinking Spring Water Co., 14 A.2d 87, 91 (Pa. 1940) (quoting Restatement of Contracts § 331). This means that such damages are recoverable "only to the extent that the evidence affords a sufficient basis for estimating their amount in money with reasonable certainty." Guady v. Seaman, 149 A.2d 523, 525 (Pa. Super. 1959) (citing Restatement of Contracts § 331).

There are two damages issues before the Court: first, whether Jarzyna owes money for rent; and second, whether he owes money for other charges. The Court addresses each in turn.

1. *Rent*

Home presented a sufficient basis for estimating one item of its claimed damages with reasonable certainty, namely the $888.00 charge for October 2009 rent. See Rothrauff, 14 A.2d at 91; Guady, 149 A.2d at 525. As explained above, for the month of October 2009, Jarzyna was a holdover tenant in accordance to the holdover provisions of the lease. See Pl. Dep. 82:20-23 to 83:1-15, 100:13-16. Thus, under the clear terms of the lease, his rent for that month was set at the current month-to-month rate, which at that time was $888.00. See id. at 23:10-20. Therefore, Home has proved its damages as to this amount with reasonable certainty.

2. *Other charges*

Although, as noted above, Home has established that Jarzyna breached a valid contract, it has not provided the Court a sufficient basis for estimating its claimed damages for charges other than rent for October 2009 with reasonable certainty. See Rothrauff, 14 A.2d at 91; Guady, 149 A.2d at 525. Namely, the Court is unable to determine the amount of Home's damages, if any, regarding unpaid utility bills, late fees, and

administrative fees.[5] This is because, although Home presented documents in support of these alleged debts, those documents are not self-explanatory,[6] and were not admitted into evidence.[7]

Specifically, Home based its case primarily on the statement of deposit, which, as explained previously, was not admitted for the truth of the matter. Accordingly, the Court cannot rely on the statement of deposit as evidence establishing

---

5 The Court may have been able to determine the amount of late fees owed under the lease for unpaid October 2009 rent, but Home did not seek those fees.

6 The primary supporting document is the statement of deposit, which lists eleven separate charges. The corresponding notations purporting to explain these charges are ambiguous and vague. Moreover, the parties have explained that Home would "roll over" any unpaid balance by Jarzyna from one month to the next, which further obscures what these charges might be for. The other supporting document is a typed letter dated October 23, 2009 addressed to Jarzyna from Home's property manager. The letter states that Jarzyna has an outstanding balance with Home, and lists six amounts, four of which appear to relate to late fees or utility charges. However, three of the four were crossed-through by hand with a pen or pencil. There is no indication when or by whom the handwritten cross-outs were made. The remaining item is a $33.20 charge with the corresponding notation "Late Fee." There is no further explanation of what this "Late Fee" might be.

7 As the Court noted at trial, the statement of deposit could have been admitted for the truth of the matter if Home had presented a witness from Home, such as a records custodian. Id. at 59:11-19. Such a witness could have testified that the amounts listed in the statement of deposit were actually owed, explained what the fees were for and why Jarzyna was charged them, and that the document was created and maintained in the regular course of business. Id.; see also Fed. R. Evid. 803(6)(B) (setting forth the exception to the rule against hearsay for records of a regularly conducted activity).

that the charges therein reflected correct and accurate charges and debts. This issue could have been easily resolved if Home had called a witness, such as a records custodian, who could have provided the predicate for their admission as business records.

The Court also notes that Home's lack of opportunity to call Jarzyna as a witness on direct or on rebuttal does not change this result. For one, the Court accepts as true the proffer of Jarzyna's testimony made by Home. Even so, the proffered testimony has no impact on Home's ability to prove its damages. This is because Jarzyna has no personal, contemporaneous knowledge of how the documents were created or maintained. For that reason, he would not be able to provide the predicate to admit them as business records. Rather, his testimony would have been limited to acknowledging that he had received the documents – a fact that is not in dispute. Therefore, it is of no consequence that Home did not have the opportunity to call Jarzyna as a witness at trial.

## IV. CONCLUSION

For the reasons set forth above, the Court will award judgment to Home in the amount of $888.00 for October 2009 rent

plus interest at the rate of 6% per annum to run from October 5, 2009.[8] Home is also entitled to reasonable attorney's fees.[9]

An appropriate order follows.

---

[8] Under Pennsylvania law, the "right to interest upon money owing upon a contract is a legal right." Fernandez v. Levin, 548 A.2d 1191, 1193 (Pa. 1988) (citing W. Republic Mining Co. v. Jones & Laughlins, 108 Pa. 55 (1884)). The right to such interest begins at the time the payment is withheld after it has been the duty of the debtor to make such payment, or from the date that the cause of action arose. See Fernandez, 548 A.2d at 1193; Palmgreen v. Palmer's Garage, Inc., 117 A.2d 721, 722 (Pa. 1955) (from the time payment is withheld); Am. Enka Co. v. Wicaco Mach. Corp., 686 F.2d 1050, 1057 (3d Cir. 1982) (from date cause of action arose). In this case, the interest will run from the end of the grace period tolling the due date of late payment. Further, "[i]f the parties have not by contract determined otherwise, simple interest at the statutory legal rate is recoverable as damages for breach of contract . . . [w]here the defendant commits a breach of a contract to pay a definite sum of money." Fernandez, 548 A.2d at 1193 (quoting Restatement (Second) of Contracts § 354). The legal rate of interest in Pennsylvania is 6% per annum. 41 P.S. § 202.

[9] The amount of attorney's fees will be determined at a later date, in the event that Home submits a petition supporting the amount requested. Importantly, the recoverable attorney's fees are limited to those incurred in prosecuting the counterclaim, and do not include those related to any other aspect of this case.